VOL 100   PAGE 142

———————————————— [Space Above This Line For Recording Data] ————————————————

# OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on .........August. 23........................., 19.88..... The mortgagor is ...ASHFORD DEVELOPMENT CO,.................................................
..................!.................................... ("Borrower"). This Security Instrument is given to STATE SAVINGS BANK, which is organized and existing under the laws of CONNECTICUT, and whose address is 132 MAIN STREET, SOUTHINGTON, CT 06489 ("Lender"). Borrower owes Lender the principal sum of .Three Million and 00/100 ........................... Dollars (U.S. $ .3,000,000.00.........). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on ..demand.......................................... This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and Lender's successors and assigns the following described property located in ........Windham................... County, Connecticut:

SEE SCHEDULES A, B, C, D and E ATTACHED HERETO AND MADE A PART HEREOF

which has the address of (Known as Ernest J. Reed tract along Route 44A in the Towns of Ashford and Willington, 
                                        [Street]                                                              [City]
Connecticut ............06278 and 06279...... ("Property Address");
              [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CONNECTICUT—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT                    Form 3007 12/83
                                                                                                      L-062

VOL 100   PAGE 143

143

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VOL 100     PQAGE 144                                              144

## SCHEDULE A

FIRST PARCEL

A certain piece or parcel of land located on the northerly side of US and CONN. Route 44A in the Town of Ashford, County of Windham, and State of Connecticut, containing three (3) acres more or less together with the improvements thereon, more particularly bounded and described as follows, to wit:

Beginning at a point in the northerly line of US and CONN. Route 44A marked by a Connecticut highway monument;

Thence making an interior angle of 90° 53' and running westerly along said US and CONN. Route 44A a distance of seventy-nine and four tenths (79.4) feet to a point marked by a Connecticut highway monument;

Thence making an interior angle of 175° 42' and continuing in a westerly direction along said US and CONN. Route 44A south of a garage, showroom and office building located on the within-described land a distance of two hundred sixty-four and three tenths (264.3) feet to a point;

Thence, making an interior angle of 81° 22' and running northerly along other lands now or formerly of Hercules Company, Inc. a distance of seventy-seven and four tenths (77.4) feet to a point, said boundary line running to the west of said building;

Thence making an interior angle of 98° 39' and running easterly a distance of fifteen (15) feet to a point;

Thence making an interior angle of 265° 42' and running northerly a distance of two hundred ninety (290) feet along other land now or formerly of Hercules Company, Inc. to a point;

Thence making an interior angle 98° 18' and running easterly along other lands now or formerly of Hercules Company, Inc. a distance of three hundred twenty-three and four tenths (323.4) feet to a point;

Thence making an interior angle of 89° 24' and running in a southerly direction along other lands now or formerly of Hercules Company, Inc. a distance of three hundred sixty (360) feet to a point;

Thence making an interior angle of 90° and running westerly along said US and CONN. Route 44A a distance of fifty (50) feet to a point marked by a Connecticut highway monument;

Thence making an interior angle of 270° and running in a southerly direction along said US and CONN. Route 44A a distance of twenty and one-tenth (20.1) feet to the point or place of beginning.

VOL 100    PAGE 145

## SCHEDULE A Continued

A certain piece or parcel of land, together with all improvements thereon standing, situated on the highway, U.S. Route 44A, in the Town of Ashford, County of Windham and State of Connecticut, being more particularly bounded and described as follows:

Begin at an iron pin in the northerly line of U.S. Route 44A at the southwesterly corner herein and the southeasterly corner of Lot 14. Said iron pin is located 46.70' easterly of CHD monument in the northerly line of U.S. Route 44A and is also located 950.00' easterly of the Ashford-Willington Town Line as measured along the northerly line of said highway.

Thence in a northeasterly direction along the easterly line of Lot 14, N 22° 28' 00" E, 1,625.79' to an iron pin located at a wire fence at the southerly line of land N/F Joseph E. Lamotte;

Thence in an easterly direction along said wire fence and land of last named the following courses: N 86° 59' 47" E, 123.22'; N 72° 29' 14" E, 120.59'; S 87° 43' 36" E, 124.53'; S 75° 49' 52" E, 233.81'; S 75° 45' 52" E 264.45' to an iron pin at the northeasterly corner herein and the northwesterly corner of Lot 4 as shown on said map;

Thence southwesterly along the westerly line of Lot 4, S 12° 39' 12" W, 840.72' to an iron pin at the northeasterly corner of Lot 2 and the northwesterly corner of Lot 3 as shown on said map;

Thence southwesterly along the northerly line of Lots 1 & 2, S 75° 27' 23" W, 487.86' to an iron pin at the northwesterly corner of Lot 1;

Thence southeasterly along the westerly line of Lot 1, S 12° 36' 06" E, 355.14' to a CHD monument in the northerly line of U.S. Route 44A;

Thence southwesterly along the northerly line of said highway on a curve to the right with delta angle 03° 00' 09", Radius of 2,824.9', arc length of 148.04' to a point;

Thence northerly along other land of K & M Construction Co., Inc., N 10° 13' 42" W, 360.00' to a point;

Thence S 79° 10' 18" W, 325.4 feet to a point;

Thence in southerly, westerly and southerly directions respectively along the last named the following courses: S 02° 31' 42" E, 200.0'; S 83° 10' 18" W, 15.0'; S 01° 49' 18" W, 77.4' to a point in the northerly line of U.S. Route 44A;

Thence southwesterly along the northerly line of U.S. Route 44A, S 87° 11' 18" W, 254.70' to a CHD monument;

Thence continuing along the northerly line of said highway on a curve to the right with a delta angle of 09° 26' 09", Radius of [illegible], arc length 105.40 to an iron pin at the point of beginning.

Reference is made to map title "Index Map" Homestead Estates [illegible] Ashford & Willington, Connecticut Sheet 1 of 2 [illegible] Latest rev 12-12-77 Richard F. Mihok, L.S."

Said Lot 15 contains 25.288 acres and the parcel easterly of other land of K & M Construction Co., Inc. contains 1.154 acres with [dwe]lling and attached barn on said Lot 15.

VOL 100    PAGE 146

### SCHEDULE B

a certain piece or parcel of land, together with all improvements thereon standing, situated in the Town of Ashford, County of Windham and State of Connecticut, being shown and delineated as Lot #10 containing 11.51 acres on a certain map entitled "Index Map Homestead Estates U. S. Route 44A Ashford & Willington, Connecticut Sheet 1 of 4 Scale 1" = 100' Dated 09-02-77 Revised 09-26-77, Richard F. Mihok Associates, Consulting Engineers Marlborough, Connecticut" certified to be substantially correct by Richard F. Mihok, Registered professional Engineer No. 6906.

Being the same premises as described in a Quit-Claim Deed from Richard D. D'Onofrio and Kathleen L. D'Onofrio to The Wagon Shed, Inc. dated November 8, 1982 and recorded in Vol. 75 at Page 83 of the Ashford Land Records.

Said map is recorded in the Town Clerk's Office in said Town of Ashford as Map No. 445.

SCHEDULE C      VOL 100  PAGE 147

that certain piece or parcel of land, together with all improvements thereon standing, located on the highway, U. S. Route 44A in the Town of Ashford, County of Windham and State of Connecticut, and that certain piece or parcel of land, together with all improvements thereon located on the highway, U. S. Route 44A in the Towns of Ashford and Willington, County of Windham and State of Connecticut, and that certain piece or parcel of land, together with all improvements thereon located on the highway, U. S. Route 44A in the Town of Willington, County of Windham and State of Connecticut, all as more particularly described as follows:

A certain piece or parcel of land, together with all improvements thereon standing, situated in the Town of Ashford, County of Windham and State of Connecticut, being shown and delineated as Lot #5, containing 1.989 acres, on a certain map entitled "Index Map Homestead Estates U. S. Route 44A Ashford & Willington, Connecticut Sheet 1 of 3 Scale 1" = 100' Date 09-02-77 Revised 09-26-77. *Richard F. Mihok Associates, Consulting Engineers Marlborough, Connecticut" certified to be substantially correct by Richard F. Mihok, Registered Professional Engineer No. 6906 and bounded and described as follows:

* Rev. 12-12-77

| | |
|---|---|
| NORTHWESTERLY | by Lot 4, 261.75 feet, as shown on said map; |
| NORTHEASTERLY | by parcel to be conveyed to Charles J. & Thelma A. O'Connell, 151.54 feet, as shown on said map; |
| SOUTHEASTERLY | by land now or formerly of Charles J. & Thelma A. O'Connell, 206.32 feet, as shown on said map; |
| SOUTHERLY | by U. S. Route 44A, 209.75 feet, as shown on said map; and |
| SOUTHWESTERLY | by Lot 4, 350.00 feet, as shown on said map. |

A certain piece or parcel of land, together with all improvements thereon standing, situated in the Towns of Ashford and Willington, County of Windham and State of Connecticut, being shown and delineated as Lot 6, on a certain map entitled " Index Map Homestead Estates U. S. Route 44A Ashford & Willington, Connecticut Sheet 1 of 3 Scale 1" = 100' Date 09-02-77 Revised 09-26-77, *Richard F. Mihok Associates, Consulting Engineers Marlborough, Connecticut" certified to be substantially correct by Richard F. Mihok, Registered Professional Engineer No. 6906 and bounded and described as follows:

* Rev.12-12-77

Commencing at a point in the northerly street line of U. S. Route 44A, said point being the southwesterly corner of Lot 7, as shown on said map and the southeasterly corner of Lot 6 of the herein described parcel as shown on said map; thence N 86° 23' 06" W, a distance of 50.00 feet along the highway, U. S. Route 44A to a CHD; thence N 03° 48' 58" E, a distance of 530.28 feet, along land now or formerly of John S. Blahusiak; thence N 05° 11' 20" E, a distance of 445.71 feet along land now or formerly of John S. Blahusiak; thence N 05° 11' 03", a distance of 956.18 feet to an iron pin, along land now or formerly of John S. Blahusiak; thence N 05° 27' 00", a distance of 234.33 feet to an iron pin, along land now or formerly of Louis J. Votava; thence N 03° 38' 33" E, a distance of 201.84 feet, along land now or formerly of Louis J. Votava; thence N 08° 36' 39" W, a distance of 109.34 feet, along land now or formerly of Louis J. Votava; thence N 04° 56' 22" E, a distance of 634.24 feet along land now or formerly of Louis J. Votava; thence N 26° 09' 07" E, a distance of 18.69 feet along land now or formerly of Louis J. Votava; thence N 48° 34' 17" E, a distance of 91.04 feet, along land now or formerly of Louis J. Votava; thence N 06° 12' 21" E, a distance of 59.96 feet along land now or formerly of Louis J. Votava; thence N 08° 29' 30" W, a distance of 65.70 feet, along land now or formerly of Louis J. Votava; thence N 77° 19' 08" E, a distance of 62.26 feet along land now or formerly of Arthur R. Godbout; thence S 84° 13' 30" E, a distance of 518.05 feet, along land now or formerly of Charles R. Busse, Jr., and Mary E. Busse; thence N 75° 25' 16" E, a distance of 264.25 feet, along land now or formerly of Charles R. Busse, Jr., and Mary E. Busse; thence S 07° 25' 58" W, a distance of 227.52 feet, along land now or formerly of Joseph E. Lamotte; thence S 17° 47' 25" W, a distance of 167.52 feet, along land now or formerly of Joseph E. Lamotte; thence S 39° 08' 45" E, a distance of 95.47 feet, along land now or formerly of Joseph E. Lamotte; thence S 22° 07' 28" E, a distance of 110.10 feet, along land now or formerly of Joseph E. Lamotte; thence S 01° 15' 24" E, a distance of 84.40 feet, along land now or formerly of Joseph E. Lamotte; thence S 11° 08' 22" W, a distance of 324.71 feet, along land now or formerly of Joseph E. Lamotte; thence S 09° 43' 19" W, a distance of 276.48 feet, along land now or formerly of Joseph E. Lamotte; thence S 11° 49' 19" W, a distance of 449.29 feet, along land now or formerly of Joseph E. Lamotte; thence S 12° 59' 03" W, a distance of 239.42 feet, along land now or formerly of Joseph E. Lamotte; thence N 78° 31' 15" W, a distance of 278.18 feet, along Lot 10 as shown on said map; thence S 11° 28' 45" W, a distance of 1093.57 feet, along Lot 10 as shown on said map; thence N 81° 39' 06" W, a distance of 341.24 feet, along Lot 7 as shown on said map; thence S 03° 48' 58" W, a distance of 457.27 feet, along Lot 7 as shown on said map to the point and place of beginning.

A certain piece or parcel of land, together with all improvements thereon standing, situated in the Town of Willington, County of Windham and State of Connecticut, being shown and delineated as Lot #7, on a certain map entitled "Index Map Homestead Estates U. S. Route 44A Ashford & Willington, Connecticut Sheet 1 of 3 Scale 1" = 100' Date 09-02-77 Revised 09-26-77, *Richard F. Mihok Associates, Consulting Engineers Marlborough, Connecticut" certified to be substantially correct by Richard F. Mihok, Registered Professional Engineer No. 6906 and bounded and described as follows:

* Rev. 12-12-77

| | |
|---|---|
| NORTHERLY | by Lot 6, a distance of 341.24 feet, as shown on said map; |
| EASTERLY | by Lot 8, a distance of 463.96 feet, as shown on said map; |
| SOUTHERLY | by the highway, U. S. Route 44 A, a distance of 280.95 feet, as shown on said map; and |
| WESTERLY | by Lot 6, a distance of 457.27 feet, as shown on said map. |

VOL. 100   PAGE 148 
SCHEDULE D

Those certain pieces or parcels of land, situated in the Town of Ashford, County of Windham and State of Connecticut, known as Lot Nos. 1, 4, 13 and 14 on a certain map or plan entitled, "Index Map, Homestead Estates, U.S. Route 44A, Ashford and Willington, Connecticut Scale: 1"=100' Date 9-2-77 Revised 9-26-77, 12-12-77 Approved 6-12-78, and being more particularly bounded and described as follows:

PARCEL A: Designated as Lot #1 on said map or plan, and being bounded:

NORTHERLY: by Lot #15, as shown on said map, a distance of Three Hundred Thirty-seven and eighty-six one-hundredths (337.86) feet;

SOUTHERLY: by U.S. Route 44A, a distance of Three Hundred Fifty and sixteen one-hundredths (350.16) feet;

EASTERLY: by Lot #2, as shown on said map, a distance of Three Hundred Sixty-four and eighteen one-hundredths (364.18) feet; and

WESTERLY: by U.S. Route 44A, a distance of Nineteen and twenty-five one-hundredths (19.25) feet and also by land now or formerly of K & M Construction Co., Inc., a distance of Three Hundred Fifty-five and fourteen one-hundredths (355.14) feet.

PARCEL B: Designated as Lot #4 on said map or plan, and being bounded and described as follows:

Beginning at a point on the northerly side of U.S. Route 44A, which point is Fifty (50) feet from a Conn. Highway Department marker, and being the southeasterly corner of Lot #3 on said map, and the southwesterly corner of the premises herein described, thence running N 14° 32' 37" W, a distance of Three Hundred Forty-nine and seventy-seven one-hundredths (349.77) feet along the line of the said Lot #3 to a point; thence turning and running S 75° 27' 23" W, along the northerly line of said Lot #3, a distance of One Hundred Fifty (150) feet to a point, which point marks the southeasterly corner of Lot #15 on said map; thence turning and running N 12° 39' 12" E, a distance of Eight Hundred Forty and seventy-two one-hundredths (840.72) feet, along line of Lot #15 to a point; thence turning and running S 79° 56' 47" E, a distance of One Hundred Forty-six and forty-five one-hundredths (146.45) feet to a point, thence S 87° 36' 48" E, a distance of Three Hundred Eighty-five and forty-two one-hundredths (385.42) feet to a point, being along the line of land now or formerly of Joseph E. Lamotte; thence turning and running S 02° 15' 43" W, a distance of One Hundred Seventy-six and thirty-four one-hundredths (176.34) feet to a point, thence S 08° 24' 34" E, a distance of Forty and fifty-nine one-hundredths (40.59) feet to a point, thence S 05° 34' 29" W, a distance of Two Hundred Ten and forty-three one-hundredths (210.43) feet to a point, thence S 04° 16' 04" W, a distance of One Hundred Seventy-seven and twenty-nine one-hundredths (177.29) feet to a point, all along line of land now or formerly of Joseph E. Lamotte; thence turning and running S 75° 27' 23" W, a distance of Five Hundred One and twenty-six one-hundred (501.26) feet along line of land now or formerly of Charles J. O'Connell and Thelma A. O'Connell and Lot #5 on said map, partly by each, to a point; thence turning and running S 14° 32' 37" E, a distance of Three Hundred Fifty (350) feet along line of Lot #5 on said map to Conn. Highway Department marker, located on the northerly side of U.S. Route 44A; thence turning and running S 75° 47' 04" W, a distance of Fifty (50) feet to the point and place of beginning.

VOL 100  PAGE 149
SCHEDULE D Continued

149

PARCEL C:  Designated as Lot #13 on said map and being bound and described as follows:

    Beginning at a point, which point marks the southeasterly corner of Lot #12 on said map and the southwesterly corner of the premises herein described, and being Two Hundred Fifty-three and thirty one-hundredths (253.30) feet westerly to a Conn. Highway Department marker, on the northerly side of U.S. Route 44A; thence running N 08° 20' 54" E, a distance of Four Hundred Fifty (450) feet along line of Lot #12 on the said map to a point; thence turning and running N 08° 20' 54" E along Lot #10 on said map, a distance of One Thousand Forty and eighty one-hundredths (1,040.80) feet to a point; thence turning and running S 63° 52' 49" E, a distance of Six and four one-hundredths (6.04) feet to a point, and thence S 74° 39' 34" E, a distance of Three Hundred Forty-one and eleven one-hundredths (341.11) feet to a point, and thence S 81° 58' 53" E, a distance of Eight five and thirty-six one-hundredths (85.36) feet to a point, all along line of land now or formerly of Joseph E. Lamotte and running along the course of a wire fence, as shown on said map; thence turning and running S 15° 45' 08" W, a distance of One Thousand Six and thirty-one one-hundredths (1,006.31) feet along Lot #14 on said map to a point, and thence S 08° 20' 54" W, a distance of Four Hundred Fifty (450) feet along said Lot #14 to a point, the point being on the northerly side of U.S. Route 44A; thence turning and running N 81° 39' 06" W along said highway, a distance of One Hundred Fifty (150) feet to the point and place of beginning.
***thence S 81° 39' 06" E, 150.00 feet along the line of Lot No. 12 to a point.

PARCEL D:  Designated as Lot #14 on said map and being bound and described as follows:

    Beginning at a point in the northerly side of U.S. Route 44A, which point marks the southeast corner of Lot #13 and the southwest corner of the premises herein described, and being One Hundred Three and Thirty one-hundredths (103.30) feet west of a Conn. Highway Department marker, on the northerly side of U.S. Route 44A; thence running N 08° 20' 54" E along the said Lot #13, a distance of Four Hundred Fifty (450) feet to a point; thence N 15° 45' 08" E, a distance of One Thousand Six and Thirty-one one-hundredths (1,006.31) feet along line of Lot #13 to a point; thence turning and running S 81° 58' 53" E, a distance of Twenty-seven (27) feet to a point where a stonewall commences, thence N 85° 31' 41" E, a distance of One Hundred Seventy-one and Ten one-hundredths (171.10) feet along the said stonewall, thence turning and running N 03° 46' 00" E, a distance of Nine and eighty-four one-hundredths (9.84) feet along said stonewall thence turning and running N 79° 10' 18" E, a distance of Two Hundred Thirty-six and eighty one-hundredths (236.80) feet to a point, all along line of land now or formerly of Joseph E. Lamotte; thence turning and running S 22° 28' 00" W, a distance of One Thousand Six Hundred Twenty-five and seventy-nine one-hundredths (1625.79) feet along the line of Lot #15 on said map, to a point, which point is on the notherly side of U.S. Route 44A; thence turning and running Forty-six and Seventy one-hundredths (46.70) feet westerly to a Conn. Highway Department marker, thence running N 81° 39' 06" W, a distance of One Hundred Three and Thirty (103.30) feet to the point and place of beginning.

VOL 100     PAGE 150

SCHEDULE E
---

That certain piece or parcel of land with the buildings thereon, situated in the southwesterly part of the Town of Ashford, County of Windham and State of Connecticut, more particularly bounded and described as follows:

NORTHERLY: By land now or formerly of Charles H. Busse, Jr. and Mary L. Busse, land now or formerly of Charles M. D'Alesandro and Fred E. Hilton; and land now or formerly of Catherine N. Gillikin, partly by each;

EASTERLY: By land now or formerly of Catherine N. Gillikin; by a public roadway leading to the Knowlton Cemetery; by land now or formerly of William J. Karosi and Rose Karosi; by land now or formerly of William L. Karosi and Jeanette Karosi; by Karosi Road and by Giant Oak Lane, partly by each;

SOUTHERLY: By Giant Oak Lane, a highway, Route 44A; land now or formerly of Roy M. Roberson; and land now or formerly of the Windham Hill Development Group, partly by each; and

WESTERLY: By land now or formerly of Roy M. Roberson, the Windham Hill Development Group and the Town of Willington, partly by each.

Excepting from the above premises land described in a Warranty Deed dated July 12, 1955 from Joseph E. Lamotte to Roy M. and Eleanor L. Roberson, recorded in the Ashford Land Records in Volume 43, at Page 186, containing an estimated area of 1 acre, together with the right to use in common with others a driveway to be built on land of William A. Hajosy along the east side of the property.

Also, excepting from the above described premises, land described in a Quit-Claim Deed from Charles B. Goodstein, William A. Shocket and Robert Satter to Joshua's Tract Conservation and Historic Trust, dated September 20, 1972 and recorded in the Ashford Land Records, in Volume 63, at Page 321. Containing an area of 0.36 acres on the westerly side of Giant Oak Lane as shown on a certain plan on file in the Ashford Land Records entitled "Plan of Ashford Oak Surveyed for Joshua's Tract Conservation and Historic Trust Giant Oak Lane Ashford, Connecticut Scale 1" = 20' July 1972 Kieltyka & Woodis Land Surveyor."

Also, excepting therefrom land described as Lots 1 through 7 on a certain map or plan entitled "Final Subdivision Plan entitled GIANT OAK ESTATES Ashford, Connecticut Scale 1" = 200' Sheet 4 of 4 Prepared for Charles B. Goodstein, et. al. Zone: RA March 18, 1981, Revised 5-9-81, 6-26-81, 10-5-81, 10-27-81, 3-1-82, 3-11-81, Stanley W. Szestowicki and Associates 623 Talcottville Road Vernon, Connecticut No. 7872", intending hereby to describe all those certain pieces or parcels of land as were conveyed by Robert Satter, Trustee to Crossen Builders, Inc. by Warranty Deed dated May 26, 1982 and recorded in the Ashford Land Records in Volume 73 at Page 36 and by Warranty deed from Florence A. and Charles B. Goodstein to Crossen Builders dated May 19, 1982 and recorded in the Ashford Land Records at Volume 73 Page 37.

Intending hereby to convey a portion of the premises described in the following deeds recorded in the Ashford Land Records in Volume 67 Page 32, Volume 57 Page 243, Volume 58 Page 61. Said premises are shown and designated as "Remaining Land Contains 225 acres (Approx)", on a map or plan entitled "Final Subdivision Plan GIANT OAK ESTATES".

VOL 100   PAGE 151

151

| | | |
|---|---|---|
| Ashford Development Co.<br>93 Berlin Avenue<br>Southington, CT 06489<br><br>BORROWER'S NAME AND ADDRESS<br>"I" includes each borrower above, jointly and severally | *State Savings Bank*<br>137 MAIN STREET<br>SOUTHINGTON, CONN 06489<br>(203) 628-5581<br><br>LENDER'S NAME AND ADDRESS<br>"You" means the lender, its successors and assigns | Loan Number 3336-61<br>Date August 23, 1988<br>Maturity Date August 23, 1989<br>Loan Amount $3,000,000.00<br>XXXXXX Line of Credit |

I promise to pay to you, or your order, at your address listed above the
PRINCIPAL sum of  Three million and 00/100***   Dollars $ 3,000,000.00
  [ ] Single Advance: I have received all of this principal sum. No additional advances are contemplated under this note.
  XX Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this note. As of today I have received
       the amount of $ 1,550,000.00 and future principal advances are contemplated.
       Conditions: The conditions for future advances are ....

  XX Open End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other
       conditions and expires no later than  August 23, 1989.
  [ ] Closed End Credit: You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).
PURPOSE: The purpose of this loan is ....
INTEREST: I agree to pay interest (calculated on a _____ basis) on the principal balance(s) owing from time to time as stated below.
  [ ] Fixed Rate: I agree to pay interest at the fixed, simple rate of _____ % per year.
  XX Variable Rate: I agree to pay interest at the initial simple rate of  11.25  % per year. This rate may change as stated below.
       XX Index Rate: The future rate will be  1.25%  above  the following index rate: the high range of prime
               rate as published in the Wall Street Journal
       [ ] No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.
       XX Frequency and Timing: The rate on this note may increase as often as  the index varies
               An increase in the interest rate will take effect  on the day of the increase/decrease in index
       [ ] Limitations: The rate on this note will not at any time (and no matter what happens to any index rate used) go above or below these limits:
               [ ] Maximum Rate: The rate will not go above _____
               [ ] Minimum Rate: The rate will not go below _____
  Post Maturity Rate: I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
       XX on the same fixed or variable rate basis in effect before maturity (as indicated above).
       [ ] at a rate equal to ....

ADDITIONAL CHARGES: In addition to interest, I  [ ] have paid  XX agree to pay  the following additional charges  A 5.00% late
  charge on the amount of a payment late by 10 days or more.  Annual service
PAYMENTS: I agree to pay this note as follows:                                            fee of $25.00
  XX Interest: I agree to pay accrued interest  on the first day of each month beginning October 1,
       1988.  (10-1-88)
  XX Principal: I agree to pay the principal  on demand
  [ ] Installments: I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
       and will be due _____.  A payment of $ _____ will be due on the _____ day of
       each _____ thereafter. The final payment of the entire unpaid balance of
       principal and interest will be due _____.
  [ ] Effect of Variable Rate: An increase in the interest rate will have the following effect on the payments:
       [ ] The amount of each scheduled payment will be increased.
       [ ] The amount of the final payment will be increased.
       [ ] _____

ADDITIONAL TERMS:

| | |
|---|---|
| SECURITY: This note is secured by  Property in<br>Town of Ashford and Willington known<br>as:<br><br>[ ] If checked, no agreement was signed today securing this note.<br>(This section is for your internal use. It may not include every agreement<br>or item of collateral securing this note. You will not lose any security by<br>omitting it from this section.) | SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE<br>ON THE OTHER SIDE). I have received a copy on today's date.<br>Ashford Development Co.<br>By _____<br>   Dennis Lovley, Its President |

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301   FORM UN   4/27/87