Draft of 2-15-94
Cadle Note Sale



# AGREEMENT FOR
# PURCHASE AND SALE OF NOTES
# AND LOAN DOCUMENTS

THIS AGREEMENT is entered into on this ___ day of February, 1994, by and between **Shawmut Bank Connecticut, N.A.**, a national banking association, with a principal place of business located at 777 Main Street, Hartford, CT 06115 and **Shawmut Bank, N.A.**, a national banking association with a principal place of business at One Federal Street, Boston, MA 02211 **(Collectively, the Seller)**, and **The Cadle Company of Connecticut, Inc.**, a Connecticut corporation with a principal place of business located at 4363 LaFrance Street, Newton Falls, Ohio 44444 **(Buyer)**.

## PRELIMINARY STATEMENT

Seller is the holder of certain Promissory Notes more particularly described on **Exhibit A (the Notes)** given to evidence loans from Seller or its predecessors in interest, as lender, to various borrowers (the Loans). The Notes are secured by Mortgages, more particularly described on **Exhibit B (the Mortgages)**, covering certain parcels of real estate which real estate is more particularly described in the Exhibits attached to the Mortgages (the Premises). The Notes are also secured by certain assignments, security agreements, UCC filings, indemnities and other documents executed to evidence or secure the Loan, which are identified on **Exhibit C** attached hereto. The Mortgages and the loan documents listed on **Exhibit C** are collectively called the Loan Documents. Seller desires to sell, assign and transfer to Buyer and Buyer desires to purchase from Seller the Notes, together with the Loan Documents, in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of $1.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Assignment of Loans**. Seller shall assign and convey to Buyer, without recourse, all of Seller's right, title and interest in and to the Notes and the Loan Documents.

2. **Purchase Price**. The purchase price for the Notes and Loan Documents shall be **Two Million Four Hundred Thousand and no/100 Dollars, ($2,400,000)** payable as follows:

(a) Upon execution of this Agreement Buyer shall pay to Seller a deposit in the amount of **Two Hundred Forty Thousand and no/100 Dollars ($240,000)** which deposit shall be held by Seller according to the provisions of this Agreement.

(b) At the Closing, Buyer shall pay to Seller the balance of the purchase price in the amount of **Two Million One Hundred Sixty Thousand and no/100 Dollars ($2,160,000)** payable by bank cashier's check drawn on a Boston or new York Clearing House Bank and payable to Seller without endorsement or by immediately available Federal Reserve funds wired to Seller in accordance with instructions of the Seller at the time of Closing.

3. <u>Closing</u>.

(a) Buyer and Seller agree that the Closing shall occur on or before **February 18, 1994**, at 10:00 a.m. at the offices of Seller at 777 Main Street, Hartford, CT (the Closing). At the Closing, Seller shall deliver to Buyer the original executed Loan Documents in the possession of the Seller, together with the executed and acknowledged Assignment of Mortgages in the form attached as **Exhibit D**, the original Notes (if in the possession of Seller, otherwise lost note affidavits), endorsed without recourse, and all other documents or instruments as required by this Agreement and Buyer shall pay the purchase price as provided above. The parties acknowledge that time is of the essence of this Agreement.

(b) Buyer agrees that it shall be solely responsible for all recording costs, transfer taxes, title insurance premiums and other closing costs related to the transaction contemplated by this Agreement.

4. <u>Collateral Documents</u>. At the Closing, to the extent assignable by Seller, Seller shall deliver to Buyer all right, title and interest of Seller in and to all title policies, surveys, permits, licenses and approvals, legal opinions of Borrower's counsel, estoppel certificate and other similar materials relating to the collateral for the Loan which are in the review file which was provided for Buyer's review.

5. <u>Seller's Representations and Warranties</u>.

(a) Seller hereby represents and warrants to Buyer that the following statements are true in all respects, which representations and warranties shall survive the Closing hereunder for a period of six months from the Closing:

(i) That the copies of the Notes and the Loan Documents provided to Buyer in the review file are true and complete copies of said documents, that there are no documents which modify or amend the terms of the Notes and Loan Documents in any respect, except as included in the review file, and that Seller has good title to and is the sole owner of the Notes and Loan Documents.

(ii) Seller agrees that it shall not enter into written modifications or amendments of the Notes or Loan Documents without Buyer's written approval nor shall Seller institute a collection action, settle, sell, encumber or discharge any Note or Loan Document after the date of this Agreement without Buyer's written approval.

(iii) Attached hereto as Exhibit A is the amount of the unpaid principal owed on the Notes as of the Cut Off Date (as defined in paragraph 8).

(iv) Seller has full power to carry out the transactions provided for in this Agreement. The execution and delivery of this Agreement by Seller and the consummation by Seller of the transactions contemplated herein have been duly and validly authorized by all necessary corporate action.

(b) If Buyer alleges a material breach by Seller of any of its representations and warranties contained in this paragraph 5, Buyer shall notify Seller within six months of the Closing and Seller shall have the election, to be made in writing within 20 days thereafter, to either contest such allegation, cure such breach or repurchase a Note or Notes to which such allegation relates at the purchase price allocated to such Note or Notes on Exhibit A hereto less the amount of any payments received by Buyer. Seller shall have 60 days from the date of its election to cure the breach or complete a repurchase. In the event that Seller breaches the representation and warranty contained in subparagraph 5(a)(iii) above by overstating the amount of unpaid principal owed on the Notes, Seller shall be entitled to cure such breach by refunding to Buyer the amount of the purchase price allocable to such overstatement, which allocation shall be in the same proportion as the purchase price bears to the unpaid principal owed on the Notes. Seller shall not be required to cure any breach with respect to any Note as to which any obligor has been released by Buyer or as to which Buyer has been paid. Buyer shall reconvey a Note repurchased by Seller using the form of Assignment attached as Exhibit D.

6. **Buyer's Representations and Warranties.** Buyer hereby represents and warrants to Seller that the following statements are true in all respects, which representations and warranties shall survive the Closing hereunder:

3

(a)   Buyer has experience in real estate and financial matters and in dealing with legal instruments such as the Notes and Loan Documents.

(b)   Buyer is purchasing the Notes and Loan Documents for its own account and not with a view toward distribution to others.

(c)   Buyer has the financial wherewithal to hold the Notes for an indefinite period of time and to bear the economic risk associated with the quality and character of the Notes.

(d)   Buyer has full power to carry out the transactions provided for in this Agreement. The execution and delivery of this Agreement by Buyer and the consummation by Buyer of the transactions contemplated herein have been duly and validly authorized by all necessary corporate action.

7.   **Default**. If at the Closing, Buyer shall fail to pay the purchase price, Seller shall retain any deposit paid by Buyer as liquidated damages which shall be its sole remedy at law and equity, for such failure to pay the purchase price. If Buyer shall fail to perform any other obligation hereunder or shall breach any representation or warranty then Seller shall have all remedies available to it at law and in equity. Except as otherwise set forth in paragraph 5, in the event of a default by Seller, Buyer shall have the right to terminate this Agreement and shall be entitled to a refund of any deposits paid to Seller. The foregoing shall be Buyer's sole remedy.

8.   **Adjustments**. Seller shall be entitled to all principal and interest payments and other proceeds from the Notes and Loan Documents received through the close of business on the last business day immediately preceding the date on which this Agreement is executed by Buyer (the Cut Off Date). If the Closing occurs in accordance with the terms and provisions set forth in this Agreement, Buyer shall be entitled to all principal and interest payments and other proceeds from the Notes and Loan Documents received after the Cut Off Date. If Buyer becomes so entitled and Seller receives any principal or interest payments or other proceeds from the Notes and Loan Documents after the Cut Off Date, Seller shall accept such payments or other proceeds as Buyer's agent and hold the same on behalf of and for the benefit of Buyer, and shall remit (within a reasonable period of time) all such payments to Buyer following the Closing with the endorsement (without recourse) of Seller when required.

9.   **Cooperation**. Buyer and Seller agree that before and after the Closing they will cooperate reasonably with each other in providing information so long as

4

the same is reasonable and necessary and does not violate any laws, regulations or bank policies to which Seller is subject concerning confidentiality of information. Buyer agrees that Seller shall have the right after the Closing to review and copy any documents transferred to Buyer. The provisions of this paragraph shall survive the closing hereunder.

10. **Assignment.** This Agreement may not be assigned, sold or transferred by Buyer without the express prior written consent of Seller and any purported assignment in violation of this provision shall be null and void and at Seller's option, this Agreement shall terminate, all deposits hereunder shall be paid to Seller and become Seller's property and Seller shall have all remedies available to it at law and equity.

11. **Recording.** If Buyer records this Agreement or a copy hereof, this Agreement shall, at Seller's option, terminate and all deposits hereunder shall be paid to Seller and become Seller's property and Seller shall have all remedies available to it at law and in equity.

12. **DISCLAIMER.**

(a) BUYER REPRESENTS THAT BUYER HAS NOT RELIED UPON ANY REPRESENTATIONS, WARRANTIES OR STATEMENTS OF ANY NATURE EXCEPT AS STATED IN THIS AGREEMENT. BUYER ACKNOWLEDGES THAT BUYER WILL HAVE HAD, PRIOR TO THE CLOSING, SUFFICIENT OPPORTUNITY TO CONDUCT SUCH INSPECTIONS OF THE NOTES, THE LOAN DOCUMENTS AND THE REVIEW FILES WITH RESPECT TO THE LOANS AS BUYER DEEMS APPROPRIATE. BUYER IS RELYING SOLELY ON ITS OWN INVESTIGATIONS AND BUYER AGREES TO ACCEPT THE NOTES AND THE LOAN DOCUMENTS "AS IS", WITHOUT REPRESENTATION OR WARRANTY WHATSOEVER BY SELLER, WITH RESPECT TO THE CONDITION OF THE SAME EXCEPT AS STATED IN THIS AGREEMENT. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING HEREUNDER.

(b) BUYER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE LOANS AND THE PREMISES WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION, EXCEPT AS STATED IN THIS AGREEMENT. SELLER IS NOT BOUND BY OR LIABLE IN ANY MANNER FOR ANY ORAL OR WRITTEN STATEMENTS, APPRAISALS, ENVIRONMENTAL REPORTS OR OTHER INFORMATION PERTAINING TO THE LOANS AND THE

53807

P-00296

PREMISES OR THE OPERATION THEREOF, FURNISHED BY SELLER OR BY ANY BROKER, AGENT, REPRESENTATIVE, EMPLOYEE, SERVANT OR OTHER PERSON ACTING ON SELLER'S BEHALF. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING HEREUNDER.

13. **Environmental Matters**. Consultants have prepared environmental site assessment reports concerning the Premises (the **Reports**) for Seller. Buyer acknowledges that it has reviewed the Reports. The Reports may contain information about the presence of hazardous materials, wastes or substances or petroleum products or building toxics on the Premises. Buyer acknowledges that, under certain circumstances federal, state and local laws, rules or regulations or judicial or administrative orders or judgments (the Laws) may require the removal or remediation of such hazardous materials, wastes, substances and petroleum products and building toxics. Buyer agrees that as between Buyer and Seller it shall be solely responsible for any removal or remediation of hazardous materials, wastes and substances and petroleum products and building toxics to the extent required by the Laws and hereby waives and relinquishes any and all rights and remedies, claims and defenses it may have or which may be asserted against Seller on account of the presence or remediation of any hazardous materials, wastes and substances and petroleum products and building toxics on the Premises which are defined or identified as such in any Laws. **THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING HEREUNDER.**

14. **Broker**. Buyer represents and warrants to Seller that Buyer dealt only with persons identified as principals or employees of Seller and no other persons in connection with the transaction contemplated hereunder. Buyer agrees to indemnify and hold Seller harmless from and against any loss, cost, damage, expense (including the reasonable fees and expenses of attorneys engaged to defend the same) or liability resulting from any claim made against Seller that any broker or person dealt with Buyer in connection with such transaction and was entitled to a fee or other compensation as the result of such transaction or on account of such dealing. The provisions of this paragraph shall survive the Closing hereunder.

15. **Buyer's Agreements**. Buyer agrees that it will not commence or continue any legal action in Seller's name and will not otherwise use Seller's name to promote Buyer's subsequent collection, management or sale of the Notes. Buyer will obtain for Seller and Seller's affiliates the same releases Buyer obtains for itself in any future settlement of the Loans, if any. Buyer agrees that Seller shall have the right (but not the obligation) to repurchase one or more of the Notes for the purchase price allocated on Exhibit A less any payments received by Buyer, in the

53808

P-00297

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the date first written above.

SELLER:
SHAWMUT BANK CONNECTICUT, N.A.

BY: _____
Its: ___VICE PRESIDENT_____
         duly authorized

SELLER:
SHAWMUT BANK, N.A.

BY: _____
Its ___VICE PRESIDENT_____
         duly authorized

BUYER:
THE CADLE COMPANY OF CONNECTICUT, INC.

BY: _____
Its ___President_____
         duly authorized

8

## ASSIGNMENT OF MORTGAGE

THIS ASSIGNMENT is made as of the ____ day of _____, 199_, by _____, a national banking association with a mailing address at _____ (Bank), to _____ a mailing address at _____, _____ (Assignee).

In consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Bank hereby grants, bargains, sells, conveys, assigns, transfers and sets over unto Assignee all of its right, title and interest in and to those certain mortgages (the Mortgages) listed on **Exhibit A** attached hereto together with the Notes (the Notes) evidencing the indebtedness secured thereby and to the extent assignable, any and all other loan documents evidencing or securing the indebtedness including, without limitation, all liens, security interests and guarantees (collectively, the Loan Documents).

To have and to hold the same unto the said Assignee, its successors and assigns forever.

This Assignment is made without recourse or warranty except as set forth in that certain Agreement for Purchase and Sale of Notes and Loan Documents entered into by Bank and Assignee.

IN WITNESS WHEREOF, Bank has caused this Assignment to be duly executed as of the date set forth above.

WITNESSES:

_____

_____        By_____
                                   Its Vice President

_____

9

53810

P-00299