| | | |
|---|---|---|
| NO. CV 94 56277 S | : | SUPERIOR COURT |
| THE CADLE COMPANY OF CONNECTICUT, INC. | : | JUDICIAL DISTRICT OF TOLLAND, |
| VS. | : | AT ROCKVILLE |
| ASHFORD DEVELOPMENT CO., ET AL | : | AUGUST 15, 1997 |

CORRECTED MEMORANDUM OF DECISION

On July 10, 1997, the Court issued a memorandum of decision in the above entitled matter.

The plaintiff has filed a motion to correct judgment dated July 17, 1997 and the defendants have filed a motion to correct/modify judgment dated July 23, 1997.

Both motions are granted and the decision is corrected accordingly.

This matter originally commenced as a mortgage foreclosure. Subsequently the foreclosure count was withdrawn and the plaintiff is now proceeding as a collection suit on the mortgage note. The defendants are the Ashford Development Co. (ADC), the maker of the note, and the individual guarantors of the note.

By way of Special Defenses the defendants claim that the guaranty agreement is void because the plaintiff's predecessor failed to lend the full amount of the note, therefore there was a lack of

consideration; that they were fraudulently induced into signing the guaranty agreement; and that the plaintiff's predecessors (State Savings Bank, Fleet National Bank, Connecticut National Bank, and Shawmut Bank) breached their covenants of good faith and fair dealing by making fraudulent representations to the defendants.

The parties have stipulated to the following facts:

### Facts

1. That demand was made by Connecticut National Bank on Defendant, Ashford Development Company ("ADC"), and Defendants George Richard, Wilson Morin, James A. Stevens, Raymond Theriault, Jean G. Martin, Dennis V. Lovely, Anthony M. Milo, Christian R. Brayfield, Thomas Stanton, Jr. and David Florian (hereafter collectively referred to as the "Guarantors") on September 23, 1991;

2. That demand was made by The Cadle company of Connecticut, Inc. On ADC and the guarantors on June 27, 1994;

3. That ADC never obtained approval from the Wetlands Commission with regard to its use of the real property located in Willington;

4. That ADC withdrew its application to the Wetlands Commission for approval on or about March 11, 1991 in response to the Commission's request for more information and did not renew this application;

5. That ADC did not obtain approval from the Planning & Zoning and Wetlands Commission of Ashford with regard to the use of the real property located in

Ashford;

6. That the Note was executed by Dennis Lovely in his capacity as President of ADC;

7. That the Guaranty was signed by: George Richard, Wilson Morin, James A. Stevens, Raymond Theriault, Jean G. Martin, Dennis V. Lovely, Anthony M. Milo, Christian R. Brayfield, Thomas Stanton, Jr. and David Florian.

8. That the sum of $2,106,655.40 was advanced to ADC pursuant to the Note;

9. That the debt, if owed, would be $2,747,722.15 in principal and interest as of April 29, 1997.

10. That ADC will receive a credit of $795,000.00 as a result of its conveyance of a deed in lieu of foreclosure to Cadle Properties of Connecticut, Inc. Received on or about November 27, 1995;

11. To the admissibility of the original Promissory Note from State Savings Bank to ADC dated August 23, 1988, the Open End Mortgage from ADC securing same and dated August 23, 1988, the Guaranty dated August 22, 1988, the Quit Claim Deed from Ashford Development Co. to Cadle Properties of Connecticut dated September 7, 1995, and the Quit Claim Deed from Ashford Development Company to Cadle Properties of Connecticut dated March 20, 1996;

12. That State Savings Bank merged with Connecticut National Bank on or about December 15, 1990;

13.        That Connecticut National Bank changed its name to Shawmut Bank on or about January 11, 1993.

Additional facts found are set forth as follows:

The note in question was in the form of a line of credit similar in some ways to the commonly termed home equity loan. It stated that it was a line of credit up to the sum of $3 million dollars. Its terms contemplated there would be multiple advances up to the maximum of $3 million dollars. The borrower (CADC) received $1,550,000 on the date the loan was made (August 23, 1988). Another term of the note was that the open end credit feature would expire no later than August 23, 1989.

Further, the maker agreed to pay the principal amount on demand. The note was secured by a mortgage on a tract of land located in the towns of Ashford and Willington for which ADC planned to develop. A further term of the note states that the lender is not obligated to make additional advances, even if it did occasionally do so. The note also provides the borrower will be in default if anything happens which causes the lender to believe it will have difficulty collecting the amount owed.

Following the initial advance of $1,550,000, State Savings periodically made additional advances to ADC until April 17, 1990. At that point the total principal amount advanced, and owing, was $2,106,655.40.

On or about April 1989, the Connecticut National Bank took over the responsibility of the State Savings Bank's loans, and, at that time, the loan officer met with ADC and at least one of the

guarantors-Anthony Milo-to discuss the loan and progress ADC was making in getting approvals needed for the planned development. These approvals included zoning, inland-wetlands commissions, traffic studies and corps of engineers. The original plans called for a hotel, golf course, commercial and residential facilities to be constructed.

As a result of these discussions, it was established that future advances would be made only upon receipt of invoices submitted for work in progress and not for payment of interest on the note. Previously ADC would make interest payments from the advances they received. From April 1989 to approximately June 1991, the investors in ADC made the interest payments as they came due. After June 1991, no further interest payments were made.

By the end of 1990, the bank was concerned that the value of the property- their collateral- was not adequate to cover the $3 million dollar potential loan and, after budget discussions with ADC the bank decided that $2.2 million was the maximum they would lend to ADC. That was the estimated amount ADC would require to complete their approval process, but ADC, in fact, never did borrow up to the $2.2 million dollar limit.

In February 1991, several of the guarantors (investors) of ADC met with a bank officer and asked (1) that the loan be extended for one year and (2) for an additional $200,000 to complete the approval process. The bank declined to do so, and in September 1991 the bank made demand for payment.

The present plaintiff, Cadle Company, bought the note from the Shawmut Bank, who assigned its interest in the note (and mortgage) to Cadle.

5

## Discussion

The defendants claim fraud in the inducement and/or bad faith and unfair dealing in that the bank refused to lend the entire three million dollars to ADC. While it is true that, had ADC chosen to do so, it could have borrowed the full three million in August 1989, the fact is it chose not to do so in order to avoid paying interest on the full amount. This was an arms length business transaction, the terms and conditions of which are set forth in the written agreement (the note). It was a demand note, with a one year maturity date. The lender was under no obligation to make further advances. There was no evidence from which the Court could conclude the bank was unreasonable in its concern that the note was becoming under-collateralized. Simply, there was no evidence of fraud, and no credible evidence that the bank made any material modification to the terms of the note by requiring invoices for work in progress before making further advances. Under the terms of the note itself, the bank was not required to even do that much, certainly not after August 23, 1989, because under the terms of the note the bank was not obligated to make any future advances at all.

The defendants further claim that a certain notation stamped on the promissory note which reads "This note has not been registered under the Securities Act of 1933 and may be reoffered and sold only if an exemption from registration is available" is a bar to the note being sold to the Cadle Company, with the result that Cadle Company has no standing to sue on the note.

There was no evidence as to when the stamped notation was placed on the note. Copies of the note which had been filed with the Court with the complaint did not contain the stamp, nor did copies of the note utilized by counsel. It was only at the time of trial, when the original note was

6

introduced that the notation appeared.

In any event, the purpose of the Securities Act of 1933 was clearly to protect purchases of securities from deceptive practices in the offering or sales of securities.

Cadle is the legitimate owner of the note and the stamped notation cannot impair its ability to enforce the note. The argument of the defendants that the notation somehow deprives Cadle of the ability to do so is without merit.

Accordingly, judgment shall enter for the plaintiff, as follows:

| | |
|---|---:|
| Debt as of April 29, 1997 | $2,747,722.15 |
| Interest from April 30, 1997 to July 10, 1997. ($2,106,655.40 x 11½ %) (71 days @ 663.71) | 47,123.69 |
| Attorneys' fees (to date of trial) | 30,391.50 |
| One day of trial | 750.00 |
| Total | $2,825,987.34 |
| Credit (deed in lieu of foreclosure) | − 795,000.00 |
| Judgment | $2,030,987.34 |

The defendants are guarantors individually liable pursuant to the guaranty agreement they signed limiting the amount guaranteed by each.

The defendants George William Richard Jr., Wilson Morin, James A. Stevens, Raymond Theriault, Jean G. Martin, Dennis V. Lovely, Anthony M. Milo, and David Florian each guaranteed to pay he principal amount of $300,000.

The defendants Christian R. Brayfield and Thomas Stanton, Jr. each guaranteed the amount

of $150,000.

Accordingly, judgment shall enter against the individual guarantors as follows:

| | |
|---|---|
| George William Richard, Jr. | $225,665.26 |
| Wilson Morin | 225,665.26 |
| James A. Stevens | 225,665.26 |
| Raymond Theriault | 225,665.26 |
| Jean G. Martin | 225,665.26 |
| Dennis V. Lovely | 225,665.26 |
| Anthony M. Milo | 225,665.26 |
| David Florian | 225,665.26 |
| Christian R. Brayfield | 112,832.63 |
| Thomas Stanton, Jr. | 112,832.63 |

_____, J.
Klaczak