UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. | : <br> : <br> : |
| V. | : CASE NO.: 301 CV 896 (MRK) |
| BENJAMIN SCHILBERG; SCHILBERG INTEGRATED METALS, CORP.; THOMAS NIGRO; ASHFORD DEVELOPMENT CO.; DENNIS V. LOVELY; ANTHONY M. MILO; JAMES A. STEVENS; WILSON MORIN; JEAN G. MARTIN; DAVID W. FLORIAN; THOMAS STANTON, JR.; CHRISTIAN R. BRAYFIELD; CHARLES HILL; and SUBURBAN EXCAVATORS, INC. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : JULY 2, 2004 |

FILED
JUL 6  2 25 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

## MEMORANDUM OF DEFENDANTS THOMAS STANTON, JR. AND CHRISTIAN R. BRAYFIELD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to F.R.C.P. Rule 56, defendants Thomas Stanton and Christian Brayfield respectfully move for the entry of summary judgment on their behalf on all counts. For the reasons set forth below, this court should conclude that there is no "genuine issue of material fact" which would justify continuing this complex and expensive litigation. Mr. Stanton and Mr. Brayfield are not responsible for the alleged disposal of hazardous substances by others. Neither defendant had any involvement in such alleged disposal, and neither defendant owned nor operated the property on which the alleged disposal occurred.

1

## I. SUMMARY JUDGMENT SHOULD ENTER WITH REGARD TO ALL COUNTS BECAUSE DEFENDANTS STANTON AND BRAYFIELD WERE NOT "OPERATORS" AND THEREFORE CANNOT BE HELD LIABLE UNDER CERCLA.

Under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §9601 et seq., the plaintiff must establish that defendants Stanton and Brayfield "at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. §9607(a). There is no claim that the defendants are owners. Therefore the only issue is whether the defendants "operated" the site as that term has been interpreted by the courts. Based upon what the defendants believe are the undisputed facts, the plaintiff's effort to hold defendants Stanton and Brayfield personally liable should fail.

### A. The Rule of Bestfoods.

The United States Supreme Court has articulated the legal standard to be applied in determining whether a person "operated" a site where and when hazardous waste was disposed. In United States v. Bestfoods, 524 U.S. 51, 66-67 (1998), the court determined that in order to prove that a party "operated" a facility, the plaintiff must establish that the party did "manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." United States v. Bestfoods, 524 U.S. 51, 66-67 (1998). In reaching this interpretation, the court upheld traditional principles of corporate law, declaring that Congress did not intend to change traditional notions of corporate responsibility. Corporations were established to provide protection to shareholders from claims by others--protection which requires claims to be satisfied

solely from the assets of the corporation itself, and not from the personal assets of the shareholders. Id. at 62. The Supreme Court explained as follows:

> "Thus it is hornbook law that the "exercise of 'control' which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary. That control includes the election of directors, the making of bylaws . . . and the doing of all other acts incident to the legal status of stockholders....
> [N]othing in CERCLA purports to reject this bedrock principle, and against this venerable common-law backdrop, the congressional silence is audible." Id at 61-62.

In reaching its conclusion, the Supreme Court in Bestfoods restored traditional corporate responsibility analysis to CERCLA claims, and substantially increased the plaintiff's burden in proving "operator" status under CERCLA.

Prior to Bestfoods, the lower courts had taken a variety of approaches. Some courts found a basis for liability merely in the fact that a party had played a regular or day-to- day role in the affairs of the polluting entity, without any regard for whether the party was directly involved in the polluting activity, or whether the party exercised specific control over environmental compliance matters. See generally, Liability of Individual Shareholder or Director of Corporation that Owned Contaminating Facility in Action Pursuant to Comprehensive Environmental Response, Compensation, and Liability Act. (CERCLA), 122 ALR Fed. 321 (1994). Other courts had taken a narrower approach. In a decision approved of by the court in United States v. Bestfoods, supra, 524 U.S. at 65-66, the Fifth Circuit declined to find an individual officer or director to be an "operator" in the absence of direct pollution – related activity. See Riverside Market Development Corp. v. Int'l Bldg. Products, Inc., 931 F. 2d 327 (5th Cir. 1991). In Riverside, the defendant officer and majority shareholder of an asbestos product manufacturer was held not to be an "operator" in the absence of evidence that he

personally participated in the conduct which violated CERCLA. The defendant spent little time at the asbestos plant. There was no evidence that such visits provided him with the opportunity to direct or personally participate in the allegedly improper disposal of asbestos. His participation in plant operations was limited to reviewing financial statements and attending meetings where he consulted with other officers. See also Armotek Industries, Inc. v. Freedman, 790 F. Supp. 383, 394 (D. Conn. 1992)(Under CERCLA, "liability is not based imply upon whether a party is an officer, director, or shareholder, but depends on the specific activities of a party, including the level of involvement in day-to-day business operations, and participation in decision regarding disposal of hazardous waste.")

Subsequent courts have followed the mandate of Bestfoods, and required evidence that the defendant's conduct "must relate to pollution control management or decisions." Schiavone v. Pearce, 77 F. Supp. 3d 284, 293 (D. Conn. 1999). In Schiavone, the court determined that the defendant corporate parent and sole stockholder of the subsidiary corporation was not liable for pollution caused by the creosoting facility operated by its subsidiary, despite the fact that the defendant corporation was the sole stockholder of the subsidiary, shared the same board of directors, shared many of the same corporate officers, had its legal counsel review and approve the lease of the facility, had several of its officers and directors participate in the lease negotiations for the facility, and had its directors examine and approve the capital expenditures of the subsidiary, including the purchase of pollution control equipment. Id. at 77. Similarly, the Second Circuit in Commander Oil Corp. v. Barlo Equipment Corp., 215 F. 3d 321 (2d Cir. 2000), held that as a matter of law that the lessee could not be liable as an "operator,"

4

even though the defendant was obligated to secure insurance on the property, was responsible to pay certain taxes, had the obligation for all non-structural repairs, and had the obligation to keep the property clean and in order to the lessor's satisfaction. Id. at 331-322 & fn. 3. Relying on the rule of Bestfoods, the court determined that under no version of the facts could the defendant be deemed an "operator," even though the defendant had undertaken by the explicit terms of the lease the obligation for basic maintenance. Id.

Thus, under CERCLA and the Bestfoods rule, the plaintiff must prove that Mr. Stanton and Mr. Brayfield did "manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." United States v. Bestfoods, supra, 524 U.S. at 66-67. There is no evidence that Mr. Stanton nor Mr. Brayfield engaged in such conduct.

### B. The Undisputed Facts Regarding Defandants Stanton and Brayfield.

The undisputed facts, as set forth in the attached affidavits of defendants Stanton and Brayfield, are as follows:

1. Ashford Development Corp. was formed in 1988. A certificate of incorporation was filed with the Secretary of State. Bylaws were adopted. The corporation had a corporate attorney, and a corporate accountant. Corporate financial statements were issued. The corporation filed tax returns. The corporation had shareholders, directors, and officers. The corporation borrowed funds in its name, and with the proceeds acquired the subject parcel in Ashford and Willington, Connecticut. The corporation had at least one employee. The corporation also hired outside

contractors to provide certain site development services. (Affidavit of Stanton, ¶ 5; Affidavit of Brayfield, ¶5).

2. In 1988, Mr. Stanton and Mr. Brayfield each purchased shares in the corporation. Each of them paid $100,000.00 for five percent each of the outstanding shares. Thereafter, although they each paid in additional capital, their proportional ownership declined to less than 5%. Both men were smallest of the minority shareholders. (Affidavit of Stanton, ¶ 6,7; Affidavit of Brayfield, ¶ 6, 7).

3. Both defendants agreed, along with the other shareholders, to provide limited personal guarantees of the debt of Ashford Development Corp to a financial institution, for which both were required to pay a sum greater than their initial investment in order to settle claims relating to the corporation's note and mortgage. As a result, they lost more than twice their initial investment. (Affidavit of Stanton, ¶ 6; Affidavit of Brayfield, ¶ 6).

4. Mr. Stanton was never a director or officer of Ashford Development Corp. His sole role was as a shareholder-investor. He attended no more than a few group meetings, at which there were general discussions about the development of the parcel in Ashford, including ideas about a restaurant and a golf course. (Affidavit of Stanton, ¶ 8; Affidavit of Brayfield, ¶ 8).

5. Neither Mr. Stanton nor Mr. Brayfield employed nor directed anyone at the subject property in Ashford. Each visited the site only once. Neither defendant was aware of any environment contamination issues relating to the property until after the alleged disposal during 1988 and 1989. (Affidavit of Stanton, ¶ 9; Affidavit of Brayfield, ¶ 9).

6. Neither Mr. Stanton nor Mr. Brayfield participated in any group discussions or activity relating to the disposal of hazardous substances on site. With regard to Mr. Stanton, he once made a telephone call to find the names of persons with large scale leaching field experience. He also attended a meeting at which the group of stockholders or directors approved for payment a contractor's invoice for a portion of the building demolition work that had already been completed. Prior to that meeting, Mr. Stanton was not aware that a contractor had been hired to demolish any structures. (Affidavit of Stanton, ¶ 10)

7. Neither Mr. Stanton nor Mr. Brayfield had a role in negotiating, drafting nor executing any agreement with the demolition contractor. Neither defendant had a role in directing the contractor. Neither defendant played any role in obtaining governmental approvals for the demolition, in determining how or when the demolition materials were to be disposed, nor in supervising the contractor or anyone else on site. They had no role in any alleged decision to burn some of the building debris on site, and had no role in how, when, or where the burn was to be conducted. Finally, they had no knowledge of, and no role in, any alleged decision to bury materials, and no involvement with any alleged burying. (Affidavit of Stanton, ¶ 10; Affidavit of Brayfield, ¶ 10 ).

8. The focus of Mr. Brayfield's efforts was the planning of the restaurant, which at the time was going to be located in the existing restaurant building. A new corporation was formed, with Mr. Brayfield as president, to be the entity which would lease the restaurant area from Ashford Development Corp. His efforts in this regard ceased when it was determined that the restaurant building was not usable. It was later that the building was demolished and the alleged disposal occurred. (Affidavit of Brayfield, ¶ 11 ).

9. At no time during the ownership of the parcel by Ashford Development Corp. did Mr. Stanton or Mr. Brayfield ever manage, direct, or conduct the disposal of hazardous waste, or any other environmental matter. At no time was either of the defendants in charge of environmental compliance matters. Neither defendant dealt with local officials nor with state officials with regard to site development or environmental matters. Neither defendant took actions on behalf of the corporation with regard to demolition, removal, and/or burial of materials, or environmental matters. (Affidavit of Stanton, ¶ 11, 12; Affidavit of Brayfield, ¶ 12, 13 ).

### C. Summary Judgment Warranted

As the foregoing establishes, as a matter of fact and law neither Mr. Stanton nor Mr. Brayfield are "operators" under CERCLA. Neither defendant was involved in any disposal of hazardous substances, and neither was involved in environmental compliance. Accordingly, summary judgment should be entered.

## II. SUMMARY JUDGEMENT SHOULD BE GRANTED ON COUNT TWO ON BEHALF OF MR. STANTON AND MR. BRAYFIELD BECAUSE THERE IS NO BASIS TO PIERCE THE CORPORATE VEIL.

Count Two the the complaint appears to claim that Mr. Stanton and Mr. Brayfield should be found liable under CERCLA based upon traditional notions of piercing the corporate veil. However, under the facts of this case, there is no basis for looking beyond the corporate form and making the defendants personally liable under CERCLA.

### A. Law of Piercing the Corporate Veil

Before a court may pierce the corporate veil there must be a sufficient factual basis to do so. Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc., 187 Conn. 544, 561 (1982). The piercing of the corporate veil is equitable in nature. Id. at 555.

8

"The corporate veil will be pierced when the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." Saphir v. Neustadt, 177 Conn. 191, 209. (1979). The court may pierce the corporate veil when the privilege of doing business in the corporate form is used merely as a means with which to do injustice. Falcone v. Night Watchman, Inc., 11 Conn. App. 218, 220 (1987).

Under Connecticut law, in certain narrow circumstances, a corporate officer or shareholder may be held liable for acts that would normally be attributed to the corporation. The instrumentality rule may impose liability for corporate actions upon a shareholder, director, or officer of a corporation. Campisano v. Nardi, 212 Conn. 282, 291 (1989). Under the instrumentality rule, proof of three facts are required: (1) control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory of other positive legal duty, or a dishonest or unjust act in contravention of the plaintiff's legal rights; and (3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. United Electrical Contractors, Inc. v. Progress Builders, Inc., 26 Conn. App. 749 (1992). Under the identity rule, the corporate veil may be pierced when the plaintiff shows such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, and that an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one

9

corporation for the benefit of the whole enterprise. Zaist v. Olson, 154 Conn. 563, 576 (1997). A key factor in this analysis is the degree of control or influence exerted over the corporation. Falcone v. Night Watchman, Inc, supra, at 221. Although, the identity rule is used mostly to impose liability on a parent corporation for the debts of its subsidiary, the identity rule has been used to hold individual shareholders liable. Id. The corporate veil will not, however, be lightly disregarded in the case of holding shareholders liable. "To do so would be to act in opposition to the public policy of this state as expressed in legislation concerning the formulation and regulation of corporations." Saphir v. Neustadt, supra at 212.

### B. Undisputed Facts Relating to Mr. Stanton and Mr. Brayfield,

The facts set forth in paragraphs 1-9 of Section I(B) supra are hereby incorporated herein by reference. In addition, the defendant offers the following undisputed facts:

1. With regard to the plaintiff's efforts to "pierce the corporate veil," there is no evidence of wrongdoing on the part of Mr.. Stanton nor Mr. Brayfield. Neither defendant was part of any scheme to defraud others or perpetrate a crime. (Affidavit of Stanton, ¶ 13; Affidavit of Brayfield, ¶ 14 ).

2. Neither Mr. Stanton nor Mr. Brayfield dominated the corporation. The corporation had a separate existence throughout, and the two defendants were the smallest of the minority shareholders. Neither Mr. Stanton nor Mr. Brayfield had more than a small voice in the affairs of Ashford Development Corp. (Affidavit of Stanton, ¶ 5, 6, 7, 13; Affidavit of Brayfield, ¶ 5, 6,7,9,12, and 14 )

3. Neither defendant had any authority to make any unilateral decisions on behalf of the corporation, nor to take any unilateral actions on behalf of the corporation. Id.

10

4. Neither defendant had the ability, nor the intent, to operate the corporation for their sole benefit. Neither defendant had the authority to hire, fire, manage, direct, or supervise anyone. Id.

5. The corporation had a separate existence throughout. The corporate form was followed throughout. (Affidavit of Stanton, ¶ 5; Affidavit of Brayfield, ¶5).

### C. Summary Judgment Warranted

As a result of the foregoing, summary judgment should be granted for the defendants because there is no basis to pierce the corporate veil for any reason.

### III. THE PLAINTIFF'S CLAIMS ARE BARRED BY THE ENTRY OF A DEFICIENCY JUDGMENT AND THE SATISFACTION OF THAT JUDGMENT.

Defendants Stanton and Brayfield adopt and incorporate by reference the argument as set forth in the Memorandum of defendant Milo.

### IV. PLAINTIFF'S CLAIMS ARE BARRED BECAUSE THIS COURT LACKS JURISDICTION, AND THE PLAINTIFF LACKS STANDING, DUE TO THE ABSENCE OF THE STATUTORILY REQUIRED UNDERLYING GOVERNMENT ACTION PURSUANT TO SECTIONS 106 AND 107(A) OF CERCLA.

Defendants Stanton and Brayfield adopt and incorporate by reference the argument as set forth in the memorandum of defendant Milo.

## V. CONCLUSION

For the foregoing reasons, defendants Stanton and Brayfield respectfully request that summary judgment be entered in their favor on the complaint.

Respectfully Submitted,

THE DEFENDANTS
THOMAS STANTON, JR.
and CHRISTIAN R. BRAYFIELD

by _____
Thomas S. Luby
Luby Olson, P.C.
405 Broad Street
P.O. Box 2695
Meriden, CT 06450
Their Attorneys
Phone: 203-639-3560
Facsimile: 203-639-3569
Federal Bar No.: ct00187

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. | : <br> : <br> : |
| V. | : CASE NO.: 301 CV 896 (MRK) <br> : |
| BENJAMIN SCHILBERG; SCHILBERG INTEGRATED METALS, CORP.; THOMAS NIGRO; ASHFORD DEVELOPMENT CO.; DENNIS V. LOVELY; ANTHONY M. MILO; JAMES A. STEVENS; WILSON MORIN; JEAN G. MARTIN; DAVID W. FLORIAN; THOMAS STANTON, JR.; CHRISTIAN R. BRAYFIELD; CHARLES HILL; and SUBURBAN EXCAVATORS, INC. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : JULY 2, 2004 |

### CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, by first class mail, postage prepaid, on this 2nd day of July, 2004 to the following:

Jill Hartley, Esq.
Michael G. Albano, Esq.
Sabia & Hartley, LLC
190 Trumbull Street, Suite 202
Hartford, CT 06103

Thomas A. Armstrong, Esq.
Reid & Riege, P.C.
One Financial Plaza, 21st Floor
Hartford, CT 06103

Joseph F. DePaolo, Jr., Esq.
132 Main Street
P.O. Box 554
Southington, CT 06489

Joseph B. Sappington, Esq.
Levy & Droney, PC
74 Batterson Park Road
P.O. Box 887
Farmington, CT 06034-0887

Steven Berglass, Esq.
John W. Sullivan, Esq.
Seeley & Berglass
121 Whitney Avenue
New Haven, CT 06510

Jon David Biller, Esq.
Biller, Sachs, Raio & Bonadies
2750 Whitney Avenue
Hamden, CT 06518

Mr. Thomas Nigro
7 Howard Road
Ashford, CT 06278

_/s/ Thomas S. Luby_
Thomas S. Luby