**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

JUL 6  2 16 PM '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | | |
|---|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. | : | |
| | : | |
| V. | : | CASE NO.: 301 CV 896 ( MRK) |
| | : | |
| BENJAMIN SCHILBERG; | : | |
| SCHILBERG INTEGRATED METALS, | : | |
| CORP.; THOMAS NIGRO; ASHFORD | : | |
| DEVELOPMENT CO.; DENNIS V. | : | |
| LOVELY; ANTHONY M. MILO; JAMES | : | |
| A. STEVENS; WILSON MORIN; JEAN G. | : | |
| MARTIN; DAVID W. FLORIAN; | : | |
| THOMAS STANTON, JR.; CHRISTIAN R. | : | |
| BRAYFIELD; CHARLES HILL; and | : | |
| SUBURBAN EXCAVATORS, INC. | : | JULY 2, 2004 |

**AFFIDAVIT OF THOMAS STANTON, JR.**

I, Thomas Stanton, Jr., being duly sworn, do state:

1. That I reside in Cheshire, Connecticut.

2. That I am a defendant in the above-captioned matter.

3. I am a defendant because the complaint claims that, through my "action or inaction," I am responsible for the cost of cleanup of certain materials allegedly buried on the property owned at the time by the Ashford Development Company and located on Route 44 in Ashford, Connecticut.

4. I do not believe as a matter of law that I should be held financially and personally responsible for the alleged disposal of hazardous substances by others. I had no involvement in such alleged disposal, and I did not own nor control the property on which the alleged disposal occurred.

5.  Ashford Development Corp. was formed in 1988.  A certificate of incorporation was filed with the Secretary of State.  Bylaws were drafted.  The corporation had a corporate attorney, and a corporate accountant.  Corporate financial statements were issued.  The corporation filed tax returns.  The corporation had shareholders, directors, and officers.  The corporation borrowed funds in its name, and used those funds to acquire the subject parcel in Ashford and Willington, Connecticut.  The corporation had at least one employee.  The corporation also hired outside contractors to provide certain site development services.

6.  In August, 1988, I paid $100,000.00 for the purchase of shares in Ashford Development Corp.  My sole role was as a minority stockholder of the company, and my shares represented initially 5% of the shares issued and outstanding.  Despite some additional funds contributed (approximately $33,000.00), my interest was subsequently reduced to a lesser percentage.  Also, I agreed at one point to sign a limited personal guarantee for the corporate debt, for which I paid dearly years later.  I ended up losing all of my original investment, and had to pay an even larger sum in order to settle the claims relating to my personal guarantee of the corporate note and mortgage .

7.  Mr. Brayfield  also purchased shares in the corporation.  He also paid $100,000.00 for five percent of the outstanding shares.  Thereafter, he also paid in additional capital, and his proportional ownership also declined to less than 5%.  Mr. Brayfield and I were at all times the smallest of the minority shareholders.

8.  I was never a director or officer of Ashford Development Corp.  My sole role was as a shareholder-investor.  I attended no more than a few group meetings of the shareholders/directors, at which there were general discussions about the development of

2

the parcel in Ashford, including ideas about a hotel, restaurant and golf course. I once made a telephone call to the Town Engineer for the Town of Southington to ask for names of persons familiar with the design of large scale septic systems, which names I then shared with Mr. Brayfield.

9. I did not personally employ nor direct anyone at the subject property in Ashford. I only visited the site once, in 1988, before the property was purchased. I never walked the property. I was not aware of any environment contamination issues relating to the property until foreclosure proceedings were commenced in 1995.

10. I did not participate in any group discussions relating to the disposal of hazardous substances on site. My only involvement in discussions with regard to the demolition of the buildings on site was my attendance at a meeting at which the group approved for payment Suburban Excavators' invoice for a portion of the demolition work already performed on site. The group merely approved the payment. Prior to that meeting, I had not been aware that a contractor had been hired to demolish any structures. I had no role in  determining the scope of the work, in negotiating, drafting nor executing any agreement with the contractor, in obtaining governmental approvals for the demolition, in determining how or when the demolition materials were to be disposed, nor in supervising the contractor or anyone else on site. I had no role in any decision to burn one or more of the structures on site, and had no role in how, when, or where the burn was to be conducted. Finally, I had no knowledge of, and no role in, any alleged decision to bury materials, and no involvement with any alleged burying.

3

11. At no time during the ownership of the parcel by Ashford Development Corp. did I ever manage, direct, or supervise the disposal of hazardous waste. At no time was I in charge of environmental compliance matters.

12. As noted above, Mr. Brayfield was also a small minority shareholder. Although he attended various meetings of the shareholder/director group, and would update me with regard to meetings, based upon my discussions and observations of him he took no affirmative steps with regard to the project that involved directing others, and played no role in environmental compliance matters.

13. With regard to the plaintiff's efforts to "pierce the corporate veil," there is no evidence of wrongdoing on the part of Mr. Brayfield nor myself. Neither of us were part of any scheme to defraud others or perpetrate a crime. Neither Mr. Brayfield nor I dominated the corporation. The corporation had a separate existence throughout, and we were the smallest of the minority shareholders. Neither Mr. Brayfield nor I had more than a small voice in the affairs of Ashford Development Corp. Neither of us had any authority to make any unilateral decisions on behalf of the corporation, nor to take any unilateral actions on behalf of the corporation. Neither of us had the ability, nor the intent, to operate the corporation for our sole benefit. Neither of us had the authority to hire, fire, or supervise anyone. Neither of us had the authority to expend funds.

14. Based on the foregoing, it is clear that I did not have any personal involvement in the alleged disposal of hazardous substances. I was never an "operator" under 42 U.S. §9207. I should not be held personally and financially responsible for the presence, or the future removal costs, of such materials.

4

15. The foregoing is true to the best of my knowledge and belief.

Thomas Stanton

Subscribed and sworn before me this  2nd. day of July, 2004.

Thomas S. Luby
Commissioner of the Superior Court

Stanton affidavit 7-2-04.doc

5