**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

JUL 6  2 15 PM '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. | : <br> : <br> : |
| V. | : CASE NO.: 301 CV 896 ( MRK ) |
| BENJAMIN SCHILBERG; SCHILBERG INTEGRATED METALS, CORP.; THOMAS NIGRO; ASHFORD DEVELOPMENT CO.; DENNIS V. LOVELY; ANTHONY M. MILO; JAMES A. STEVENS; WILSON MORIN; JEAN G. MARTIN; DAVID W. FLORIAN; THOMAS STANTON, JR.; CHRISTIAN R. BRAYFIELD; CHARLES HILL; and SUBURBAN EXCAVATORS, INC. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : JULY 2, 2004 |

**AFFIDAVIT OF CHRISTIAN BRAYFIELD**

I, Christian Brayfield, being duly sworn, do state:

1. That I reside in Southington, Connecticut.

2. That I am a defendant in the above-captioned matter.

3. I am a defendant because the complaint claims that, through my "action of inaction," I am responsible for the cost of cleanup of certain materials buried on the property owned at the time by the Ashford Development Company and located on Route 44 in Ashford, Connecticut.

4. I do not believe as a matter of law that I should be held financially and personally responsible for the alleged disposal of hazardous substances by others. I had no involvement in such alleged disposal, and I did not own nor control the property on which the alleged disposal occurred.

5. Ashford Development Corp. was formed in 1988. A certificate of incorporation was filed with the Secretary of State. Bylaws were drafted. The corporation had a corporate attorney, and a corporate accountant. Corporate financial statements were issued. The corporation filed tax returns. The corporation had shareholders, directors, and officers. The corporation borrowed funds in its name, and used those funds to acquire the subject parcel in Ashford and Willington, Connecticut. The corporation had at least one employee, and hired outside contractors to provide certain site development services.

6. In August, 1988, I paid $100,000.00 for shares in Ashford Development Corp. I was a minority stockholder of the company, and a director. My shares represented initially 5% of the shares issued and outstanding. Despite some additional funds contributed (approximately $33,000.00), my interest was subsequently reduced to a lesser percentage. Also, I agreed at one point to sign a limited personal guaranty for the corporate debt, for which I paid dearly years later. I ended up having to pay a sum larger than my total investment in order to settle claims relating to my personal guaranty.

7. Mr. Stanton also purchased shares in the corporation. He paid $100,000.00 for five percent of the outstanding shares. Thereafter, he also paid in additional capital, and his proportional ownership also declined to less than 5%. Mr. Stanton and I were at all times the smallest of the minority shareholders.

8. Mr. Stanton was never a director or officer of Ashford Development Corp. His sole role was as a shareholder-investor. He attended no more than a few group meetings, at which there were general discussions about the development of the parcel in Ashford,

including ideas about a restaurant and a golf course. I don't believe he was ever assigned any duties, and he was never directly involved with any activities on the site.

9. I did not personally employ nor direct anyone at the subject property in Ashford. I only visited the site once. I was not aware of any environmental contamination issues relating to the property until after the alleged disposal in this case.

10. I did not participate in any group discussions relating to the disposal of hazardous substances on site. I had no role in negotiating, drafting nor executing any agreement with the demolition contractor, in obtaining governmental approvals for the demolition, in determining how or when the demolition materials were to be disposed, nor in supervising the contractor or anyone else on site. I had no role in any decision to burn one or more of the structures on site, and had no role in how, when or where the burn was to be conducted. Finally, I had no knowledge of, and no role in, any alleged decision to bury materials, and no involvement with any alleged burying.

11. The focus of my limited efforts related to the planning of the restaurant, which at the time was going to be located in the existing restaurant building. A new corporation was formed, with me as president, to be the entity which would lease the restaurant area from Ashford Development Corp. My efforts in this regard ceased when it was determined that the restaurant building was not usable. It was later that the building was demolished and the alleged disposal occurred.

12. At no time during the ownership of the parcel by Ashford Development Corp. did I ever manage, direct, or supervise the disposal of hazardous waste. At no time was I in charge of environmental compliance matters. In fact, at no time did I manage, direct, or supervise any activity at all on the site. Although I did serve on a number of board

3

committees, I never dealt with local officials nor with state officials with regard to site development or environmental matters. I signed no contracts, supervised no outside contractors, and never took actions on behalf of the corporation with regard to demolition, removal, and/or burial of materials, or environmental matters.

13. As noted above, Mr. Stanton was also a small minority shareholder. He attended at most only a few of the meetings of the shareholder/director group. I would sometimes update him with regard to meetings. Based upon my discussions and observations of him he took no affirmative steps with regard to the project that involved directing others, and played no role in environmental compliance matters.

14. With regard to the plaintiff's efforts to "pierce the corporate veil," there is no evidence of wrongdoing on the part of Mr.. Stanton nor myself. Neither of us were part of any scheme to defraud others or perpetrate ca crime. Neither Mr. Stanton nor I dominated the corporation. The corporation had a separate existence throughout, and we were the smallest of the minority shareholders. Neither Mr. Stanton nor I had more than a small voice in the affairs of Ashford Development Corp. Neither of us had any authority to make any unilateral decisions on behalf of the corporation, nor to take any unilateral actions on behalf of the corporation. Neither of us had the ability, nor the intent, to operate the corporation for our sole benefit. Neither of us had the authority to hire, fire, or supervise anyone. Neither of us had the authority to expend funds.

15. Based on the foregoing, it is clear that I did not have any personal involvement in the alleged disposal of demolition substances. I was never an "operator" under 42 U.S. §9207. I should not be held personally and financially responsible for the presence, or the future removal costs, of such materials.

4

16. The foregoing is true to the best of my knowledge and belief.

_____
Christian Brayfield

Subscribed and sworn before me this 2nd. day of July, 2004.

_____
Thomas S. Luby
Commissioner of the Superior Court

tsl\affidavit of brayfield 7-2-04

5