**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. | : : : |
| V. | : CASE NO.: 301 CV 896 (MRK) |
| BENJAMIN SCHILBERG; SCHILBERG INTEGRATED METALS, CORP.; THOMAS NIGRO; ASHFORD DEVELOPMENT CO.; DENNIS V. LOVELY; ANTHONY M. MILO; JAMES A. STEVENS; WILSON MORIN; JEAN G. MARTIN; DAVID W. FLORIAN; THOMAS STANTON, JR.; CHRISTIAN R. BRAYFIELD; CHARLES HILL; and SUBURBAN EXCAVATORS, INC. | : : : : : : : : : : : JULY 8, 2004 |

**DEFENDANTS THOMAS STANTON, JR. AND CHRISTIAN R. BRAYFIELD'S**
**LOCAL RULE 56(a)1 STATEMENT**

Pursuant to Rule 56(a)1 of the Rules of the United States District Court for the District of Connecticut, Thomas Stanton, Jr. and Christian R. Brayfield submit this statement in support of their Motion for Summary Judgment in the above-entitled action.

1. Ashford Development Corp. was formed in 1988. A certificate of incorporation was filed with the Secretary of State. Bylaws were drafted. The corporation had a corporate attorney, and a corporate accountant. Corporate financial statements were issued. The corporation filed tax returns. The corporation had shareholders, directors, and officers. The corporation borrowed funds in its name, and with the proceeds acquired the subject parcel in Ashford and Willington, Connecticut. The corporation had at least one employee. The corporation also hired outside contractors to provide certain site development services. (Exhibit A – Affidavit of Stanton, ¶ 5; Exhibit B - Affidavit of Brayfield, ¶5).

2. In 1988, Mr. Stanton and Mr. Brayfield each purchased shares in the corporation. Each of them paid $100,000.00 for five percent each of the outstanding shares. Thereafter,

1

although they each paid in additional capital, their proportional ownership declined to less than 5%. Both men were smallest of the minority shareholders. (Exhibit A - Affidavit of Stanton, ¶ 6,7; Exhibit B - Affidavit of Brayfield, ¶ 6, 7).

3. Both defendants agreed, along with the other shareholders, to provide limited personal guarantees of the debt of Ashford Development Corp to a financial institution, for which both were required to pay a sum greater than their initial investment in order to settle claims relating to the corporation's note and mortgage. As a result, they lost more than twice their initial investment. (Exhibit A - Affidavit of Stanton, ¶ 6; Exhibit B - Affidavit of Brayfield, ¶ 6).

4. Mr. Stanton was never a director or officer of Ashford Development Corp. His sole role was as a shareholder-investor. He attended no more than a few group meetings, at which there were general discussions about the development of the parcel in Ashford, including ideas about a restaurant and a golf course. (Exhibit A - Affidavit of Stanton, ¶ 8; Exhibit B - Affidavit of Brayfield, ¶ 8).

5. Neither Mr. Stanton nor Mr. Brayfield employed nor directed anyone at the subject property in Ashford. Each visited the site only once. Neither defendant was aware of any environment contamination issues relating to the property until after the alleged disposal during 1988 and 1989. (Exhibit A - Affidavit of Stanton, ¶ 9; Exhibit B - Affidavit of Brayfield, ¶ 9).

6. Neither Mr. Stanton nor Mr. Brayfield participated in any group discussions or activity relating to the disposal of hazardous substances on site. With regard to Mr. Stanton, he once made a telephone call to find the names of persons with large scale leaching field experience. He also attended a meeting at which the group of stockholders or directors approved for payment a contractor's invoice for a portion of the building demolition work

that had already been completed. Prior to that meeting, Mr. Stanton was not aware that a contractor had been hired to demolish any structures. (Exhibit A - Affidavit of Stanton, ¶ 10)

7. Neither Mr. Stanton nor Mr. Brayfield had a role in negotiating, drafting nor executing any agreement with the demolition contractor. Neither defendant had a role in directing the contractor. Neither defendant played any role in obtaining governmental approvals for the demolition, in determining how or when the demolition materials were to be disposed, nor in supervising the contractor or anyone else on site. They had no role in any alleged decision to burn some of the building debris on site, and had no role in how, when, or where the burn was to be conducted. Finally, they had no knowledge of, and no role in, any alleged decision to bury materials, and no involvement with any alleged burying. (Exhibit A - Affidavit of Stanton, ¶ 10; Exhibit B - Affidavit of Brayfield, ¶ 10).

8. The focus of Mr. Brayfield's efforts was the planning of the restaurant, which at the time was going to be located in the existing restaurant building. A new corporation was formed, with Mr. Brayfield as president, to be the entity which would lease the restaurant area from Ashford Development Corp. His efforts in this regard ceased when it was determined that the restaurant building was not usable. It was later that the building was demolished and the alleged disposal occurred. (Exhibit B - Affidavit of Brayfield, ¶ 11).

9. At no time during the ownership of the parcel by Ashford Development Corp. did Mr. Stanton or Mr. Brayfield ever manage, direct, or conduct the disposal of hazardous waste, or any other environmental matter. At no time was either of the defendants in charge of environmental compliance matters. Neither defendant dealt with local officials nor with state officials with regard to site development or environmental matters. Neither defendant took actions on behalf of the corporation with regard to demolition, removal, and/or burial of

3

materials, or environmental matters. (Exhibit A - Affidavit of Stanton, ¶ 11, 12; Exhibit B - Affidavit of Brayfield, ¶ 12, 13).

        Respectfully Submitted,
        THE DEFENDANTS
        THOMAS STANTON, JR.
        and CHRISTIAN R. BRAYFIELD

        By _____
        Thomas S. Luby
        Luby Olson, P.C.
        405 Broad Street
        P.O. Box 2695
        Meriden, CT 06450
        Their Attorneys
        Phone: 203-639-3560
        Facsimile: 203-639-3569
        Federal Bar No.: ct00187

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. | : |
| V. | : CASE NO.: 301 CV 896 (MRK) |
| BENJAMIN SCHILBERG; SCHILBERG INTEGRATED METALS, CORP.; THOMAS NIGRO; ASHFORD DEVELOPMENT CO.; DENNIS V. LOVELY; ANTHONY M. MILO; JAMES A. STEVENS; WILSON MORIN; JEAN G. MARTIN; DAVID W. FLORIAN; THOMAS STANTON, JR.; CHRISTIAN R. BRAYFIELD; CHARLES HILL; and SUBURBAN EXCAVATORS, INC. | : JULY 8, 2004 |

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, by first class mail, postage prepaid, on this 8th day of July, 2004 to the following:

Jill Hartley, Esq.
Michael G. Albano, Esq.
Sabia & Hartley, LLC
190 Trumbull Street, Suite 202
Hartford, CT 06103

Thomas A. Armstrong, Esq.
Reid & Riege, P.C.
One Financial Plaza, 21st Floor
Hartford, CT 06103

Joseph F. DePaolo, Jr., Esq.
132 Main Street
P.O. Box 554
Southington, CT 06489

Joseph B. Sappington, Esq.
Levy & Droney, PC
74 Batterson Park Road
P.O. Box 887
Farmington, CT 06034-0887

Steven Berglass, Esq.
John W. Sullivan, Esq.
Seeley & Berglass
121 Whitney Avenue
New Haven, CT 06510

Jon David Biller, Esq.
Biller, Sachs, Raio & Bonadies
2750 Whitney Avenue
Hamden, CT 06518

Mr. Thomas Nigro
7 Howard Road
Ashford, CT 06278

_____
Thomas S. Luby

tsl\stanton.ii\local rule 56(a)1 statement 7-7-04

5

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P.<br><br>V.<br><br>BENJAMIN SCHILBERG; SCHILBERG INTEGRATED METALS, CORP.; THOMAS NIGRO; ASHFORD DEVELOPMENT CO.; DENNIS V. LOVELY; ANTHONY M. MILO; JAMES A. STEVENS; WILSON MORIN; JEAN G. MARTIN; DAVID W. FLORIAN; THOMAS STANTON, JR.; CHRISTIAN R. BRAYFIELD; CHARLES HILL; and SUBURBAN EXCAVATORS, INC. | : <br>: <br>: <br>: CASE NO.: 301 CV 896 (MRK)<br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: JULY 2, 2004 |

### AFFIDAVIT OF THOMAS STANTON, JR.

I, Thomas Stanton, Jr., being duly sworn, do state:

1. That I reside in Cheshire, Connecticut.

2. That I am a defendant in the above-captioned matter.

3. I am a defendant because the complaint claims that, through my "action or inaction," I am responsible for the cost of cleanup of certain materials allegedly buried on the property owned at the time by the Ashford Development Company and located on Route 44 in Ashford, Connecticut.

4. I do not believe as a matter of law that I should be held financially and personally responsible for the alleged disposal of hazardous substances by others. I had no involvement in such alleged disposal, and I did not own nor control the property on which the alleged disposal occurred.

5. Ashford Development Corp. was formed in 1988. A certificate of incorporation was filed with the Secretary of State. Bylaws were drafted. The corporation had a corporate attorney, and a corporate accountant. Corporate financial statements were issued. The corporation filed tax returns. The corporation had shareholders, directors, and officers. The corporation borrowed funds in its name, and used those funds to acquire the subject parcel in Ashford and Willington, Connecticut. The corporation had at least one employee. The corporation also hired outside contractors to provide certain site development services.

6. In August, 1988, I paid $100,000.00 for the purchase of shares in Ashford Development Corp. My sole role was as a minority stockholder of the company, and my shares represented initially 5% of the shares issued and outstanding. Despite some additional funds contributed (approximately $33,000.00), my interest was subsequently reduced to a lesser percentage. Also, I agreed at one point to sign a limited personal guarantee for the corporate debt, for which I paid dearly years later. I ended up losing all of my original investment, and had to pay an even larger sum in order to settle the claims relating to my personal guarantee of the corporate note and mortgage.

7. Mr. Brayfield also purchased shares in the corporation. He also paid $100,000.00 for five percent of the outstanding shares. Thereafter, he also paid in additional capital, and his proportional ownership also declined to less than 5%. Mr. Brayfield and I were at all times the smallest of the minority shareholders.

8. I was never a director or officer of Ashford Development Corp. My sole role was as a shareholder-investor. I attended no more than a few group meetings of the shareholders/directors, at which there were general discussions about the development of

the parcel in Ashford, including ideas about a hotel, restaurant and golf course. I once made a telephone call to the Town Engineer for the Town of Southington to ask for names of persons familiar with the design of large scale septic systems, which names I then shared with Mr. Brayfield.

9. I did not personally employ nor direct anyone at the subject property in Ashford. I only visited the site once, in 1988, before the property was purchased. I never walked the property. I was not aware of any environment contamination issues relating to the property until foreclosure proceedings were commenced in 1995.

10. I did not participate in any group discussions relating to the disposal of hazardous substances on site. My only involvement in discussions with regard to the demolition of the buildings on site was my attendance at a meeting at which the group approved for payment Suburban Excavators' invoice for a portion of the demolition work already performed on site. The group merely approved the payment. Prior to that meeting, I had not been aware that a contractor had been hired to demolish any structures. I had no role in determining the scope of the work, in negotiating, drafting nor executing any agreement with the contractor, in obtaining governmental approvals for the demolition, in determining how or when the demolition materials were to be disposed, nor in supervising the contractor or anyone else on site. I had no role in any decision to burn one or more of the structures on site, and had no role in how, when, or where the burn was to be conducted. Finally, I had no knowledge of, and no role in, any alleged decision to bury materials, and no involvement with any alleged burying.

3

11. At no time during the ownership of the parcel by Ashford Development Corp. did I ever manage, direct, or supervise the disposal of hazardous waste. At no time was I in charge of environmental compliance matters.

12. As noted above, Mr. Brayfield was also a small minority shareholder. Although he attended various meetings of the shareholder/director group, and would update me with regard to meetings, based upon my discussions and observations of him he took no affirmative steps with regard to the project that involved directing others, and played no role in environmental compliance matters.

13. With regard to the plaintiff's efforts to "pierce the corporate veil," there is no evidence of wrongdoing on the part of Mr. Brayfield nor myself. Neither of us were part of any scheme to defraud others or perpetrate a crime. Neither Mr. Brayfield nor I dominated the corporation. The corporation had a separate existence throughout, and we were the smallest of the minority shareholders. Neither Mr. Brayfield nor I had more than a small voice in the affairs of Ashford Development Corp. Neither of us had any authority to make any unilateral decisions on behalf of the corporation, nor to take any unilateral actions on behalf of the corporation. Neither of us had the ability, nor the intent, to operate the corporation for our sole benefit. Neither of us had the authority to hire, fire, or supervise anyone. Neither of us had the authority to expend funds.

14. Based on the foregoing, it is clear that I did not have any personal involvement in the alleged disposal of hazardous substances. I was never an "operator" under 42 U.S. §9207. I should not be held personally and financially responsible for the presence, or the future removal costs, of such materials.

15. The foregoing is true to the best of my knowledge and belief.

*Thomas Stanton*

Subscribed and sworn before me this 2nd. day of July, 2004.

*Thomas S. Luby*
Commissioner of the Superior Court

Stanton affidavit 7-2-04.doc

5

EXHIBIT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CADLEROCK PROPERTIES  :
JOINT VENTURE, L.P.       :
                                              :
        V.                                  : CASE NO.: 301 CV 896 (MRK)
                                              :
BENJAMIN SCHILBERG;       :
SCHILBERG INTEGRATED METALS, :
CORP.; THOMAS NIGRO; ASHFORD :
DEVELOPMENT CO.; DENNIS V. :
LOVELY; ANTHONY M. MILO; JAMES :
A. STEVENS; WILSON MORIN; JEAN G.:
MARTIN; DAVID W. FLORIAN;   :
THOMAS STANTON, JR.; CHRISTIAN R.:
BRAYFIELD; CHARLES HILL; and :
SUBURBAN EXCAVATORS, INC.   : JULY 2, 2004

### AFFIDAVIT OF CHRISTIAN BRAYFIELD

I, Christian Brayfield, being duly sworn, do state:

1. That I reside in Southington, Connecticut.

2. That I am a defendant in the above-captioned matter.

3. I am a defendant because the complaint claims that, through my "action of inaction," I am responsible for the cost of cleanup of certain materials buried on the property owned at the time by the Ashford Development Company and located on Route 44 in Ashford, Connecticut.

4. I do not believe as a matter of law that I should be held financially and personally responsible for the alleged disposal of hazardous substances by others. I had no involvement in such alleged disposal, and I did not own nor control the property on which the alleged disposal occurred.

5. Ashford Development Corp. was formed in 1988. A certificate of incorporation was filed with the Secretary of State. Bylaws were drafted. The corporation had a corporate attorney, and a corporate accountant. Corporate financial statements were issued. The corporation filed tax returns. The corporation had shareholders, directors, and officers. The corporation borrowed funds in its name, and used those funds to acquire the subject parcel in Ashford and Willington, Connecticut. The corporation had at least one employee, and hired outside contractors to provide certain site development services.

6. In August, 1988, I paid $100,000.00 for shares in Ashford Development Corp. I was a minority stockholder of the company, and a director. My shares represented initially 5% of the shares issued and outstanding. Despite some additional funds contributed (approximately $33,000.00), my interest was subsequently reduced to a lesser percentage. Also, I agreed at one point to sign a limited personal guaranty for the corporate debt, for which I paid dearly years later. I ended up having to pay a sum larger than my total investment in order to settle claims relating to my personal guaranty.

7. Mr. Stanton also purchased shares in the corporation. He paid $100,000.00 for five percent of the outstanding shares. Thereafter, he also paid in additional capital, and his proportional ownership also declined to less than 5%. Mr. Stanton and I were at all times the smallest of the minority shareholders.

8. Mr. Stanton was never a director or officer of Ashford Development Corp. His sole role was as a shareholder-investor. He attended no more than a few group meetings, at which there were general discussions about the development of the parcel in Ashford,

including ideas about a restaurant and a golf course. I don't believe he was ever assigned any duties, and he was never directly involved with any activities on the site.

9. I did not personally employ nor direct anyone at the subject property in Ashford. I only visited the site once. I was not aware of any environmental contamination issues relating to the property until after the alleged disposal in this case.

10. I did not participate in any group discussions relating to the disposal of hazardous substances on site. I had no role in negotiating, drafting nor executing any agreement with the demolition contractor, in obtaining governmental approvals for the demolition, in determining how or when the demolition materials were to be disposed, nor in supervising the contractor or anyone else on site. I had no role in any decision to burn one or more of the structures on site, and had no role in how, when or where the burn was to be conducted. Finally, I had no knowledge of, and no role in, any alleged decision to bury materials, and no involvement with any alleged burying.

11. The focus of my limited efforts related to the planning of the restaurant, which at the time was going to be located in the existing restaurant building. A new corporation was formed, with me as president, to be the entity which would lease the restaurant area from Ashford Development Corp. My efforts in this regard ceased when it was determined that the restaurant building was not usable. It was later that the building was demolished and the alleged disposal occurred.

12. At no time during the ownership of the parcel by Ashford Development Corp. did I ever manage, direct, or supervise the disposal of hazardous waste. At no time was I in charge of environmental compliance matters. In fact, at no time did I manage, direct, or supervise any activity at all on the site. Although I did serve on a number of board

committees, I never dealt with local officials nor with state officials with regard to site development or environmental matters. I signed no contracts, supervised no outside contractors, and never took actions on behalf of the corporation with regard to demolition, removal, and/or burial of materials, or environmental matters.

13. As noted above, Mr. Stanton was also a small minority shareholder. He attended at most only a few of the meetings of the shareholder/director group. I would sometimes update him with regard to meetings. Based upon my discussions and observations of him he took no affirmative steps with regard to the project that involved directing others, and played no role in environmental compliance matters.

14. With regard to the plaintiff's efforts to "pierce the corporate veil," there is no evidence of wrongdoing on the part of Mr.. Stanton nor myself. Neither of us were part of any scheme to defraud others or perpetrate ca crime. Neither Mr. Stanton nor I dominated the corporation. The corporation had a separate existence throughout, and we were the smallest of the minority shareholders. Neither Mr. Stanton nor I had more than a small voice in the affairs of Ashford Development Corp. Neither of us had any authority to make any unilateral decisions on behalf of the corporation, nor to take any unilateral actions on behalf of the corporation. Neither of us had the ability, nor the intent, to operate the corporation for our sole benefit. Neither of us had the authority to hire, fire, or supervise anyone. Neither of us had the authority to expend funds.

15. Based on the foregoing, it is clear that I did not have any personal involvement in the alleged disposal of demolition substances. I was never an "operator" under 42 U.S. §9207. I should not be held personally and financially responsible for the presence, or the future removal costs, of such materials.

16. The foregoing is true to the best of my knowledge and belief.

*Christian Brayfield*
Christian Brayfield

Subscribed and sworn before me this 2nd. day of July, 2004.

*Thomas S. Luby*
Thomas S. Luby
Commissioner of the Superior Court

tsl\affidavit of brayfield 7-2-04