FILED

JUL 20   1 45 PM '04

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CADLEROCK PROPERTIES JOINT | : | CASE NO. 3:01 CV 896 (MRK) |
| VENTURE, LP. | : | |
| | : | |
| V. | : | |
| | : | |
| BENJAMIN SCHILBERG; | : | |
| SCHILBERG INTEGRATED METALS, | : | |
| CORP.; THOMAS NIGRO; ASHFORD | : | |
| DEVELOPMENT CO.; DENNIS V. | : | |
| LOVLEY; ANTHONY M. MILO; JAMES | : | |
| A. STEVENS; JEAN G. MARTIN; DAVID | : | |
| W. FLORIAN; THOMAS STANTON, JR.; | : | |
| CHRISTIAN R. BRAYFIELD; CHARLES | : | |
| HILL; and SUBURBAN EXCAVATORS, INC. | : | JULY 19, 2004 |

## DEFENDANT DENNIS V. LOVLEY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

The Plaintiff's amended complaint dated November 30, 2001 seeks contribution from Defendant, Dennis Lovley, for environmental remediation costs associated with a parcel of real property located on Route 44 in the towns of Ashford and Willington, Connecticut. The Plaintiff's claim for contribution is made pursuant to 42 U.S.C. Section 9613(f)(1). The amended complaint also seeks declaratory judgment pursuant to 42 U.S.C. Section 9613(g)(2) allocating liability among all of the Defendants associated with the property for past, current and future costs of remediating the site.

1

## II. BACKGROUND FACTS

On or about December 1, 1993 Defendant, Dennis Lovley, commenced a voluntary case under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut. *In Re Dennis Lovley,* Case No. 93-24552 (RLK) *Exhibit 1*    On March 22, 1994  Hon. Robert L. Krechevsky issued an order discharging Mr. Lovley from his debts.  *Exhibit 1*   The following events occurred prior to the date that Mr. Lovley filed his bankruptcy petition:

On August 24, 1988 Mr. Lovley purchased the premises known as 392 and 460 Squaw Hollow Road (Route 44) in the Towns of Ashford and Willington, Connecticut (hereafter "the property"). *Exhibit 2, 3, 4-Correcting Deed*   The property consisted of approximately 335 acres of undeveloped land.  A small residence with attached barn and an outbuilding used as a restaurant were the only buildings on the parcel.  *Affidavit of Dennis Lovley*   Mr. Lovley transferred the property to the Ashford Development Company on the same day that he purchased the property. *Exhibit 5, 6*   At the time of the transfer to Ashford Development Company, Mr. Lovley was an investor in the company and served as its first President.  Ashford Development Company acquired the property for the purpose of constructing a hotel, convention center and golf course on the site. *Affidavit of Dennis Lovley*

The Town of Ashford required Ashford Development Company to remove the existing residence, barn and restaurant from the property before new construction could begin on the site.  Ashford Development Company hired Suburban Excavators, Inc. to demolish and remove the buildings. *Affidavit of Dennis Lovley*   The Town of Ashford issued a permit on October 17, 1998 to Suburban Excavators, Inc. for the demolition and removal of the buildings. *Exhibit 11*   Prior to the demolition, the Ashford Volunteer Fire Department requested that they be allowed to burn the buildings as a fire training exercise.

2

*Affidavit of Dennis Lovley*     Ashford Development Company and Suburban Excavators, Inc. consented to this request. Suburban Excavators, Inc. used a backhoe to knock the buildings down. Suburban then pushed the debris into two piles in preparation for the fire exercise. *Ex. 12*  The Ashford Volunteer Fire Department sent a "burning detail" to the property on October 23, 1988 and set fire to the debris piles created by Suburban Excavators, Inc.  Members of the fire department remained on the site for approximately five hours to monitor the fire.  The Ashford Volunteer Fire Department made a second visit to the site on November 12, 1988 for "wet down of burn pile." *Exhibit 13*    On March 22, 1989 the Ashford building inspector endorsed the building permit with the notation  "Removed and cleaned." *Exhibit 11*

Ashford Development Company obtained financing for the proposed project from State Savings Bank of Southington, Connecticut in the amount of $3,000,000.00. *Exhibit 9, 10*   Connecticut National Bank acquired the note, mortgages and guarantees when it purchased State Savings Bank.[1] *See: Exhibit 14*   In 1991 Connecticut National Bank refused to advance additional money from the note to Ashford Development Company for the project.   On or about October 18, 1991 Connecticut National Bank accelerated the Ashford Development Company note and began foreclosure proceedings against Ashford and its shareholders. *Exhibit 14, 15*

Prior to the foreclosure on November 1, 1990, Mr. Lovley was removed as President of Ashford Development Company by a vote of the other shareholders. *Exhibit 8*     By October 18, 1991 Ashford

---

[1]Mr. Lovley commenced his bankruptcy case while Connecticut National Bank was the holder of the note.  Connecticut National Bank was duly listed as a creditor on Mr. Lovley's Chapter 7 Petition. *See: Exhibit 1 - Schedule D*

3

Development Company ran out of money for the project and all construction and other activities at the site ceased. *Affidavit of Dennis Lovley*  In 1991-1992 Connecticut National Bank hired Rizzo Associates, Inc. to perform a preliminary environmental site assessment on the property.   At the time of Mr. Lovley's bankruptcy Connecticut National Bank had knowledge that there was environmental contamination on the premises. *Exhibit 19*

Subsequent to the filing of Mr. Lovley's bankruptcy petition, Shawmut Bank became the holder of the note and mortgages as a result of its merger with Connecticut National Bank.   Shawmut sold the Ashford Note and Loan Documents to The Cadle Company of Connecticut, Inc. on February 18, 1994. *Exhibit 16*   After acquiring the notes The Cadle Company of Connecticut, Inc. began foreclosure proceedings against Ashford Development Company which agreed to transfer title to the property to Cadle Properties of Connecticut, Inc. by deed in lieu of foreclosure.  Ashford Development Company conveyed the portion of the property located in Willington Cadle Properties of Connecticut, Inc. on September 7, 1995.  Ashford Development Company conveyed the portion of the property located in Ashford to Cadle Properties of Connecticut, Inc. on March 20, 1996.   The Plaintiff, Cadlerock Properties Joint Venture, L.P. acquired the property from Cadle Properties of Connecticut, Inc. by warranty deed dated November 15, 1996. *Exhibit 17*

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Curry v. City of Syracuse, 316 F.3d 324, 329 (2nd Cir. 2003)*   In ruling on a motion for summary judgment the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in that party's favor. *Id.*   If as to the issue on which summary

4

judgment is sought there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper. *Id.*

## IV. ARGUMENT

### A. Summary of Plaintiff's Claims Against Defendant, Dennis V. Lovley

The Plaintiff's amended complaint dated November 30, 2001 seeks to impose personal liability on Mr. Lovley both as an "operator" of the site *Amended Complaint, First Count* and by piercing the corporate veil. *Amended Complaint, Second Count* The Plaintiff alleges that Mr. Lovley is responsible for the costs of environmental clean up of the Ashford property on a number of theories. First, it is alleged that Mr. Lovley was an officer and/or director of Ashford Development Company and in that capacity allowed Ashford Development Company to contaminate the site. *Amended Complaint, Par. 9, 10* Second it is alleged that Mr. Lovley during his tenure as president of Ashford Development Company was in a position to control the operations of the corporation and did allow the corporation to contaminate the Ashford site by its decision to demolish an old barn and restaurant on the Site and did elect to bury the debris resulting from the demolition at the site underground. *Amended Complaint, Par. 36-41.* The allegations further state that when Mr. Lovley took title to the site prior to the transfer of the site to Ashford Development Company he entered into an agreement wherein he was required to remove various "hazardous materials" from the site. Based on this escrow agreement, the Plaintiff alleges that Mr. Lovley's "responsibility to ensure that these hazardous materials were properly removed from the site continued after Ashford Development Company took title." *Amended Complaint, Par. 42-45*

CERCLA provides that "any person may seek contribution from any other person who is liable or potentially liable for response costs if: (1) the Defendant fits within one of the four classes of responsible

5

parties outlined in Section 107(a); (2) the site is a facility; (3) There is a release or threatened release of

hazardous substances at the facility; (4) the Plaintiff incurred response costs responding to the release or

threatened release and (5) the costs and response actions conform to the National Contingency Plan."

*Bedford Affiliates v. Sills, 156 F.3d 416, 427 (2nd Cir. 1998)*    Section 9607(a)(1) applies to all current

owners and operators, while section 9607(a)(2) primarily covers prior owners and operators.  Moreover

section 9607(a)(2)'s scope is more limited than that of section 9607(a)(1).  Prior owners and operators are

liable only if they owned or operated the facility "at the time of disposal of any hazardous substance; this

limitation does not apply to current owners. *State of New York v. Shore Realty Corp., 759 F.2d 1032, 1044*

*(2nd Cir. 1985)*

**1.  ANY RELEASE OF HAZARDOUS WASTE THAT MAY HAVE OCCURRED ON THE SITE AS A RESULT OF THE DEMOLITION OF THE BARN AND RESTAURANT OR THE BURIAL OF DEMOLITION DEBRIS OCCURRED BEFORE MR. LOVLEY FILED HIS CHAPTER 7 PETITION CREATING A PRE-PETITION CLAIM DISCHARGED IN BANKRUPTCY.**

(i) Claim for Contribution

The Second Circuit's decision in *In Re Chateaugay Corp., 944 F.2d 997 (2nd Cir. 1991)* requires

the entry of summary judgment in favor of Dennis Lovley.   *In Re Chateaugay Corp.*  holds that response

costs incurred by a party under CERCLA are pre-petition claims dischargeable in bankruptcy regardless

of when such costs are incurred so long as such costs concern **a release or threatened release of**

**hazardous waste that occurred before the debtor filed his bankruptcy petition.**  *In Re Chateaugay*

*Corp., 944 F.2d 997 (2nd Cir. 1991) (emphasis added)*

Here, there is no genuine issue as to the following material facts:

1. Demolition of the buildings on the site commenced in October, 1988 and was completed in

6

November, 1988.

2. The Ashford Volunteer Fire Department burned the demolition debris from the buildings between October 23, 1988 and November 11, 1988.

3. Any release or threatened release of hazardous waste resulting from the demolition of the buildings occurred in 1988.

For the purposes of bankruptcy analysis a claim will be deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation - "a right to payment" - under the relevant non-bankruptcy law. *In Re Manville Forest Products Corp., 209 F.3d 125, 129 (2nd Cir. 2000) See Also: 11 U.S.C. Section 101(5)* With the 1986 enactment of SARA, Congress added CERCLA Section 113(f)(1) as an express authorization of claims for contribution. *Bedford Affiliates v. Sills, 156 F.3d 416, 423 (2nd Cir. 1998) citing: Superfund Amendments and Reauthorization Act of 1986; Pub.L. No. 99-499, Section 113(f)* The enactment of SARA prior to the date Mr. Lovley filed his bankruptcy petition created the legal obligation and right to payment necessary to create a pre-petition claim. *See: In Re Chateaugay Corp.II, 53 F.3d 478, 497 (2nd Cir., 1995) ; In Re Duplan Corp., 229 B.R. 609, 610-611 (S.D.N.Y. 1999) affirmed in part 212 F.3d 144 (2nd Cir. 2000)*

To be dischargeable the claim must also concern a release or threatened release of hazardous waste that occurred before the debtor filed his bankruptcy petition. The Plaintiff's contribution claim against Mr. Lovley alleges contamination from the demolition of the buildings on the site and the burial of the resulting construction debris. It is the opinion of the Plaintiff's expert, Mr. Brownell, that the burning of the buildings and their contents created PAHs that contaminated the site. *Exhibit 20* Whether

7

Ashford Development Company buried the ash and debris from the buildings on the site remains a contested issue of fact. [2]  However, the material fact that is not in dispute here is that the demolition of the buildings that the Plaintiff complains of occurred in 1988. Suburban Excavators, Inc. applied for a permit to demolish the buildings on October 3, 1988. The permit was issued on October 17, 1988. The permit is endorsed with the notation "REMOVED AND CLEANED - 3/22/89." *Exhibit 11*  George Richard, an employee of Suburban Excavators, Inc., testified that the entire process of demolition of the buildings and cleaning of the site took approximately two weeks. *Exhibit 12*   Whether the clean-up process involved burial of ash and debris or not,  the entire demolition process was accomplished between October 3, 1988 and November 22, 1989, four years before Mr. Lovley filed his bankruptcy petition.

In addition, for the purposes of the present motion for summary judgment, one must "believe the Plaintiff's evidence and draw all justifiable inferences in the Plaintiff's favor."  For the purposes of this motion the Defendant must accept the conclusion of the Plaintiff's expert that the event that created the hazardous substance, PAH, is the burning of the materials from the demolished buildings. *See: B.F. Goodrich Co. v. Murtha, 840 F. Supp. 180, 188 (D. Conn. 1993)* (In general CERCLA liability does not lie if the material disposed of would release a hazardous substance only on the intervention of another force.)   According to Mr. Brownell, the fire is the outside force that created the PAHs.  It is not disputed that the fire to burn the building debris was set on October 23, 1988 and was finally extinguished on

---

[2]The Plaintiff has no evidence to support its allegation that Ashford Development Company buried the demolition debris on the site.  George W. Richard, Jr. was the individual from Suburban Excavators, Inc. who completed the demolition on the Ashford site.  He testified that  no demolition debris was buried and that  the solid waste that was left after the burning of the demolition debris was placed into a pile that remains on the surface of the site. *Exhibit 12*

8

November 11, 1988. The resulting release of PAHs from the burning of the building debris also occurred more than four years before Mr. Lovley filed his bankruptcy petition.

The Second Circuit's decision in *In Re Chateaugay Corp.*, 944 F.2d 997 (2nd Cir. 1991) is dispositive of the present case and was decided on similar facts.    In *Chateaugay* the debtor sought confirmation of a Chapter 11 reorganization plan in which it intended to discharge all of its environmental liabilities that were traceable to the debtor's pre-petition conduct including those situations in which the response costs would be incurred post-confirmation. 944 F.2d at 1000   The Second Circuit held that although the EPA did not yet know the full extent of the hazardous waste removal costs that it may one day incur and seek to impose on the debtor and although it did not yet even know the location of all of the sites at which such wastes may be found these factors render the EPA's claim "contingent" rather than placing it outside the Bankruptcy Code's definition of "claim". The EPA's claim for CERCLA response costs which result from pre-petition conduct of the debtor were therefore held to be dischargeable.    The fact that liability materializes post-petition does not transmogrify the claim into a post-petition claim; but merely means that the contingent claim moved closer to becoming liquidated upon the happening of that contingency. *In Re Manville Forest Products, 209 F.3d 125, 129 (2nd Cir. 2000)*   Here, the Plaintiff's claim for CERCLA response costs are the result of Mr. Lovley's pre-petition conduct and were similarly discharged in his bankruptcy.

Also significant here is the fact that at the time Mr. Lovley filed his bankruptcy petition, Connecticut National Bank, the holder of the Ashford note and mortgage, had specific knowledge of environmental problems on the property.  They had the results of a  preliminary environmental investigation of the property and knew about a number of potential environmental problems existing on

9

the site.    Similar to the EPA in *Chateaugay* although Connecticut National Bank did not yet know the full

extent of the hazardous waste removal costs that it may one day incur and seek to impose on Mr. Lovley

and it did not yet even know the location of all the sites at which such wastes may yet be found, it rendered

their claim against Mr. Lovley "contingent" rather placing it outside the definition of claim for bankruptcy

purposes. *In Re Chateaugay Corp.,* 944 F.2d 997, 1005 (2nd Cir. 1991)   Mr. Lovley's bankruptcy is

therefore a complete bar to any claim against him for the pre-petition release of hazardous waste resulting

from the demolition and burning of the residence, barn and restaurant on the property.

(ii) Claim for Declaratory Judgment

The same reasoning applies to declaratory judgment pursuant to Section 113(g) of CERCLA

"allocating liability among the Defendants for the past, current and future costs of investigating, containing

and removing contamination at the Site." *(Complaint; Third Count; Paragraph 70)*   The Plaintiff's claim

for declaratory judgment allocating liability among the defendants is a request that the Court impose a

monetary obligation on Mr. Lovley.   The declaratory judgment sought by the Plaintiff pursuant to 42

U.S.C. Section 9613(g) is also a claim that is dischargeable in bankruptcy. *See: Ohio v. Kovacs, 469 U.S.*

*274, 283, 83 L.Ed. 2d 649, 105 S.Ct. 705, 709-710 (1985)*(decision of State of Ohio to enforce an

injunction requiring Kovacs to remediate pollution on his property by securing a receiver, dispossessing

Kovacs from the site and removing his authority over the site converted the cleanup order into an

obligation to pay money which was dischargeable in bankruptcy) *See Also: In Re Chateaugay Corp., 944*

*F.2d 997, 1008 (2nd Cir. 1991)* (an order to clean up a site, to the extent that it imposes obligations distinct

from any obligation to stop or ameliorate ongoing pollution is a "claim" if the creditor obtaining the order

had the option, which CERCLA confers, to do the cleanup work itself and sue for response costs, thereby

10

converting the injunction into a monetary obligation) *In Re Stylesite Marketing, Inc. 253 B.R. 503, 511 (S.D.N.Y. 2000)*(an equitable right will be a "claim" for bankruptcy purposes if payment of a monetary remedy is an alternative)

Here, the Plaintiff, Cadlerock Properties Joint Venture, L.P., is the present owner of the site.(*Complaint; Paragraph 29*) Defendant Lovley no longer has any authority over the site.   Claims for contribution pursuant to 42 U.S.C. Section 9613(f) and claims for declaratory judgment pursuant to 42 U.S.C. Section 9613(g) are each capable of discharge in a bankruptcy proceeding because they each create a monetary obligation.   Thus, Mr. Lovley's bankruptcy discharges him from all liability for the release or threatened release of hazardous waste that occurred before he filed his bankruptcy petition on December 1, 1993.

### 2. MR. LOVLEY'S CONTRACTUAL OBLIGATIONS PURSUANT TO THE ESCROW AGREEMENT WITH ASHFORD DEVELOPMENT COMPANY AROSE PRE-PETITION AND WERE DISCHARGED IN HIS BANKRUPTCY.

The Plaintiff's amended complaint further alleges that prior to Mr. Lovley's sale of the premises to Ashford Development Company he made arrangements with the prior owner, Ernest Reed, to remove "various hazardous materials from the site." *Amended Complaint Paragraph 42.*   The complaint further alleges that when Mr. Lovley conveyed the site to Ashford Development Company he "assumed responsibility for the clean-up of various hazardous materials left at the site." *Amended Complaint Paragraph 44.*   The Plaintiff further concludes that Mr. Lovley's "responsibility to ensure these hazardous materials were properly removed from the site continued after Ashford Development Company took title." *Amended Complaint Paragraph 45.*

The Plaintiff appears to be referring to an Escrow Agreement *See: Exhibit 6* entered into between

11

the Defendants Dennis Lovley and Anthony Milo and Ashford Development Company dated August 23, 1988. The agreement applies to solid waste on the surface of the site and requires Mr. Lovley to remove "all materials stored in the barn on the premises, all junk motor vehicles, construction equipment, scrap metal, storage sheds and other debris on the entire premises and two large piles of gravel." *Exhibit 6, Paragraph 1 a, b, c* The removal was required to be completed by November 1, 1988.   If Mr. Lovley failed to remove the materials from the site by November 1, 1988 the agreement provides "payments for reasonable charges for removal shall be paid from the escrow at the BUYER'S [Ashford Development Company's] sole discretion ... In the event that removal costs are in excess of $40,000, SELLER [Dennis Lovley and Anthony Milo] shall be liable to Buyers for any reasonable excess payments." *Exhibit 6, Paragraph 6*

The material fact that is not in dispute is that the escrow agreement was executed by Mr. Lovley on August 23, 1988 as part of the sale of the site to Ashford Development Company.  Assuming for the purposes of this motion that the text of the agreement is broad enough to allocate CERCLA-type environmental liability[3]  the agreement imposes a duty on Mr. Lovley to indemnify Ashford Development Company for the reasonable cost of removing the materials listed in the agreement if he failed to do so by November 1, 1988.

A valid pre-petition claim requires two elements.  First, the claimant must possess a right to

---

[3] The test is not whether the parties specifically referred to CERCLA in the agreement, but rather, whether the text of the agreement conveys an intention of the parties to allocate CERCLA-type environmental liability. *See: Armortek Industries, Inc. v. Freedman 790 F.Supp. 383, 391 (D.Conn. 1992)* The agreement on its face  applies only to debris readily visible on the surface of the site.  The Plaintiff's characterization of the agreement as applying to "hazardous waste" is questionable.

12

payment. Second, the right must have arisen prior to the filing of the bankruptcy petition. *In Re Manville Forest Products Corp. 209 F.3d 125, 128 (2nd Cir. 2000)*  Under contact law a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed. *Id. at 129*  Here, Mr. Lovley executed the escrow agreement in connection with his purchase and sale of the property on August 23, 1988.  The escrow agreement is also dated August 23, 1988.  Mr. Lovley signed the agreement well before he filed his bankruptcy petition on December 1, 1993.  Any obligation that the agreement imposed on Mr. Lovley to remove hazardous waste from the property after Ashford Development Company took title was therefore a pre-petition claim that was discharged in bankruptcy.

### 3. MR. LOVLEY'S DISCHARGE IN BANKRUPTCY BARS THE PLAINTIFF'S CLAIMS BECAUSE THE PLAINTIFF WAS AN UNKNOWN FUTURE CREDITOR AT THE TIME MR. LOVLEY FILED HIS BANKRUPTCY PETITION.

Discharge under the Bankruptcy Code presumes that all creditors bound by the plan have been given sufficient notice to satisfy due process.  "Known creditors" must be provided with actual written notice of a debtor's bankruptcy filing and bar claim date.  For "unknown creditors" however, notification by publication is sufficient. *Solow Building Company v. ATC Associates, 175 F.Supp.2d 465, 471 (EDNY, 2001)*  A "known" creditor for bankruptcy purposes is one whose identity is either known or reasonably ascertainable by the debtor.  An "unknown" creditor is one whose interests are either conjectural or future, or, although they could be discovered upon investigation, do not in due course of business come to the knowledge of the debtor. *Id.*

Here, Mr. Lovley obtained a discharge of his debts on March 22, 1994.  The Plaintiff obtained title to the Ashford and Willington property on November 15, 1996.    At the time Mr. Lovley filed his bankruptcy petition, he could not possibly have  known  who the future title holders of the property would

13

be.    At the time Mr. Lovley filed his Chapter 7 petition, the Plaintiff was an unknown creditor with a future claim.    Mr. Lovley's publication notice was therefore sufficient to bar the Plaintiff's present claims against him.

**4.    MR. LOVLEY DID NOT ACT AS A "CONTROLLER" OF ASHFORD DEVELOPMENT COMPANY NOR DID HE MAKE ANY DECISIONS REGARDING ACTIVITIES ON THE ASHFORD SITE FOLLOWING THE FILING OF HIS BANKRUPTCY PETITION.**

Mr. Lovley was an owner of the Ashford property for one day  on August 23, 1988 when he sold his interest in the property to Ashford Development Company.  Mr. Lovley served as the president of Ashford Development Company from its creation until November 1, 1990 when he was removed as president by the other shareholders.   All construction on the Ashford site ceased by October 18, 1991 when Connecticut National Bank accelerated the note and commenced foreclosure proceedings against Ashford Development Company and its shareholders.  Mr. Lovley did not participate in any decisions of Ashford Development Company nor did he participate in any decisions concerning the site after December 1, 1993, the date he filed his bankruptcy petition.

The Plaintiff's claims against Mr. Lovley as a "controller" of Ashford Development Company are based on the pre-petition conduct of Mr. Lovley.   For the reasons stated above, all personal liability that results from decisions Mr. Lovley made as an officer, director or shareholder of Ashford Development Company was discharged in his bankruptcy.

14

**5. THE PLAINTIFF'S CLAIMS ARE BARRED BECAUSE THIS COURT LACKS JURISDICTION AND THE PLAINTIFF LACKS STANDING DUE TO THE ABSENCE OF THE STATUTORILY REQUIRED UNDERLYING GOVERNMENT ACTION PURSUANT TO SECTIONS 106 AND 107(A) OF CERCLA.**

Defendant, Dennis Lovley, hereby adopts and joins in the argument stated in Section III, B. of *Anthony M. Milo's Memorandum of Law in Support of Motion for Summary Judgment.*

## V. CONCLUSION

For the foregoing reasons, the motion for summary judgment of the Defendant Dennis Lovley should be granted. Defendant Lovley further joins in the motions for summary judgment of Defendants Milo, Martin, Brayfield, Stanton and Florian to the extent that they apply to the Ashford Development Corporation Defendants as a whole.

Respectfully Submitted,

DENNIS V. LOVLEY, Defendant

By: _____
JOSEPH F. DEPAOLO, JR.
His Attorney
P.O. Box 554
Southington, CT 06489-0554
Tel. (860) 621-1225
Fax: (860) 621-6389
jfdesq@depaolo-law.necoxmail.com
Fed. Bar #CT06570

15