UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. | : CASE NO.3:01CV896(MRK) |
| V. | : |
| BENJAMIN SCHILBERG, ET AL. | : MARCH 11, 2005 |

### DEFENDANT ANTHONY M. MILO'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS

The parties have agreed to brief those issues which were not decided by the U.S. Supreme Court in *Cooper Industries, Inc. v. Aviall Services, Inc.*, No. 02-1192. The Plaintiff, CadleRock, does not contest that *Cooper Industries* extinguished its § 113(f) claim in contribution. In that decision, the U.S. Supreme Court held that a private party, which has not been sued under §§ 106 or § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA" or "1980 Act"), may not bring an action for contribution under § 113(f)(1) against other potentially responsible parties to recover cleanup costs incurred voluntarily. As stated in Defendant Milo's Motion for Stay of Proceedings dated July 20, 2004 and reiterated in Defendant Milo's Motion for Judgment on the Pleadings dated December 16, 2004, the Plaintiff has not asserted and is not subject to either a § 106 or 107(a) civil action under CERCLA.

The U.S. Supreme Court in *Cooper Industries* left open the question of whether § 107(a) of CERCLA provided an independent implied right of contribution or right of cost

17086.001/382063.1

recovery. In addition, Defendant Anthony Milo raises the issue of whether this Plaintiff has abandoned its 107(a) CERCLA claims. These issues are discussed below.

## I.  Under the Law of the Second Circuit Plaintiff Cannot Maintain an Independent Right of Contribution or Cost Recovery Action Under Section 107(a) of CERCLA

In February 20, 2002, Defendant Milo filed a Motion to Dismiss the Plaintiff's claims in its First and Second Count under CERCLA § 107(a) because the Plaintiff was a potentially responsible party ("PRP") under CERCLA § 107(a) and, therefore, could not assert a cause of action under that section. The Plaintiff conceded Defendant Milo's argument stating in its brief dated March 20, 2002,

> "CadleRock has decided not to dispute Movants' claim that CadleRock is not entitled to indemnification pursuant to CERCLA Section 107." (See Footnote 6, Page 3 of Plaintiff's Brief.)

It is important to note that Plaintiff's concession acknowledges its understanding of the law in the Second Circuit (and numerous other Courts of Appeal) that § 107(a) does not authorize an independent cause of action to a PRP. The law in the Second Circuit has not changed on this issue. (See Shepard citation list, attached).

Defendant Milo's Motion for Stay was premised on the Second Circuit decisions of *Bedford Affiliates v. Ciles*, 156 F.3d. 416, 422-424 (2d Cir. 1998) and *Prisco v. A & D Carting Corp.*, 168 F.3d. 593, 603 (2d Cir. 1999) and *Bello Associates Limited Partnership v. Barden Corp.*, CV-No.3:01CV01531 (AWT), Slip op, D. Conn. Jan. 7, 2002 at 9-13. Those decisions remain good law today and are cited and/or followed by Second Circuit and United States

District Court for the District of Connecticut decisions through the present time. The gravamen of these decisions is that a potentially responsible party under CERCLA is limited to contribution actions under CERCLA § 113.

The Plaintiff does not dispute that it is a liable party and seeks *contribution* from the defendants in this case. CERCLA defines four classes of responsible parties to include (1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substances owned or operated any facility at which hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels and sites selected by such person (42 U.S.C. §§ 9607(a)(1)-(4). The Plaintiff is the current owner and operator of the property which is the subject of this litigation and of such is one of four classes of responsible parties under CERCLA § 107(a).

In *Bedford Affiliates*, the Second Circuit held that where a party seeking to recover response costs is a PRP within the meaning of CERCLA, he or she may not bring suit for full cost recovery under § 107(a). *Bedford Affiliates*, 156 F.3d at 423-24. Rather, such plaintiff may only bring an action for contribution under CERCLA § 113(f). Id. at 423-25. This decision was followed by the Second Circuit decision in *Prisco*, citing *Bedford Associates*,

3

wherein the Second Circuit held that where a party seeks to recover response costs under CERCLA is itself a PRP, he or she may not sue for full cost recovery, but is limited instead to an action for contribution from other PRPs. In *Bello Associates* which the Connecticut District Court decided in 2002, the Court dismissed the plaintiff's § 107(a) claims stating, that at all relevant times, the plaintiffs were PRPs as owners of the property where the release of hazardous materials had occurred. Since the *Bedford Associates* and *Prisco* decisions, this Court has cited and/or followed *Bedford Associates* in the following cases: followed by *Bello v. Barden Corp.*, 180 F.Supp. 2d 300 (D. Conn. 2002), followed by *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F.Supp.2d 203 (D. Conn. 2001), distinguished and followed by *Durham Mfg. Co. v. Merriam Mfg. Co.*, 128 F.Supp.2d 97 (D. Conn. 2001). Similarly, since the *Bello Associates* decision in Connecticut, the United States District Court for the District of Connecticut has followed the *Bedford Affiliates* and *Prisco* decision in *Northeast Connecticut Economic Alliance v. ATC Partnership*, 272 Conn. 14 (2004).

In addition, since the decision in *Cooper Industries*, two District Courts within the jurisdiction of the Second Circuit have followed *Cooper Industries* in *Elementis Chemicals, Inc. v. T H Agriculture and Nutrition, LLC*, 2005 U.S. Dist. LEXIS 1404 (S.D.N.Y. 03 Civ. 5150 2005) and in *AMW Materials Testing, Inc. v. Town of Babylon*, 348 F.Supp.2d 4 (E.D.N.Y. 2004). In *Elementis Chemicals* the United States District Court for the Southern District of New York acknowledged that the United States Supreme Court in *Cooper Industries* had cited *Bedford Affiliates* in recognition of its holding that PRPs cannot maintain an action for cost recovery under § 107 of CERCLA, and also acknowledged that the *Cooper Industries*

4

17086.001/376015.1

Court withheld judgment on the issue. *Elementis Chemicals*, at 32-33. In holding that *Bedford Affiliates* is still the binding law of this jurisdiction, the District Court in *Elementis Chemicals* added that public policy supports the conclusion that § 107 does not permit a PRP an action in cost recovery. Id., at 40-41. That court notes that permitting PRPs to recover only under § 113(f)'s contribution provision, "would pressure PRPs to settle with some government regarding their own liability for polluting a site." Id., at 41.

The *Elementis Chemicals* decision is consistent with that of the District Court for the Eastern District of New York in *AMW Materials Testing*. In AMW Materials Testing, the District Court cites *Bedford Affiliates*, and holds that:

> Potentially liable parties are barred from seeking indemnification because such a claim, if successful, holds the other party liable for the entire cost of the cleanup. Thus, if the Plaintiffs are potentially responsible, they may not maintain an action for indemnification.

*AMW Materials Testing*, 348 F.Supp.2d, at 12 (internal citation omitted). Accordingly, *Bedford Affiliates* has time and again been demonstrated to be the controlling law of this jurisdiction.

In addition to case law, there are policy reasons to deny the Plaintiff, a responsible party under CERCLA, any right to assert a claim of contribution or cost recovery under §107(a). The U.S. Environmental Protection Agency has argued, and Defendant Milo concurs, that any acknowledgment of a cost recovery or contribution right for a responsible party under

5

§107(a) would nullify the contribution provisions of §113(f). *United Technologies Corporation, et al v. Browing-Ferris Industries,* 33 F.3rd 96 (1st Cir. 1994). There are four strong reasons given for this conclusion. First, §107(a) contains a different period of statute of limitation, generally, six years after initiation of physical on-site construction (§113(g)(2)) versus §113(f), generally three years from the date of judgment or administrative order (§113(g)(3)). Second, courts have traditionally found liability under §107(a) to be joint and several, which should not be available to a plaintiff who is also a responsible party. Third, §113(f)(2) contains a provision immunizing a party from a contribution claim where it settled its liability with the United States or State. Finally, §113(f)(1) provides specific guidance to the Court in allocating liability namely, the party's share is to be based on equitable factors as determined by the Court.

The statutory framework of CERCLA clearly indicates that Congress intended that §113(f) be the only right of contribution in the Act. The fact that prior to SARA some courts permitted contribution may, in part, be attributable to the newness of the statute or the absence of specific challenges focusing the Court's attention on the pre-SARA law on the right of contribution in the absence of an express statutory authorization. In any event, in 1986, the SARA amendments codify Congress' intent with regard to contribution and would thereafter, supercede any judicial concept of contribution conceptualized during the pre-SARA period.

If plaintiffs, who are also potentially responsible parties, had available to them causes of action under both §113(f) and §107(a), they would universally choose the latter provision because of its broader scope would maximize the potential recoveries available to them.

6

17086.001/376015.1

Congress clearly intended to equitably allocate the rights of contribution under § 113(f). In doing so, it also advanced CERCLA's goal to expedite cleanups by encouraging settlements by immunizing settling parties from claims for contribution and delaying contribution actions until there is a civil action under §§ 106 or 107(a) of CERCLA.

In conclusion, the Plaintiff conceded its PRP status on March 20, 2002, when it abandoned its § 107 claim on the merits. This Court, therefore, should conclude that the law of the Second Circuit, as enunciated in *Bedford Affiliates* precludes any action by the Plaintiff under § 107 of CERCLA for cost recovery. In so doing, this Court should grant Defendant Milo's Motion for Judgment on the Pleadings, and extinguish Plaintiff's action as to Defendant Milo.

## II.    As a Threshold Matter, Plaintiff Cannot Prevail Upon Any Claim Sounding in Contribution, Because Plaintiff Has Not Disposed of Any Common Obligation.

Plaintiff may attempt to argue that CERCLA provides either a common law right of contribution or an implied right of contribution under § 107 of that Act, which would be more plaintiff-friendly than the contribution action provided by § 113(f). The United States Supreme Court in *Cooper Industries* refused to rule on the existence of any common law or implied right of contribution stemming from § 107 of CERCLA. *See Cooper Industries*, slip. op., at 11-12. Were Plaintiff to suggest that it is entitled to contribution based upon a common law or implied right under § 107 of CERCLA, that argument would be flawed for the same reasons that the Plaintiff cannot prevail under § 113(f)'s contribution action. Specifically, the Plaintiff has not

7

been subject to any judgment or settlement that would provide the necessary predicate to an action in contribution.

The fundamental requirements of an action in contribution are that the plaintiff establish a common debt of itself and the defendant, and that the plaintiff prove that it has been compelled to pay the entire debt or has discharged more than its fair share of that debt. *See Phillips-Jones Corp. v. Parmley*, 302 U.S. 233, 236 (1937); *Crotta v. Home Depot, Inc.*, 249 Conn. 634, 639-40; 732 A.2d 767 (1999). In the matter at hand, the Plaintiff has failed to assert that it has satisfied any common obligation. The Plaintiff was not subject to any governmental action under § 107 of CERCLA (*See* Defendant Milo's Motion for Summary Judgment; Defendant Milo's Motion For Judgment on the Pleadings), nor has Plaintiff alleged that it paid any judgment or settlement of any kind based upon shared liability with Defendant Milo. Accordingly, the Plaintiff cannot properly pursue any action in contribution.

### III.     Plaintiff Cannot Avail Itself of Any Federal Common Law Right to Contribution.

"There is, of course, 'no general federal common law.'" *Texas Industries v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) *quoting Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Nonetheless, the federal courts have formulated federal common law in two limited situations. First, federal common law has been identified in those narrow areas of the law unique to federal jurisprudence, such as the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases. *Texas Industries*, at 641. Second, "federal common law may also come into play when Congress has vested jurisdiction in the federal courts and

8

17086.001/376015.1

empowered them to create governing rules of law." *Texas Industries*, at 642 *citing Wheedlin v. Wheeler*, 373 U.S. 647, 652 (1963). In order to determine whether Congress has empowered the federal courts to create a federal common law remedy, the courts should look to the statutory language, any relevant legislative history, and the overall regulatory scheme in order to identify whether Congress intended for the courts to alter or supplement the remedies supplied by the legislature. *Texas Industries*, at 645.

As applied to the present matter, the action raised by the Plaintiff is not uniquely federal in nature. A suit between private parties for contribution or cost-recovery does not implicate the duties or obligations of our federal government, and should not be viewed as a proper area for the application of federal common law. This is consistent with the United State's Supreme Court's reasoning in *Texas Industries*, where the Court acknowledged the federal nature of the antitrust laws, but held that an action for contribution amongst anti-trust wrong-doers did not raise the federal concerns that implicate the federal common law. *Texas Industries*, at 642. This Court should not create a remedy or cause of action under the federal common law, in an area where federal common law principles should not apply.

Moreover, a review of the regulatory scheme and history of CERCLA demonstrates that with the passage of SARA, Congress did not intend for the creation of any additional judicial remedies. As the United States Supreme Court acknowledged in *Cooper Industries*, after the passage of CERCLA questions arose as to whether a private entity could seek contribution from other PRPs. See *Cooper Industries*, slip. op., at 2-4. In response to this uncertainty, Congress amended CERCLA in the Superfund Amendments and Reauthorization Act of 1986

9

(SARA), 100 Stat. 1613, to provide for an express claim for contribution codified as CERCLA § 113(f)(1). *See Cooper Industries*, slip. op., at 3-4. Accordingly, the passage of SARA was a legislative act to perfect the remedies available under the regulatory scheme provided by CERCLA. There is no basis from this history of CERCLA, and from the regulatory scheme that it embodies to infer that any additional remedy was intended. In fact, the adoption of SARA strongly indicates that Congress intended that all remedies be expressly stated. Specifically, it should be noted that § 113(f) sets forth a comprehensive balancing all of contribution interests. The section provides for the "allocation of response costs among liable parties using such equitable factors as the court determines are appropriate." Section 113(f)(1) But, CERCLA also provides for protection against claims for contribution where, "a person has resolved its liability to the United States or a State in an administrative or judicially approved settlement..." while at the same time allowing such settlement to reduce the potential liability of the nonsettling parties "by the amount of the settlement." § 113(f)(2)

Congress did not intent to disturb its legislative approach to contribution by authorizing directly or indirectly any other federal right of contribution.

Moreover, the United States Court of Appeals for the Second Circuit identified that the federal common law prior to SARA only provided for contribution under CERCLA in precisely the same manner as what became codified as § 113(f) of CERCLA. In *United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir. 1993), the Second Circuit considered an argument claiming a federal common law right of contribution under § 107 of CERCLA in a case in which the SARA amendments did not apply. However, at the time of the appeal, SARA had

10

17086.001/376015.1

been enacted, and the Second Circuit looked to SARA in deciding the case before it. That court held: "Prior to the 1986 SARA amendments to CERCLA, federal common law principles applied . . . SARA's 1986 provision in § 9613(f) for a statutory cause of action for contribution *codifies* what had been generally held implicit under the 1980 Act." *Alcan*, 990 F.2d, at 724. In so holding, the Second Circuit specified that the common law action implicit under CERCLA was subsumed by the legislative codification of that action. Accordingly, no other federal common law right is available to the Plaintiff in the present case, and the United States Supreme Court's decision in *Cooper Industries* has eviscerated Plaintiff's contribution claim under § 113(f).

Because a private suit in contribution is not exclusively federal in nature, and because the regulatory scheme and history of CERCLA do not support the creation of any additional remedy under CERCLA, this Court should properly reject any claim that the Plaintiff can avail itself of a federal common law action in contribution against Defendant Milo.

**IV.     Likewise, There is No Implied Right to Contribution Under CERCLA.**

The *Cooper Industries* Court mentioned in dicta that there is some speculation as to whether § 107 of CERCLA provides an implied right to contribution in terms other than those expressed in § 113(f). *See Cooper Industries*, slip. op., at 11-12. Significantly, the Court cited both *Texas Industries, supra,* and N*orthwest Airlines v. Transport Workers Union of America*, 451 U.S. 77 (1981), to indicate that the Court does not favor the judicial creation of implied causes of action. *Cooper Industries*, slip. op., at 12. That Supreme Court precedent serves to

11

foreclose the creation or recognition of any implied right of contribution under § 107 in the present case.

In *Northwest Airlines*, the United States Supreme Court describes the appropriate analysis for determining whether a statute that does not expressly provide for a particular private right of action implicitly created that right. First note, CERCLA does expressly create a right of contribution under § 113(f); therefore, seeking an implied, but more plaintiff-friendly, cause of action under § 107 should be entertained by this Court. There is no need to infer what is expressly stated as black-letter law.

Nonetheless, to err on the side of overly disposing of the Plaintiff's claims, the Court in *Northwest Airlines* describes the "ultimate question" in determining if there is an implicit cause of action in a statute is "whether Congress intended to create the private remedy - - for example, a right to contribution - - that the plaintiff seeks to invoke." *Northwest Airlines*, 451 U.S., at 91. The Court indicates that the primary source for this Congressional intent is the statute itself. *Id.*, at 91. However, the Court acknowledges that in the absence of clear Congressional intent to create the cause of action, where Congress enacts a statute to benefit a specific class of persons but fails to provide an express cause of action, a member of the protected class might be entitled to maintain an action upon an implied right. *Id.*, at 92.

In the present case, a review of CERCLA indicates that there is no clear intention of Congress to provide for a right of contribution under § 107. Moreover, the contribution action made available by § 113(f) of that Act clarifies the Congressional intent by specifying the right to contribution that Congress felt appropriate to enact. Therefore, there is no support for the

12

argument that an unmentioned and redundant right in contribution should be implied under § 107 of CERCLA.

Additionally, the Plaintiff cannot properly seek a newly crafted judicial remedy, because CadleRock is not a member of a class that CERCLA intended to protect. The Plaintiff, as a PRP, cannot be considered a member of the class, which CERCLA intended to protect. Unlike the Equal Pay Act at stake in *Northwest Airlines*, CERCLA is not intended to benefit a specific group of persons. Instead, the Act is intended to benefit the public generally through providing mechanisms by which to remediate polluted real property. Certainly, one group not intended to be protected by CERCLA is those persons with liability under that Act. As a potentially responsible party, the Plaintiff is outside of the scope of CERCLA's protection, and cannot claim that Congress had intended to provided a greater benefit to it that the letter of the law indicates. This analysis is bolstered by the reasoning of the United States Supreme Court in *Northwest Airlines*, which held that an employer who discriminated on the basis of gender in establishing its pay scale for employees, could not be considered the beneficiary of either the Equal Pay Act or Title VII, and therefore, could not support the creation of an implied right of contribution under those statutes. *Id.*, at 92. One who has liability under a statute cannot be considered its intended beneficiary.

Whereas Congress gave no indication that it intended for there to be any remedies implied under § 107 of CERCLA, and whereas the Plaintiff is not a member of a class protected by CERCLA, the Plaintiff cannot prevail under any theory of implied right of contribution.

13

## V. The Plaintiff Has Abandoned Its Section 107 Claim.

As stated in Defendant Milo's Memorandum in Support of his Motion for Stay of Proceedings (at p. 2) and Motion for Judgment on the Pleadings (at ¶ 5), and as argued in the Memorandum in Support of Motion for Summary Judgment (at pp. 8-9), the Plaintiff has conceded any claim that it intended to pursue under § 107 of CERCLA. The Plaintiff did so in its March 20, 2002 Memorandum of Law in Opposition to Motions to Dismiss of Schilberg, Simco, Milo, Lovley, Nigro and Florian, where it stated:

> CadleRock has decided not to dispute Movants' claim that CadleRock is not entitled to indemnification pursuant to CERCLA § 107.

Plaintiff's March 20, 2002 Memorandum, at n.6. This express abandonment of the Plaintiff's § 107 claim was reinforced by the Plaintiff's failure to present any argument or support for the conceded § 107 claim. Moreover, when Defendant Milo repeatedly drew attention to the Plaintiff's abandonment of all claims outside of its § 113(f)(1) contribution claim via the three aforementioned pleadings, the Plaintiff failed to present any argument to the effect that the Plaintiff was maintaining any other claim. Plainly, the Plaintiff conceded its § 107 CERCLA claim, and let that claim lie abandoned since March of 2002. The Plaintiff cannot now revive this claim regardless of its attraction to the undecided areas in the *Cooper Industries* decision.

This Court should embrace the doctrine of abandonment that has guided other District Courts in terminating abandoned claims *with prejudice* against the interest of the abandoning party. "The failure to provide argument on a point at issue constitutes abandonment of the

14

issue." *Lawrence v. Sofamor*, Prod. Liab. (CCH) P15,659; 1999 U.S. Dist. LEXIS 12228, at 9 (N.D.N.Y. 1999) (internal citations omitted). This doctrine has been embraced by various courts to justify holding that claims so abandoned are properly to be terminated against the interest of the abandoning party (disposed of with prejudice).

Generally, the issue of abandonment of claims is discussed with some frequency where a party has failed to raise or brief a claim on appeal; however various United States District Courts have held that claims abandoned during the course of trial court proceedings may be properly disposed of with prejudice. *See, e.g., McLaughlin Equipment Company v. Newcourt Credit Group, Inc.*, 2004-2 Trade Cas. (CCH) P74,546; 2004 U.S. Dist. LEXIS 13939, at 41-42 (S.D.Ind. 2004) (granting summary judgment for defendant on claims expressly abandoned, though never withdrawn, by plaintiff); *Lawrence v. Sofamor*, Prod. Liab. (CCH) P15,659; 1999 U.S. Dist. LEXIS 12228, at 8-9 (N.D.N.Y. 1999) (holding that failure to oppose summary judgment on particular claims amounts to abandonment of those claims). For example, in *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F.Supp. 895, 907 S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997), *cert. denied*, 525 U.S. 813, 119 S. Ct. 48 (1998), the United States District Court for the Southern District of New York considered whether it was appropriate to resolve a claim that the plaintiff had failed to support factually and had failed to argue. That court held that the failure to argue the claim during the proceedings justified the dismissal of that claim with prejudice. *See id.*, at 907 & n.11.

Defendant Milo filed two dispositive motions during the period when the Plaintiff's § 107 claim was expressly and undisputedly abandoned. A ruling from this Court on either

15

Defendant Milo's July 2, 2004 Motion for Summary Judgment or Defendant Milo's December 16, 2004 Motion for Judgment on the Pleadings would properly terminate the abandoned § 107 claim in Defendant Milo's favor and with prejudice. As the United States District Court for the Middle District of Pennsylvania has held, "Whether withdrawal *or abandonment* constitutes a final termination of the case in favor of the person against whom the proceedings are brought. . . depends on the circumstances under which the proceedings are withdrawn." *Krisa v. The Equitable Life Assurance Society*, 109 F.Supp.2d 316, 322 (M.D.Pa. 2000) *quoting Bannar v. Miller*, 701 A.2d 232, 239 (Pa. Super. 1997) (emphasis added).

"[A]bsent some circumstance suggesting that an abandonment of a claim is unrelated to the relative merits of the claim, a voluntary withdrawal may be considered a favorable termination for the accused party." *Krisa*, at 322. In the present case, the Plaintiff conceded its § 107 claim in light of motions to dismiss filed by the various defendants in this action. There is no doubt that the Plaintiff's concession was an abandonment related to the lack of merit of its claim.

Permitting the Plaintiff to revive this abandoned claim at this point in the proceedings would defy logic and be unfair to the defendants. The District Court in *Krisa* referenced this issue of fairness when it adopted the reasoning of a Pennsylvania appellate court, which provided a rationale for considering an abandoned claim to be properly terminated against the interest of the party abandoning that claim, stating, "A last-second dismissal in the face of imminent defeat is not favorable to appellant. The [abandoning parties] did not answer the bell in the fight they started, which is a victory for the other side." *Krisa*, at 322 *quoting Bannar*,

16

701 A.2d, at 239. Accordingly, the Plaintiff's claims under § 107 of CERCLA should be resolved with prejudice against the Plaintiff.

### This Court Should Not Permit The Plaintiff to Raise Any Cause of Action Not Averred in its Complaint.

Plaintiff is required to set forth its claims for relief in its complaint. Rule 8, Federal Rules of Civil Procedure. In the present matter, the Plaintiff has not alleged that it has any common law action, nor does it aver that it has a cause of action implied, and not expressed, under CERCLA. *See* Amended Complaint. Plaintiff identifies with specificity the statutory basis for its claims, and therefore, any grounds not specified should not be considered viable at this time. *See* Amended Complaint. Accordingly, this Court should not entertain any arguments presented by the Plaintiff on theories relying upon federal common law or any implied cause of action.

### CONCLUSION

This Court should recognize that the Plaintiff is entirely foreclosed from pursuing any CERCLA claim against Defendant Milo, and in so doing should grant Defendant Milo's pending Motion for Judgment on the pleadings. The law of the Second Circuit as enunciated in *Bedford Affiliates* precludes the Plaintiff, a PRP under CERCLA, from maintaining a cost recovery action under § 107 of CERCLA. The United States Supreme Court's decision in *Cooper Industries* did nothing to upset this settled point of law. Additionally, the Plaintiff has no grounds for contribution, neither implied nor by function of federal common law. Accordingly, this Court should grant Defendant Milo's pending Motion for Judgment on the

pleadings, and in so doing expressly find against the Plaintiff on its abandoned § 107 claims, thereby foreclosing duplicative and meritless litigation between those parties in the future.

DEFENDANT,
ANTHONY M. MILO

By _____
Thomas M. Armstrong, Esq.
Federal Bar Number ct03545
Reid & Riege, P.C.
One Financial Plaza, 21st Floor
Hartford, CT 06103
(860) 278-1150 - Telephone
(860) 240-1002 - Fax
Email: tarmstrong@reidandriege.com

17086.001/376015.1

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was mailed U.S. Mail, postage prepaid on this 11th day of March, 2005 to:

Michael Albano, Esq.
Jill Hartley, Esq.
Sabia & Hartley, LLC
190 Trumbull Street, Suite 202
Hartford, CT 06130-2205

Jeffrey Mirman, Esq.
Levy & Droney PC
P.O. Box 887
Farmington, CT 06034-0887

Steven Berglass, Esq.
Sloan W. Farrell
Seeley & Berglass
121 Whitney Avenue
New Haven, CT 06510

Thomas S. Luby
Luby Olson, P.C.
405 Broad Street
P.O. Box 2695
Meriden, CT 06450

Mr. Thomas Nigro
7 Howard Road
Ashford, CT 06278

Joseph F. DePaolo, Jr., Esq.
132 Main Street
P.O. Box 554
Southington, CT 06489

Jon D. Biller, Esq.
Biller, Sachs, Raio & Bonadies
2750 Whitney Avenue
Hamden, CT 06518

_____
Thomas M. Armstrong

19

17086.001/376015.1