FILED

2005 MAR 11  P 1: 22

U.S. DISTRICT COURT
NEW HAVEN, CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. | : |
| | : |
| V. | |
| | : |
| BENJAMIN SCHILBERG; SCHILBERG INTEGRATED METALS, CORP.; THOMAS NIGRO; ASHFORD DEVELOPMENT CO.; DENNIS V. LOVELY; ANTHONY M. MILO; JAMES A. STEVENS; WILSON MORIN; JEAN G. MARTIN; DAVID W. FLORIAN; THOMAS STANTON, JR.; CHRISTIAN R. BRAYFIELD; CHARLES HILL; and SUBURBAN EXCAVATORS, INC. | : CASE NO. 3:01cv896 (MRK) : : : : : : : MARCH 11, 2005 |

### PLAINTIFF'S MEMORANDUM OF LAW REGARDING THE IMPACT OF THE *AVIALL* DECISION ON THIS LITIGATION AND IN OPPOSITION TO DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

Plaintiff, CadleRock Properties Joint Venture, L.P. ("Plaintiff" or "CadleRock"), submits this memorandum of law on the issue of the impact on this litigation of the Supreme Court's recent decision in Cooper Industries, Inc. v. Aviall Services, Inc., 125 S. Ct. 577 (2004) (hereafter, "Aviall"). This memorandum of law also serves to oppose the motions for judgment on the pleadings filed by Defendants Milo, Stanton, Brayfield, Martin, Lovely, and Nigro.[1]

---

[1] Defendant Milo filed his Motion for Judgment on the Pleadings on or about December 17, 2004 (Doc. 252). Defendants Stanton, Brayfield, Martin, Lovely,

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

Moreover, this memorandum should also be deemed to oppose any and all additional motions for judgment on the pleadings that may be filed on or near the date of this memorandum of law.

## I. INTRODUCTION

This case was stayed by order of the Court on or about July 28, 2004 (Doc. 249) in light of the pending ruling by the United States Supreme Court on Cooper Industries, Inc. v. Aviall Services, Inc., No. 02-1192. The scope of the order was total, staying all remaining discovery. A subsequent order of the Court (Doc. 251) denied Defendants' various motions for summary judgment without prejudice to renew upon the lifting of the stay.

After the Supreme Court issued its decision on December 13, 2004, Defendant Milo filed a motion for judgment on the pleadings, wherein he argued that CadleRock's claim under 42 U.S.C. § 9613(f), Section 113(f) of CERCLA ("§ 113"), should be dismissed in light of the Aviall Court's holding that a private party who had not been the subject of a civil action under § 106 (42 U.S.C. § 9606) or § 107 (42 U.S.C. § 9607) may not maintain an action for contribution under § 113(f) (42 U.S.C. § 9613(f)).

Because there were a number of issues that were not resolved in Aviall, this decision did not preclude CadleRock from continuing to litigate this lawsuit. First, the Aviall Court stated it made no determination as to whether an administrative order under § 106 would qualify as a

---

and Nigro subsequently moved to join in Defendant Milo's motion (Doc. 254, 255, 256, 260). Defendants Stanton's, Brayfield's, Martin's, and Lovely's motions for joinder were granted by the Court on January 11, 2005 (Doc. 257).

-2-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

civil action under § 106 or § 107. Aviall, 125 S. Ct. at 584, n. 5. Second, the Aviall Court elected not to decide, despite strong encouragement from two dissenting Justices, whether an implied right to contribution under § 107(a)(4)(B) is available to parties unable to pursue a § 113(f) contribution claim because they have not yet been the subject of a civil action under § 106 or § 107. Id. at 856. Finally, the Aviall Court did not address an issue that was raised, but not examined, by the panel of the Court of Appeals for the Fifth Circuit, Aviall Services, Inc. v. Cooper Industries, Inc, 263 F.3d 134, 142, n. 6 (5th Cir. 2001), rev'd 312 F.3d 677 (5th Cir. 2002) (en banc), rev'd sub nom., Cooper Industries, Inc. v. Aviall Services, Inc., 125 S. Ct. 577 (2004), that issue being whether a declaratory judgment action regarding the CERCLA liability of the various parties to a lawsuit may be adjudicated in the absence of a viable § 113(f) contribution claim.

As CadleRock will argue herein, the facts of this case are distinguishable from those in Aviall in that CadleRock has not acted as a "volunteer" with regard to the cleanup of the property at issue here (the "Site"), unlike Aviall, which conducted a cleanup after mere prodding by the Texas Natural Resources Conservation Commission. On the contrary, CadleRock has been the subject of a cleanup order from the Connecticut Department of Environmental Protection (the "DEP") since prior to the filing of this action, and has been ordered to investigate and remediate the Site. Because CadleRock is liable to a third party (i.e.,

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

the DEP), CadleRock's § 113(f) claim is distinguishable from Aviall's § 113(f) claim by virtue of Aviall's volunteer status.

Even if CadleRock's § 113(f) claim fails, it nonetheless has a viable contribution claim under § 107(a)(4)(B) for the further reason that the language in Aviall, as well as in Key Tronic Corp. v. United States, 511 U.S. 809 (1994), that plainly states that there exists an indirect right to contribution outside of, and in addition to, the express right to contribution available under § 113(f).

Finally, regardless of whether CadleRock may currently maintain a claim for contribution at this time, this Court should nonetheless address and adjudicate CadleRock's declaratory judgment claim so that all parties will be cognizant of their relative rights and liabilities should CadleRock become the subject of a "civil action" under § 106 or § 107.

## II. ARGUMENT AND AUTHORITIES

### A. CadleRock Is Entitled To Pursue A § 113(f) Contribution Claim Because It Has Already Been Subject To An Administrative Order Pursuant to § 106.

The principle holding of Aviall should not apply to this litigation. Unlike CadleRock, the plaintiff in Aviall incurred cleanup costs purely as a volunteer in that it had neither been the subject of a civil action under § 106 or § 107, nor the subject of an administrative order by a government agency compelling cleanup. For that reason, the Aviall Court limited its holding to the particular circumstances before it and expressly did not apply its holding to circumstances

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

in which a plaintiff filed a § 113 claim after it had been ordered to conduct a cleanup by a federal or state agency. See Aviall, 125 S. Ct. at 584, n. 5 (besides not being the subject of a section § 106 or § 107 action, "[n]either has Aviall been subject to an administrative order under § 106; thus, we need not decide whether such an order would qualify as a 'civil action under section 9606 . . . or under section 9607(a)' of CERCLA. 42 U.S.C. § 9613(f)(1)").

Whereas CadleRock was and remains the subject of a cleanup order by the DEP, Aviall had merely been encouraged by the Texas Natural Resource Conservation Commission via "prodding" letters. Aviall, 312 F.3d 677, 679 (5th Cir. 2002) (en banc). Because there was no apparent force or effect behind these letters, the various courts addressing the Aviall matter viewed Aviall as a "volunteer" when it incurred response costs.[2] Accordingly, the holding of Aviall should be limited on its facts to matters in which the plaintiff landowner seeking contribution is, as was Aviall, a complete volunteer: i.e., it was not compelled in any way to remediate the property at issue. See AMW Materials Testing, Inc. V. Town of Babylon, 348 F. Supp. 2d 4, 11 (E.D.N.Y. 2004) ("The Court in Cooper [Aviall] explained that no provision in

---

[2] "The [Texas Natural Resource Conservation Commission] sent letters instructing Aviall to undertake various investigative and remediation activities. The first such letter, styled a "Corrective Action Directive," contained a detailed list of required activities. Two later letters cited alleged violations of regulations and statutory provisions and indicated that enforcement action would be sought '[i]f you fail to adequately respond.' A fourth letter promised enforcement action if Aviall failed to pursue one of the two suggested remediation options." Aviall, 312 F.3d at 679, n.2.

-5-

SABIA & HARTLEY, LLC   190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
ATTORNEYS AT LAW        tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

CERCLA exists when the clean up is purely voluntary. Cooper [Aviall], 125 S. Ct. at 584. Here, the Plaintiffs voluntarily initiated cleanup of the site and cannot satisfy the requirement of an existing 'specified civil action.' As such, a claim for contribution under § 9613 is not permitted.").

Because Plaintiff incurred investigatory and remediation costs in response to a final administrative order from the DEP, the facts underlying this litigation are sharply different from those in Aviall in that Plaintiff can not possibly be deemed to be a "volunteer." The DEP issued Order No. SRD-080 to Plaintiff's predecessor in interest, Cadle Properties of Connecticut, Inc., on February 26, 1997.[3] After the Site came into the possession of Plaintiff, the DEP replaced Order No. SRD-080 with Order No. SRD-088, and revoked Order No. SRD-080.[4] As summarized by the Connecticut Supreme Court, the Commissioner of the DEP, through Order No. SRD-088, "ordered Cadlerock to undertake extensive investigatory actions regarding the soil, groundwater and solid waste pollution, to undertake remedial actions to

---

[3] A copy of Order No. SRD-080 is attached hereto as Exhibit A. Defendants already received and/or had access to a copy of this Order within a prior, related state court action and as part of the document production within this action.

[4] The DEP notified Cadle Properties of Connecticut, Inc. of the revocation of Order No. SRD-080 and its replacement with Order No. SRD-088 by letter dated November 17, 1997. A copy of this letter is attached hereto as Exhibit B. A copy of Order No. SRD-088, which is dated August 15, 1997, is attached hereto as Exhibit C. Defendants already received and/or had access to copies of the letter and Order SRD-088 within the prior state court action and as part of the document production within this action.

-6-

abate such pollution, to monitor the effectiveness of those remedial actions, and to remove all solid waste on the property." CadleRock Properties Joint Venture, L.P. v. Commissioner of Environmental Protection, 253 Conn. 661, 663 (2000). A final decision with regard to Order No. SRD-088 was issued by DEP hearing officer Donald Levenson on October 23, 1998. Under C.G.S. § 22a-226 and § 22a-432, the DEP had the ability to have the Attorney General bring an action in the Superior Court to enforce the Order and, pursuant to C.G.S. § 22a-226 and § 22a-226a, the ability to assess civil penalties for noncompliance. CadleRock had the opportunity for appeal, and did so, under C.G.S. § 22a-225.

The Superior Court affirmed the DEP's final decision with regard to Order No. SRD-088 and dismissed Plaintiff's administrative appeal. CadleRock Properties Joint Venture, L.P. v. Commission of Environmental Protection, No. CV 98-0492629, 1999 WL 311204 (Conn. Super. Ct. May 5, 1999) (McWeeny, J.). CadleRock's appeal from the judgment of the Superior Court decision was affirmed by the Supreme Court. 253 Conn. 661 (2000).[5]

---

[5] Defendant Milo has already acknowledged before this Court that Order No. SRD-088 was a final judgment, that the DEP had issued an abatement order against CadleRock in connection with the Site, and that the DEP had "ordered CadleRock to undertake extensive investigative actions regarding the soil, groundwater and solid waste pollution, to monitor the effectiveness of those remedial actions, and to remove all solid waste on the property." Defendant Anthony Milo's Memorandum of Law in Support of Motion to Dismiss dated February 20, 2002, p. 16 (Doc. No. 85) (quoting CadleRock v. Commissioner DEP, 253 Conn. 661, 663 (2000)).

-7-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW
190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

The effect of Order No. SRD-088, the issuance of which was upheld by the Connecticut Supreme Court, is to extricate the instant action from the holding of Aviall. Pursuant to the dictates of the DEP contained in Order No. SRD-088, Plaintiff has incurred, and will continue to incur, costs that are recoverable under § 113 for which Plaintiff has alleged Defendants are responsible, in whole or in part.[6] CadleRock's contribution claim toward such present and future costs, under such circumstances, exemplifies a "quintessential claim for contribution."[7]

Because of the statutory enforcement remedies available to the DEP in the event of Plaintiff's noncompliance, the facts of this case are readily distinguishable from those before the Aviall Court. Unlike Aviall, which was merely encouraged by its respective state environmental agency to clean up its property, Plaintiff was and remains the subject of a DEP administrative order. Because the issue of whether an administrative order satisfies the requirements of a "civil order" under § 106 or § 107 was raised but not specifically addressed

---

[6] Indeed, Defendant Schilberg has already admitted his liability. See CadleRock v. Commissioner of Environmental Protection, 253 Conn. at 665 ("During a department investigation in 1992, Benjamin Schilberg acknowledged in writing that approximately thirty years earlier, he had leased this small portion of the site that later became known as the northwest disposal area. He admitted that he had burned insulated copper wire at the location to recover copper for resale, thereby causing copper oxidation of the soil.").

[7] See Bedford Affiliates v. Sills, 156 F.3d 416, 424 (2d Cir. 1998) ("To bring a derivative action to recoup the portion of costs exceeding a potentially responsible person's equitable share of the overall liability . . . it is a quintessential claim for contribution, where a party seeks to apportion liability for an injury for which it is also directly liable.").

-8-

by the <u>Aviall</u> Court, the holding of <u>Aviall</u> should not be expanded to encompass § 113 claims by plaintiffs such as CadleRock, which have become the subject of a final, administrative remediation order.

For these reasons, this Court should find that the holding of <u>Aviall</u> should not extend to the facts of this litigation, and it should deny Defendants' various motions for judgment on the pleadings.

### B. Section 107 Provides Plaintiff With An Implied Right To Contribution That Is Independent Of, And In Addition To, The Express Right Of Contribution Available in Section 113.

The <u>Aviall</u> Court expressly left open whether Aviall may pursue, on remand, an implied right to contribution under Section 107: "[W]e decline to decide whether Aviall has an implied right to contribution under § 107 . . . [W]e need not and do not decide today whether any judicially implied right of contribution survived the passage of SARA."[8] <u>Aviall</u>, 125 S. Ct. at 856. Although the majority of the <u>Aviall</u> Court left this issue for another day, the <u>Aviall</u> dissent was of the opinion that the issue was ripe for a ruling by the Court.

> I see no cause for protracting this litigation by requiring the Fifth Circuit to revisit a determination it has essentially made already: Federal courts, prior to the enactment of § 113(f)(1), had correctly held that PRPs could "recover [under § 107] a proportionate share of their costs in actions for contribution against other

---

[8] "SARA" is the acronym for the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, § 101 <u>et seq.</u>, 100 Stat. 1613 (1986). Section 113 was added to CERCLA with the passage of SARA.

-9-

> PRPs," 312 F.3d at 687; nothing in § 113 retracts that right, <u>ibid.</u> (noting that § 113(f)'s saving clause preserves all preexisting state and federal rights of action for contribution, including the § 107 implied right this Court recognized in <u>Key Tronic</u>, 511 U.S., at 816). Accordingly, I would not defer a definitive ruling by this Court on the question whether Aviall may pursue a § 107 claim for relief against Cooper.

<u>Aviall</u> at 588 (Ginsberg, J., dissenting) (footnote omitted).

In her dissenting opinion, Justice Ginsberg also noted that the <u>Key Tronic</u>[9] Court was unanimous in determining "that § 107 indeed did enable a PRP to sue other covered persons for reimbursement, in whole or in part, of cleanup costs the PRP legitimately incurred." <u>Aviall</u> at 587. Although the <u>Aviall</u> Court downplayed as dicta the <u>Key Tronic</u> Court's discussion of the implied right to contribution existing in § 107(a)(4)(B), the certainty of the <u>Key Tronic</u> Court's language with regard to this issue merits examination.

As emphasized by Justice Scalia in his dissent in <u>Key Tronic</u>,[10] the <u>Key Tronic</u> Court plainly stated several times throughout the decision that in addition to the express right to contribution from other PRPs that exists under § 113(f)(1), a PRP also possesses an implied right to contribution under § 107(a)(4)(B). Whereas the express right to contribution was

---

[9] <u>Key Tronic Corp. v. U.S.</u>, 511 U.S. 809 (1994). Contrary to the <u>Key Tronic</u> majority opinion, Justice Scalia (who was joined on his dissenting opinion by Justice Blackmun and Justice Thomas, who wrote the <u>Aviall</u> decision) believed that right of action contained in § 104(a)(4)(B) was express, rather than implied.

[10] <u>Key Tronic Corp.</u>, 511 U.S. at 822.

-10-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

created through the enactment of SARA, the implied right to contribution resulted from the interpretation given to § 107 by the District Courts prior to SARA's enactment. Key Tronic, 511 U.S. at 816 ("Thus, the statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar a somewhat overlapping remedy in § 107."). See generally, Aviall Services, Inc. v. Cooper Industries, Inc., 312 F.3d 677, 681-83 (5th Cir. 2002) (en banc) ("As enacted . . . CERCLA contained no explicit provision allowing recovery through contribution. Federal courts soon began articulating a federal common law right of contribution to resolve claims among PRP's."), rev'd sub nom., 125 S. Ct. 577 (2004).

The Key Tronic Court repeated its interpretation of § 107(a)(4)(B) later in its decision: "That § 107 imposes liability on A for costs incurred 'by any other person' *implies* – but does not expressly command – that A may have a claim for contribution against those treated as joint tortfeasors." Id. at 818, n. 11 (emphasis in original). Finally, and on the same page of decision, the Key Tronic Court again emphasized that private parties have an implied right to contribution under § 107: "Congress included two express provisions for fee awards in SARA provisions without including a similar provision in either § 113, which expressly authorizes contribution claims, or in §107, which impliedly authorizes private parties to recover cleanup costs from other PRPs." Id.

Other courts have acknowledged the continued, post-SARA existence of an implied right to contribution in § 107. See, e.g., Pinal Creek Group v. Newmont Mining Corp., 118

-11-

F.3d 1298, 1301-02 (9th Cir. 1997) ("[T]he essence of a claim for contribution . . . albeit implicitly, is imbedded in the text of § 107. This conclusion – that § 107 implicitly incorporates a claim for contribution – is unremarkable; most courts had so held even before Congress settled the issue by enacting § 113(f). . . The legislative history behind § 113(f) also supports the conclusion that, in enacting that provision, Congress was only confirming and clarifying an existing claim for contribution under § 107."); United Technologies Corp. v. Browing-Ferris Indus., Inc., 33 F. 3d 96, 99 n. 8 (1st Cir. 1994) ("It is possible that, although falling outside the statutory parameters established for an express cause of action for contribution, see 42 U.S.C. § 9613(f)(1), a PRP who spontaneously initiates a cleanup without governmental prodding might be able to pursue an implied right of action for contribution under 42 U.S.C. § 9607(c)."); General Electric Co. v. American Annuity Group, Inc., AVX, 137 F. Supp. 2d 1, 3 (D.N.H. 2001) ("[C]ourts interpreting CERCLA have routinely recognized that PRPs have an implied right to contribution based on § 9607 . . . Section 9613(f)(1) does not entirely displace the pre-existing implied right of contribution derived from § 9607, however, as the subsection also states, 'nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of civil action for contribution under section 9606 of this title or section 9607 of this title.'"); Catellus Development Corp. v. L.D. McFarland Co., 910 F. Supp. 1509, 1515 (D. Oregon 1995) (plaintiff unable to bring § 107 action because of status as PRP, and unable to bring § 113 action because it had not been

-12-

ordered by EPA to clean up site and had not been sued by non-liable party for cost recovery, was not left without remedy; plaintiff still had private right to contribution under § 107(a)) (citing cases).

Although the <u>Aviall</u> Court expressly recognized the presence of an implied right to contribution under § 107, it also stated that a plaintiff might not be able to rely upon that implied right in light of the express language of the first sentence of § 113(f)(1), which requires that a plaintiff bringing a contribution claim under that section first be the subject of a civil action under § 106 or § 107. The <u>Aviall</u> Court reached this conclusion, despite the fact that the <u>Aviall</u> Court also determined that the saving clause "rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of action for contribution available to a PRP." <u>Aviall</u>, 125 S. Ct. at 584.

Although the <u>Aviall</u> Court stated that the saving clause of § 113(f)(1) does not preserve the implied right to contribution under § 107(a)(4)(B) that was judicially determined pre-SARA and subsequently acknowledged by various courts, including the Supreme Court itself in <u>Key Tronic</u>, the <u>Aviall</u> Court did not venture to say what precisely the saving clause does preserve. Rather than address the issue directly, the <u>Aviall</u> Court stated, in dicta, that the saving clause could not be read to authorize a § 113(f)(1) claim that was not brought "during or following" a civil action," because to do so "would again violate the settled rule that we must, if possible, construe a statute to give every word some operative effect." <u>Aviall</u> at 584.

-13-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

The Aviall Court left the issue of the interplay between the saving clause of § 113(f)(1) and the implied right to contribution contained in § 107(a) to be determined at some later date. This Court, however, need not do so. This Court should hold, as the Aviall dissent encouraged the Aviall majority, that a PRP's implied right to contribution from other PRPs pursuant to § 107(a) was preserved, post-SARA, by the saving clause of § 113(f)(1), even if the plaintiff PRP was not yet the subject of a civil action under § 106 or § 107. By virtue of such a holding, Plaintiff should be deemed to have a right to continue its pursuit against Defendants for contribution pursuant to § 107(a).[11]

### C. Even If Plaintiff's Section 113 Claim Does Not Survive *Aviall*, Which Plaintiff Vigorously Denies, This Court Should Nonetheless Issue A Declaratory Judgment Regarding The Extent of Defendants' Liability.

Regardless of whether Plaintiff has a viable contribution claim under § 113 in light of Aviall, there is nothing standing in the way of this Court to decide Plaintiff's Second Count,

---

[11] In its Amended Complaint dated November 30, 2001, Plaintiff alleged Defendants' liability under both § 107(a) and § 113(f). See Amended Complaint, First Count, ¶¶ 55, 61, 63 and Third Count, ¶ 72. Although Plaintiff elected not to pursue a cost recovery action pursuant to § 107 (see Plaintiff's Memorandum of Law in Opposition to Motions to Dismiss dated March 20, 2002, Doc. No. 91), particularly in light of the holding of Bedford Affiliates v. Sills, 156 F.3d 416 (2d Cir. 1998), Plaintiff specifically alleged Defendants' liability under § 107 in asserting its § 113(f) claim. When Aviall was faced with the same issue, it alleged liability under both § 107 and § 113 in the identical manner as CadleRock. See Aviall, 125 S. Ct. at 587 ("Aviall's use of §§ 107 and 113 in tandem to assert a contribution claim conformed its pleading to then-governing Fifth Circuit precedent, which held that a CERCLA contribution action arises through the joint operation of § 107(a) and § 113(f)(1).").

-14-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW
190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

wherein Plaintiff "seeks a judicial declaration of its rights and legal relations with defendants pursuant to 28 U.S.C. § 2201." Amended Complaint, Second Count, ¶ 64. Obtaining a declaratory judgment within this proceeding would establish the degree of liability among the parties if, and when, Plaintiff becomes the subject of a civil action under § 106 or § 107.

The Declaratory Judgment Act provides, in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought.

42 U.S.C. § 2201(a). The declaratory judgment remedy affords a means "by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief had not yet done so." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2751, p. 456. Although the difference between a concrete, justiciable controversy and a hypothetical, unjusticiable controversy "is one of degree, to be determined on a case by case basis," Muller v. Olin Mathieson Chemical Corp., 404 F.2d 501, 504 (2d Cir. 1968), federal courts have held that a party may seek a declaratory judgment action regarding § 113 liability regardless of whether that party has been the subject of a § 106 or § 107 action.

-15-

In its decision dismissing Aviall's § 113 claim, the Court of Appeals for the Fifth Circuit noted in dicta "that while some district courts agree that a party filing a § 113(f)(1) action requires a prior or pending § 106 or § 107(a) claim against it, they add that a party who does not face such a claim can at least ask for a declaratory judgment in the event that it is found liable under CERCLA." Aviall Services, Inc. v. Cooper Industries, Inc., 263 F.3d 134, 142, n. 6 (5th Cir. 2001), rev'd 312 F.3d 677 (en banc) (2002), rev'd, sub nom., 125 S. Ct. 577 (2003).  District courts that have denied motions to dismiss claims for declaratory relief in such circumstances include Alloy Briquetting Corp. v. Niagara Vest, Inc., 756 F. Supp. 713, 718 (W.D.N.Y. 1991), wherein the defendants unsuccessfully challenged the plaintiff's efforts to obtain a declaratory judgment with regard to the defendants' liability under § 113 on the grounds that the "claim is not yet ripe because plaintiff has not yet been held liable for response costs or entered into a settlement regarding response costs under CERCLA." In denying the Alloy Briquetting defendants' motion to dismiss, the court held that the declaratory judgment action was not too speculative or remote to constitute a distinct or palpable injury that would be ripe for adjudication:

> New York federal courts have rejected the notion that a government order or prior government approval is a prerequisite to recovery in a private CERCLA suit. [In those cases], as in this case, the plaintiff sought a declaratory judgment as to liability for future response costs under § 107 of CERCLA. See also Cadillac Fairview/California v. Dow Chemical Co., 840 F.2d 691, 696 (9th Cir. 1988) ("The absence of a government enforcement action

-16-

> under CERCLA does not render the controversy between the
> party seeking declaratory relief and the party who owned the site
> at the time of the hazardous waste disposal remote and
> hypothetical."). I must, therefore, reject defendants' ripeness
> argument.

Alloy Briquetting, 756 F. Supp. at 719 (citations omitted).

Similarly, in Pape v. Great Lakes Chemical Co., No. 93 C 1585, 1993 WL 424249, at * 8 (N.D. Ill. Oct. 19, 1993) (Marovich, J.),[12] where the defendant argued that the plaintiffs were not entitled to a declaration of the defendants' liability for future responses costs, the court held that the viability of the plaintiffs' § 113 claim was irrelevant to its decision:

> [T]he Papes have not yet been found liable under CERCLA and
> point to Defendants as the sole party responsible for the alleged
> releases at the facility. As such, they are not entitled to
> contribution under § 9613(f) at this time. However, the Papes
> have also requested a Declaratory Judgment in their favor as to
> any future response costs. Whether or not the Papes will
> ultimately receive damages is not relevant to our determination of
> whether such a declaration is appropriate

Pape v. Great Lake Chemical Co., 1993 WL 424249, at * 8. In a footnote within the foregoing excerpt, the Pape Court gave no credence to the defendants' argument that the plaintiffs' pursuit of declaratory relief was a futile exercise:

> Defendants argue that since the Papes no longer own the property
> and apparently have completed their response efforts, "it is
> extremely unlikely that Plaintiffs could ever be found liable"
> under CERCLA. (Def. Reply Mem. At 5). While the Papes may

---

[12] A copy of the Pape decision is attached hereto as Exhibit D.

-17-

> not recover contribution at this time, they may seek a declaration of the Defendants' liability for response costs in comparison to their liability for such costs. The Papes are not free from any potential liability under CERCLA, simply because they no longer own the property. At this stage, the facts certainly are not so clear that the Court can say the Papes have no future liability. For these reasons, the Papes may seek a declaratory judgment.

Id. at n. 6. See also Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986) (plaintiff's claim for declaratory relief was ripe because "the essential fact establishing Wickland's right to declaratory relief – the alleged disposal of hazardous substances at the Selby site at the time Asarco owned and operated the smelting facility – has already occurred. The absence of government enforcement actions against Wickland under CERCLA does not render the controversy between Wickland and Asarco remote and hypothetical."); Allied Princess Bay Co. #2 v. Atochem North America, Inc., 855 F. Supp. 595, 602-03 (E.D.N.Y. 1993) ("Allied may pursue a declaratory judgment that defendant is liable as a responsible party under CERCLA for plaintiff's response costs, even if in the long run it turns out that defendant is contractually insulated from liability for the full amount of plaintiff's response costs."); Rockwell International Corp. v. IU International Corp., 702 F. Supp. 1384, 1388 (N.D. Ill. 1988) ("the adjudication of all of the issues arising out of a request for declaratory relief will not and need not result in any calculation or immediate payment of damages").

-18-

In light of the foregoing, there is ample precedent for this Court to allow this litigation to go forward so that the Court may adjudicate CadleRock's declaratory judgment claim, even in the unlikely event that this Court dismisses CadleRock's § 113 claim due to Aviall holding.

### III. CONCLUSION

For all the foregoing reasons, this Court should hold that Aviall has no bearing on this litigation and deny the Defendants' motions for judgment on the pleadings.

                                       PLAINTIFF, CADLEROCK PROPERTIES
                                       JOINT VENTURE, L.P.

                                       *[signature]*
                                       Jill Hartley
                                       Fed. Bar No. CT 10570
                                       Michael G. Albano
                                       Fed. Bar No. 21440
                                       Sabia & Hartley, LLC
                                       190 Trumbull Street, Suite 202
                                       Hartford, CT 06103
                                       Phone: (860) 541-2077
                                       Facsimile: (860) 713-8944

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing has been mailed, postage pre-paid this 11th day of March, 2005 to counsel of record and pro se party as follows:

Thomas M. Armstrong, Esq.
Lawrence H. Lissitzyn, Esq.
Reid & Riege, P.C.
One State Street - 18th Floor
Hartford, CT 06103-3185
*Counsel for Defendant Anthony Milo*

Joseph F. DePaolo, Jr., Esq.
132 Main Street
P.O. Box 554
Southington, CT 06489
*Counsel for Defendant Dennis Lovely*

Steven Berglass, Esq.
Seeley & Berglass
121 Whitney Avenue
New Haven, CT 06510
*Counsel for Defendant David Florian*

Mr. Thomas Nigro
7 Howard Road
Ashford, CT 06278
*Pro Se*

Jon David Biller, Esq.
Benjamin R. Boutaugh, Jr., Esq.
Biller, Sachs, Raio & Bonadies
2750 Whitney Avenue
Hamden, CT 06518
*Counsel for Defendant Jean Martin*

Jeffrey R Mirman, Esq..
Joseph Sappington, Esq.
Levy & Droney PC
P.O. Box 887
Farmington, CT 06034-0887
*Counsel for Defendant Benjamin Schilberg*

Thomas S. Luby, Esq.
Luby, Olson, Mango, Gaffney & DeFrances, P.C.
405 Broad Street
P.O. Box 2695
Meriden, CT 06450-1695
*Counsel for Defendants Thomas Stanton and Christian Brayfield*

_____
Michael G. Albano

E:\WPDOCS\CADLE\ASHFORD\CERCLA\mol2.opp.judg.plead.Aviall.wpd

-20-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW
190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com