Westlaw.

1993 WL 424249
1993 WL 424249 (N.D.Ill.)
(Cite as: 1993 WL 424249 (N.D.Ill.))

Page 1

▷
**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.


United States District Court, N.D. Illinois.

Floyd D. PAPE and Bernice L. Pape, Plaintiffs,
v.
GREAT LAKES CHEMICAL CO., an Illinois
corporation, and James R. Lingle,
Defendants.

No. 93 C 1585.

Oct. 19, 1993.


MEMORANDUM ORDER AND OPINION

MAROVICH, District Judge.

*1 Plaintiffs, Floyd D. Pape and Bernice L. Pape ("the Papes"), are the former owners of the facility at 1985 Anson Drive, Melrose Park, Illinois. Defendant Great Lakes Chemical Company ("Great Lakes") leased this property from the Plaintiffs, and utilized the facility from June 1, 1983 to January 1991. Defendant James R. Lingle ("Lingle") was the President and Chief Operating Officer of Great Lakes during all times relevant to this proceeding. Plaintiffs filed a three count Complaint against Defendants. In Count I, the Papes seek recovery for response costs under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9607 (1991) ( "CERCLA"). In Count II, the Papes seek contribution from the Defendants pursuant to CERCLA, 42 U.S.C. § 9613(f), the Illinois "Joint Tortfeasor Contribution Act," 740 ILCS 100/2 (1993) and Illinois common law. In Count III, the Papes assert an Illinois common law claim for breach of contract pursuant to this Court's supplemental

jurisdiction. Defendants now move this Court to dismiss Counts I and II of the Papes' Complaint for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Should the Court grant the motion with respect to Counts I and II, Defendants move to dismiss Count III for lack of supplemental jurisdiction. For the following reasons, we deny Defendants' motion to dismiss.

I. *FACTUAL BACKGROUND* [FN1]

Until December 23, 1991, the Papes, as beneficiaries of Roselle State Bank and Trust Company Trust No. 1136, owned a facility located at 1985 N. Anson Drive, Melrose Park, Illinois ("facility"). On April 20, 1983, the Papes and Great Lakes entered into an industrial building lease whereby Great Lakes leased this facility. On June 1, 1983, Great Lakes began occupying the facility for use as a commercial warehouse, including general chemical packaging and distribution. On March 24, 1988, Great Lakes extended the original term of the lease for an additional five-year period beginning on June 1, 1988 and ending on May 31, 1993.

Between June 1, 1983 and January 1991, Defendants stored, utilized and disposed of hazardous substances at the facility. In 1991, Great Lakes abandoned the property, leaving behind chemicals including hazardous substances. [FN2] The Papes discovered releases of hazardous substances in or about the facility. The Papes claim they incurred costs in removing the hazardous substances from the facility and now have brought this action under CERCLA to recover those costs from Defendants.

II. DISCUSSION

When considering a motion to dismiss, the court assumes the truth of all well-pled factual allegations and makes all possible reasonable inferences in favor of the plaintiff. *See Janowsky v. United States*, 913 F.2d 393, 395 (7th Cir.1990). A court should not dismiss a complaint unless it appears beyond a doubt that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1993 WL 424249                                                    Page 2
1993 WL 424249 (N.D.Ill.)
(Cite as: 1993 WL 424249 (N.D.Ill.))

plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Ross v. Creighton University*, 957 F.2d 410. 413 (7th Cir.1992); *Gorski v. Troy*, 929 F.2d 1183. 1186 (7th Cir.1991). In addition, the federal rules make it clear that plaintiffs need not set forth detailed pleadings equivalent to proof of their claims.

*2 A complaint filed in federal court must contain (1) a short and plain statement of jurisdiction; (2) a short and plain statement of the claim showing the pleader is entitled to relief; and (3) a statement of the relief sought. Fed.R.Civ.P. 8(a). The federal rules generally do not require detailed fact pleading. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir.1992). The function of a complaint under the federal rules is to notify defendant of plaintiff's claim rather than to detail evidence which, if true, would show that plaintiff should prevail. *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909. 915 (7th Cir.1985). With these principles in mind, we now consider the Defendants' motion to dismiss.

III. COUNT I--CERCLA LIABILITY

The Papes claim in Count I of their Complaint that the Defendants are liable to them under CERCLA for the costs they incurred in responding to the release of hazardous chemicals they discovered at the facility. A private party bringing suit under CERCLA must allege that: (1) the defendant falls within one of the categories of "covered persons" under § 9607(a); (2) the site in question is a facility as defined by CERCLA; [FN3] (3) a release or threatened release occurred at the facility; (4) the release caused plaintiff to incur response costs consistent with the national contingency plan. *Environmental Transp. Systems, Inc. v. Ensco, Inc.*, 969 F.2d 503. 506 (7th Cir.1992). Defendants claim the Papes have not sufficiently alleged three of the four elements necessary to sustain a cause of action under CERCLA, and so move to dismiss Count I of the Papes' Complaint.

A. *Potentially Responsible Parties*

Defendants first assert that the Papes' Complaint fails to adequately allege that the Defendants are within any of the categories of liable parties under § 9607(a). CERCLA defines the term "person" as including an individual, firm, corporation, association, partnership, consortium, joint venture, and commercial entity. 42 U.S.C. § 9601(21). In Count I, the Papes explicitly allege that both Defendants are "persons" as defined in § 9601(2). (Pl.Compl. ¶ 9). Undoubtedly, the Defendants fall within this broad definition of "persons."

Now, as to whether the Papes have adequately alleged the Defendants are persons potentially liable under § 9607(a), we start with the detailed language of the statute. Persons liable under § 9607(a) include:

(1) the owner or operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement or otherwise arranged for disposal or treatment ... of hazardous substances owned or possessed by such person, by any other party or entity, at any facility ... owned or operated by another party or entity and containing such hazardous substances, and
*3 (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs....

42 U.S.C. § 9607(a). The CERCLA definition of "owner or operator" includes "in the case of an onshore facility or an offshore facility, any person owning or operating such facility." 42 U.S.C. § 9601(20)(A)(ii). [FN4] CERCLA provides that the term "disposal" shall mean the "discharge, deposit, injection, dumping, spilling, leaking, or placing" of hazardous waste into or on any land or water so that such hazardous waste "may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 9601(29); 42 U.S.C. § 6903(3).

Although the Papes, as lessors, might be considered the owners of the land in the traditional sense, the lessee of a site where a release or threatened release of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1993 WL 424249                                                                  Page 3
1993 WL 424249 (N.D.Ill.)
(Cite as: 1993 WL 424249 (N.D.Ill.))

hazardous substances occurred is considered an "owner" for purposes of CERCLA liability. *United States v. Mexico Feed & Seed Co., 980 F.2d 478, 484 (8th Cir.1992)* (holding that lessee waste oil service company was a "responsible party" for CERCLA purposes); *United States v. A & N Cleaners & Launderers, Inc., 788 F.Supp. 1317, 1332-34 (S.D.N.Y.1992)* (holding that lessee/sublessor was "owner" within meaning of CERCLA statute rendering it potentially liable for response costs); *United States v. South Carolina Recycling and Disposal, Inc., 653 F.Supp. 984, 1003 (D.S.C.1984)*, (lessee who controlled site "effectively stood in the shoes of property owners"), *aff'd in part and vacated in part sub nom., United States v. Monsanto Co., 858 F.2d 160 (4th Cir.1988)* (lessee did not appeal this aspect of district court judgment), *cert. denied,* 490 U.S. 1106 (1989).

In *South Carolina Recycling,* the government brought suit against property owners and the lessee of the property to recover response costs for the removal of hazardous wastes. The court looked to the definition provisions of CERCLA as evidence that site control constitutes an important consideration in determining who qualifies as an "owner" under § 107(a). In considering the liability of the lessee, the court noted that lessees essentially stand in the shoes of the property owners by maintaining control over and responsibility for the use of the site. 653 F.Supp. at 1003. Accordingly, the court held that "site lessees like [defendant] should, along with the property owners themselves, be considered "owners" for purposes of imposing liability under Section 107(a)." *Id.* The court further held that, in addition to and apart from being liable as an "owner" of the property, defendant lessee was also liable as an "operator" because it directed the storage and disposal of hazardous waste at the site during its leasehold. *Id.*

*4 In Count I, the Papes allege that Great Lakes "leased" and "used" the facility between June 1, 1983 and January 1991, as a chemical packaging and distribution warehouse. (Pl.Compl. ¶ 6). The Papes also allege that between June 1, 1983 and January 1991, Defendants stored, utilized, and disposed of hazardous substances at the facility. (Pl.Compl. ¶ 11). Finally, the Papes also assert that Great Lakes

abandoned the property and left barrels of chemicals behind and that releases of hazardous substances were discovered in or about the facility. (Pl.Compl. ¶ 12).

Taken together, the Papes' allegations state a claim that Great Lakes, as lessee, exercised control over the facility as owners or operators at the same time as hazardous wastes were being stored, utilized and disposed there. Accepting for purposes of this motion the truth of these allegations and all reasonable inferences arising from them, this Court finds that Papes have sufficiently alleged that Great Lakes is a "person" potentially liable as an "owner or operator" under § 9607(a)(1), (2) for the alleged response costs incurred by the Papes.

CERCLA's definition of "person" includes individuals, as well as corporations, and does not automatically exclude corporate officers or employees. 42 U.S.C. § 9601(21); *United States v. Northeastern Pharmaceutical & Chemical Co., 810 F.2d 726, 743 (8th Cir.1986),* *cert. denied,* 484 U.S. 848 (1987). In *Northeastern Pharmaceutical,* the United States brought an action to recover response costs from a number of defendants, including an officer of a chemical manufacturing company. The government argued that the individual officer could be held individually liable under CERCLA. The Eighth Circuit considered CERCLA's expansive definition of "person" and reasoned that:

> construction of CERCLA to impose liability upon only the corporation and not the individual officers and employees who are responsible for making corporate decisions about the handling and disposal of hazardous substances would open an enormous, and clearly unintended, loophole in the statutory scheme.

*Id.* at 743. The court concluded that the authority to control the handling and disposal of hazardous waste was critical to the statutory scheme, and so found the corporate officer was liable under CERCLA. *Id.* at 743-44.

In the present case, the Papes allege that Lingle was President and Chief Executive Officer of Great Lakes during all relevant times. The Papes further allege that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Lingle had the power to control the practice and policy of Great Lakes with specific responsibility for health and safety practices, including the disposal of hazardous waste. These allegations sufficiently state a claim that Lingle, by virtue of his position within Great Lakes and his active authority over hazardous waste disposal, is a person potentially liable under CERCLA. *See* 42 U.S.C. § 9607(a)(3). Consequently, the Papes have satisfied the first pleading requirement of their CERCLA claim as to both Defendants.

B. *Actual or Threatened Releases*

*5 The second element of a CERCLA claim requires the Papes to allege a release or threatened release from the facility. *Environmental Transp. Systems, Inc. v. Ensco, Inc.,* 969 F.2d 503, 506 (7th Cir.1992). Defendants contend that the Papes have not sufficiently alleged a release of the hazardous substances. CERCLA defines "release" as:

> any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)....

42 U.S.C. § 9601(22). Relying heavily on *Powell Duffryn Terminals, Inc. v. CJR Processing, Inc.,* 808 F.Supp. 652 (N.D.Ill.1992), Defendants contend that the Papes have failed to allege a release or threatened release of hazardous substances into the environment.

In *Duffryn Terminals,* the owner of a public tank facility for the storage of liquids brought a CERCLA claim to recover response costs for the removal of hazardous waste against the company that had leased the tank. The plaintiff alleged that, as lessor, it was ill-equipped to handle hazardous wastes and that the defendant as lessee had failed to properly label the tanks as containing hazardous wastes. The plaintiff argued that those assertions constituted an allegation of a threatened release of hazardous materials into the environment sufficient to plead a CERCLA claim. The court determined that CERCLA required more

than a mere inability to deal with a release. 808 F.Supp. at 654-55. Accordingly, the court found the plaintiff's allegation was legally insufficient in the absence of any claim that the hazardous substances were capable of escaping into the environment. *Id.*

Unlike the plaintiff in *Duffryn Terminals,* the Papes have alleged there was a release of hazardous substances discovered "in or about" the facility, and not merely a possible threat of release due to parties being ill equipped to handle those substances left behind by defendants. (Pl.Compl. ¶¶ 12, 14). The Papes' Complaint simply does not suffer from the same infirmity as the complaint in *Duffryn Terminals.*

While the Papes have not detailed the circumstances surrounding the alleged releases, this is not a fatal defect. A CERCLA complaint which alleges a release or threatened release need not specifically allege the manner in which the release occurred. *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1153 (9th Cir.1989). In *Ascon Properties,* the defendant in a CERCLA case moved to dismiss the plaintiff's complaint for failure to specifically allege the manner in which the release occurred. The court considered the structure of CERCLA as well as the policies underlying notice pleading, and found that the mere allegation of release or threatened release from a facility provided sufficient notice to the defendant. *Id.* at 1153. The court concluded that "a plaintiff need not allege the particular manner in which the release of hazardous substances has occurred in order to make out a prime facie claim" under CERCLA. *Id.* This Court agrees and finds the Papes' allegations of a release sufficient to state a claim for recovery under CERCLA.

*6 Defendants also argue that a valid CERCLA claim must allege a release or threat of release "into the environment." CERCLA defines "environment" to include "land surface or subsurface strata, or ambient air within the United States...." 42 U.S.C. § 9601(8). As one court noted, the EPA has defined "ambient air" as "air that is not completely enclosed in a building or structure." 50 Fed.Reg. 13,462-63 (1985); *see Cyker v. Four Seasons Hotels, Ltd.,* No. 90-11929-Z, 1991 WL 1401, at *2, 1991 U.S.Dist. LEXIS 1310, at *4 (D.Mass. Jan. 3, 1991). , The issue is whether the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1993 WL 424249
1993 WL 424249 (N.D.Ill.)
(Cite as: 1993 WL 424249 (N.D.Ill.))

Page 5

Papes' allegation that releases were discovered "in or about" the facility sufficiently pleads a release into the environment.

In *Cyker*, the plaintiffs occupied a residential apartment adjacent to the defendant's health club. The plaintiffs alleged that chemicals from the defendant's pool were seeping into the plaintiffs' apartment, causing physical symptoms which made the apartment temporarily uninhabitable. The court reasoned that "CERCLA was not intended to provide a civil remedy every time hazardous substances are found in a building's interior" and "to define 'the environment' so as to encompass the interior of a hotel/condominium complex would stretch the statute far beyond the particular ills that Congress sought to remedy." *Id.* Because the plaintiffs had not alleged that the hazardous substances escaped beyond the enclosure of the building, the court held that the plaintiffs had failed to state a cause of action under CERCLA. *Id.*

As noted above, the Papes have alleged that releases were discovered "in or about" the facility. At the pleading stage, this is enough to put the Defendants on notice that the Plaintiffs have alleged a release "about," or beyond the confines of the facility. This allegation gives rise to the reasonable inference that some of the alleged releases were outside the building interior or at least exposed to the "ambient air." Accordingly, we hold that the Papes have sufficiently alleged a release "into the environment" for the purposes of pleading a CERCLA claim.

Defendants also claim that the Papes failed to claim the release occurred during the Defendants' tenancy at the facility. While this Court doubts that a tenant could avoid CERCLA liability by the simple expedient of abandoning the leasehold and stored hazardous substances prior to any actual release of those hazardous substances, we need not decide that issue here. Contrary to Defendants' suggestion, the Papes have alleged that the Defendants stored, used and disposed of hazardous substances at the facility during their tenancy and that a release or threatened release was discovered at the same facility after the Defendants abandoned the property. Under these circumstances, it is a reasonable inference that Defendants may be

responsible for the alleged releases and that they may have occurred during their tenancy.

Moreover, as we have already noted, plaintiffs need not allege the particular manner or circumstances surrounding the alleged releases. Consequently, we find that the Papes need not specify the exact times when releases occurred. Thus, we hold the Papes have adequately alleged the potential responsibility of the Defendants for the alleged releases.

*7 The final requirement of CERCLA pleading at issue here requires plaintiffs to allege that they have incurred response costs. *Environmental Transp. Systems*, 969 F.2d at 506. The Papes explicitly allege that they have incurred response costs consistent with the national contingency plan as a result of the releases at the facility. As we have found above, the Papes have sufficiently alleged that the Defendants may be responsible for these releases. Nonetheless, in their final objection to Count I of the Complaint, Defendants claim that no set of facts exists to support the Papes' allegation that Defendants arranged for the disposal of substances at the premises, or that Plaintiffs incurred response costs due to any action by Defendants in violation of CERCLA. Defendants' unsupported contention, however, is not one this Court can resolve on a motion to dismiss.

In reviewing a complaint before any evidence has been received, the issue before the court is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *See, e.g., Orthmann*, 757 F.2d at 915. Defendants may raise the issue of whether facts exist to support the Papes' claim on a motion for summary judgment or at trial. Accordingly, based on the allegations contained in the Papes' Complaint and our discussion above, this Court finds the Papes have sufficiently pleaded a CERCLA claim against Defendants. [FN5]

IV. COUNT II--CONTRIBUTION

In Count II the Papes seek contribution from the Defendants pursuant to CERCLA, 42 U.S.C. § 9613(f)(1); the Illinois "Joint Tortfeasor Contribution

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1993 WL 424249
1993 WL 424249 (N.D.Ill.)
(Cite as: 1993 WL 424249 (N.D.Ill.))

Page 6

Act," 740 ILCS 100/2 (1993) and Illinois common law. The Papes also seek a declaration of Defendants' liability for any potential future response costs. Defendants, however, claim they are not and cannot be liable to the Papes for contribution costs. Specifically, the Defendants argue that the Papes' claim for CERCLA contribution "cannot stand in the absence of Plaintiffs' allegation they incurred costs in response to a government order and are themselves liable parties since CERCLA contribution is only available among jointly liable parties." (Def.Mem. in Supp. of Mot. at 3).

Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), creates a private right of action whereby "any person may seek contribution from any other person who is liable or potentially liable under section 9607." This section of CERCLA codified the common law principle that contribution may only be obtained from parties liable under the governing law. *Kelley ex rel. Michigan Natural Resources Comm'n v. Arco Industs. Corp.*, 739 F.Supp. 354, 357 (W.D.Mich.1990). Under CERCLA, the owner of a polluted facility may seek contribution from the lessee operator. *In re Kent Holland Die Casting & Plating, Inc. v. Leitch*, 125 B.R. 493 (Bankr.W.D.Mich.1991). As discussed earlier, the Papes have sufficiently alleged that the Defendants are at least "potentially liable" under § 9607(a), the governing law. With this prerequisite met, we address the remainder of Defendants' arguments.

*8 Contrary to the assertion of Defendants, a government-approved cleanup response plan for dealing with hazardous substances is not a prerequisite for an action to recover costs from alleged prior operators. *Rockwell Internat'l Corp. v. UI Internat'l Corp.*, 702 F.Supp. 1384, 1389 (N.D.Ill.1988). The Defendants, however, are correct that **"contribution is a remedy available to parties held liable, through judgment or settlement, in some damages action."** *Id.* To receive any **"actual compensation ... the party [seeking contribution] must have been found liable as a defendant in an earlier or pending action."** *Id.*

In *Rockwell,* the plaintiff purchased a facility and later discovered hazardous substances. The plaintiff then filed suit under CERCLA to obtain contribution relief

from alleged prior operators of the facility. The plaintiff sought a declaratory judgment regarding the parties' liability and how that liability should be apportioned. The defendants contended in their motion to dismiss that the plaintiff's action was premature because removal action was not commenced or approved by the government and because the plaintiff itself was not a defendant in any suit brought under CERCLA. *Id.* at 1386.

The court reasoned that the purposes of CERCLA would be best-served by allowing private parties to implement a response program without first obtaining government approval. Accordingly, the court held that a party may recover costs even if the government has not yet approved the response plan. *Id.* at 1387. The court then considered liability under § 9607(a) as a prerequisite to a § 9613(f) action. Construing the provision in § 9613(f) that **"nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607,"** the *Rockwell* court found it did not derogate from the requirement that a finding of liability must precede an actual award of contribution. Rather, the court interpreted this provision as assuring the availability of contribution in other contexts, such as a claim for contribution under state law. *Id.* at 1389.

The district court went on to consider the plaintiff's request for declaratory judgment and concluded that "the purposes of CERCLA are served by allowing a declaratory judgment under § 9613(f)." *Id.* The court recognized the difficulty in apportioning liability in the absence of a finding that the plaintiff was liable. This difficulty did not preclude the court from awarding declaratory relief, but merely placed a difficult burden upon the plaintiff. *Id.* Moreover, the plaintiff would remain unable to collect in accord with the declaration unless and until found liable under CERCLA.

Like the plaintiffs in *Rockwell,* the Papes have not yet been found liable under CERCLA and point to Defendants as the sole party responsible for the alleged releases at the facility. As such, they are not entitled to contribution under § 9613(f) at this time. However, the Papes have also requested a Declaratory Judgment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1993 WL 424249                                                                                    Page 7
1993 WL 424249 (N.D.Ill.)
(Cite as: 1993 WL 424249 (N.D.Ill.))

in their favor as to any future response costs. Whether or not the Papes will ultimately receive damages [FN6] is not relevant to our determination of whether such a declaration is appropriate. Following the reasoning in *Rockwell,* we hold that Declaratory Judgment as to how future liability should be apportioned among the responsible parties is not precluded in this case.

*9 The Papes also claim contribution rights under the Illinois "Joint Tortfeasor Contribution Act," 740 ILCS 100/2 (1993) ("the Act"). Defendants argue that the Papes' claim to contribution rights under the Act cannot stand as a matter of law absent an allegation that the Papes are themselves joint tortfeasors. The Act, in pertinent part, provides for a right of contribution:
> (a) [W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property ... even though judgment has not been entered against any or all of them.
> (b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his pro rata share of the common liability.

740 ILCS 100/2 (1993). Now we may address whether Illinois law permits the Papes' contribution claim.

Our research indicates that a nearly identical situation presented itself to Judge Williams in *Premium Plastics, Inc. v. La Salle Nat'l Bank,* No. 92 C 413, 1992 WL 309561 (N.D.Ill. Oct 22. 1992), *recons. denied,* No. 92 C 413, 1992 WL 394691 (N.D.Ill. Dec. 29. 1992). Judge Williams noted that two situations permit a contribution action under Illinois law: "(1) when a payment is made by a joint tortfeasor in excess of his share of the common obligation; and (2) when plaintiffs are sued by a complaining party, giving them notice of the nature and amount of the clean up required." *Id.* at *1.

As Defendants correctly assert, only joint tortfeasors have a right of contribution under the Act. *Henry v. St. John's Hosp.,* 563 N.E.2d 410, 414 (Ill.1990), *cert.*

*denied,* 111 S.Ct. 1623 (1991). The Papes do not allege that they are joint tortfeasors, nor do they assert that they have been sued by the United States or another party for any injury or damage to the facility. In fact, the Papes seek recovery from Defendants for all costs they have incurred and appear to assert their total lack of responsibility for any release of hazardous substances.

As in *Premium Plastics,* the Papes do not fit the definition of a joint tortfeasor. A joint tortfeasor is someone who shares liability for the particular injury. 1992 WL 309561, at *2. Under the Act, that liability is determined at the time of injury, not at the time the contribution action is brought. *Highland v. Bracken,* 560 N.E.2d 406, 409 (Ill.App.Ct.1990), *appeal denied,* 564 N.E.2d 837 (1990). Here, the Papes do not contend that any conduct on their part contributed to the "same injury" that Defendants allegedly caused at the facility. As Judge Williams noted, "[c]ontribution 'exists among joint tortfeasors, not between tortfeasors and the party they injure.' " *Premium Plastics,* 1992 WL 309561, at *2 (quoting *Ragusa v. City of Streator,* 95 F.R.D. 527 (N.D.Ill.1982)). We thus find that the Papes are not entitled to contribution under the Act because they have not alleged circumstances indicating they are joint tortfeasors.

*10 Furthermore, the Papes' contribution claim is premature under Illinois law. In *Premium Plastics,* Judge Williams considered the language and legislative history of the Contribution Act and found the Act "applies where joint tortfeasors have been found liable or are awaiting judgement in a case, but not, as here, before a suit is filed against them." 1992 WL 394691, at *2; *see also Highland,* 560 N.E.2d at 408. Because neither of the situations which allow a contribution action under Illinois law to proceed exist here, we find that the Papes may not state a claim for contribution under the Illinois Joint Tortfeasor Contribution Act.

With that said, however, the Court notes that the Papes' claims under Counts I and II evidence a certain degree of overlap in that both apparently seek recovery of all response costs already incurred. To summarize and clarify our decision, under Count II, the Papes may proceed with their attempt to obtain a declaration of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendants' liability for future costs under CERCLA's contribution provision, 42 U.S.C. § 9613(f). However, unless and until the Papes are adjudged liable for violations of CERCLA at the facility, they cannot recover future response costs from the Defendants under § 9613(f). Finally, to the extent the Papes seek contribution under Illinois law, that aspect of Count II will be dismissed.

## V. COUNT III--BREACH OF CONTRACT

Because we deny the Defendants' motion to dismiss Count I and grant the motion in part and deny it in part as to Count II of the Papes' Complaint, this Court has supplemental jurisdiction over the state law contract claim and will also deny the Defendants' motion to dismiss Count III.

## VI. CONCLUSION

For the reasons set forth above, the Court denies the Defendants' motion to dismiss Counts I and III of the Plaintiffs' Complaint. We grant Defendants' motion to dismiss claims in Count II for contribution under Illinois law, but deny Defendants' motion to dismiss claims in Count II for contribution under 42 U.S.C. § 9613(f).

> FN1. For the purposes of a motion to dismiss, the Court accepts as true all well-pleaded allegations in the Complaint. Thus, the facts recited herein are taken from the Papes' Complaint.

> FN2. Defendants have attempted to introduce facts not raised in the Papes' Complaint. Specifically, the Defendants claim that prior to the end of the lease, the Papes locked Great Lakes out of its business premises, at which time Great Lakes' business inventory remained inside. The Papes deny this allegation. Because the Court is limited to a consideration of those facts found within the Complaint, we will ignore facts outside of those alleged in the Complaint.

> FN3. Defendants do not argue that the Papes

inadequately alleged that the property and warehouse constitute a facility under CERCLA. Thus, for the purposes of this motion, that issue is not disputed and we will not address this element of the Papes' CERCLA claim.

> FN4. Such a circular definition would appear to provide little guidance for our analysis here. Nonetheless, the broad remedial purpose of CERCLA and the opinions of other courts discussed below serve to illuminate our inquiry. *See also Alloy Engineering & Casting Co. v. Elgin, J. & E.R. Co.*, No. 92 C 410, 1992 WL 275587, 1992 U.S.Dist. LEXIS 14811 (N.D.Ill. Oct. 1, 1992) (Marovich, J.).

> FN5. Defendants essentially have requested this Court to impose a heightened pleading standard in CERCLA cases. The Supreme Court, however, has noted that Federal Rule 9(b) provides only two exceptions to notice pleading for allegations of fraud or mistake. The Court has held that any other exceptions "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 113 S.Ct. 1160, 1163 (1993). In light of *Leatherman*, we decline to apply a heightened pleading requirement to CERCLA cases.

> FN6. Defendants argue that since the Papes no longer own the property and apparently have completed their response efforts, "it is extremely unlikely that Plaintiffs could ever be found liable" under CERCLA. (Def.Reply Mem. at 5). While the Papes may not recover contribution at this time, they may seek a declaration of the Defendants' liability for response costs in comparison to their liability for such costs. The Papes are not free from any potential liability under CERCLA, simply because they no longer own the property. At this stage, the facts certainly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1993 WL 424249                                                                                              Page 9
1993 WL 424249 (N.D.Ill.)
(Cite as: 1993 WL 424249 (N.D.Ill.))

are not so clear that the Court can say the
Papes face no future liability.    For these
reasons, the Papes may seek a declaratory
judgment.

1993 WL 424249 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**
• 1:93CV01585 (Docket)
                        (Mar. 17, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.