UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CADLEROCK PROPERTIES JOINT VENTURE, L.P. : **Defendant** : : V. : : BENJAMIN SCHILBERG, SCHILBERG INTEGRATED METALS CORP., THOMAS NIGRO, ASHFORD DEVELOPMENT CO., DENNIS V. LOVLEY, ANTHONY M. MILO, JAMES A. STEVENS, WILSON MORIN, JEAN G. MARTIN, DAVID W. FLORIAN, THOMAS STANTON, JR., CHRISTIAN R. BRAYFIELD, CHARLES HILL, and SUBURBAN EXCAVATORS, INC. **Plaintiffs** | CASE NO. 3:01CV896 (MRK) April 8, 2005 |

**Defendant Anthony Milo's Reply Memorandum of Law
Regarding the *Aviall* Decision and Reply to
Plaintiff's Opposition to Milo's Motion for Judgment on the Pleadings**

Defendant Anthony Milo ("Milo"), submits this memorandum of law regarding the *Aviall* Decision and reply to Plaintiff's opposition to Milo's motion for judgment on the pleadings. By agreement of the parties and concurrence of the Court, the Parties have limited their briefs to those areas of law deferred or not decided by the Supreme Court in *Aviall*. The Plaintiff's brief sets forth three theories. First, the *Aviall* Court did not decide whether an administrative order under §106 of CERCLA would meet the requirement of §113(f) of CERCLA that a contribution action may be pursued "during or following any *civil action* under §9106 or under §9607(a)." For the reasons discussed in Defendant Milo's argument, we conclude both that the Plaintiff cannot substantiate that it is subject to a §106 administrative order and further that any such order would not be a *civil action* within the meaning of §113(f) of CERCLA. The Plaintiff also claims that the Supreme Court in *Aviall* did not address whether §107(a)(4)(b) provides an

independent right of contribution and that it may pursue such claim in this action. Again, for the reasons discussed in Defendant Milo's argument below, the Second Circuit does not recognize that a potentially responsible party, like CadleRock, is entitled to an independent claim of contribution under §107(a). *See*, e.g., *Bedford Affiliates v. Sills*, 156 F.3d 416, 423-425 (2d. Cir. 1998). Furthermore, the Plaintiff abandoned any such claim more than two years ago in Plaintiff's Memorandum of Law in Opposition to Motions to Dismiss dated March 20, 2002 (Doc. No. 91) wherein it conceded that *Bedford* was the law in the Second Circuit. Finally, the Plaintiff claims it is entitled to a declaratory judgment even if this Court concludes that it is not entitled to maintain any claim for contribution. This claim is illogical. For the reasons discussed in Defendant Milo's argument, a declaration judgment claim does not give rise to independent federal jurisdiction in the absence of a judicable claim under §107(a) or §113(f) of CERCLA. For these and other reasons, Defendant Milo request that this Court grant its motion for judgment on the pleadings on both its CERCLA and abandonment arguments.

## I. Introduction

A.     **Procedural Background**

This case was stayed by order of the Court on or about July 28, 2004 pending the United States Supreme Court's decision in *Cooper Industries, Inc. v. Aviall Services Inc.*, 125 S. Ct. 577 (2004), which was rendered on December 13, 2004. After the *Aviall* decision, plaintiff CadleRock Properties Joint Venture, L.P. ("CadleRock") has no remedy in this Court since CadleRock's *Amended Complaint* is founded on claims made pursuant to CERCLA §113(f)(1) in the First Count, and CERCLA §113(f)(1) (individual liability by piercing corporate veil) in the Second Count, and pursuant to 28 U.S.C. §2201 (request for declaratory relief under CERCLA) in the Third Count. Since the First and Second Counts fail under *Aviall*, there is no action left

pending for which the Court may make a declaratory ruling and the Third Count fails. Accordingly, Defendant Milo requested that this Court enter judgment on the pleadings against the Plaintiff CadleRock. CadleRock requests that it be allowed to argue those areas of CERCLA law left open in the *Aviall* decision. Thereafter, the Parties agreed to simultaneously file briefs and reply briefs.

B.     **The CERCLA liability scheme**

Congress enacted CERCLA 1980 in response to the serious environmental and health dangers posed by property contaminated by hazardous substances. *United States v. Bestfoods*, 524 US 51, 55 (1988). CERCLA was amended and expanded by the Superfund Amendments and Reauthorization Act of 1986 (SARA).

Today, §104 of CERCLA authorizes the EPA to undertake response actions using the Hazardous Substance Superfund (42 U.S.C. §9604). CERCLA §107 authorizes the United States, as well as other entities, to seek recovery of its CERCLA §104 cleanup cost from four categories of "covered persons"-typically referred to as "potentially responsible parties" or "PRPs". Alternatively, CERCLA §106(a) authorizes the EPA to compel, by means of an administrative order or a request for judicial relief, responsible parties to undertake environmental actions, which the government then monitors. Section 113(f) specifically authorizes a potentially responsible party to seek contribution from any other person who is liable or potentially liable under §107(a), "during and following any civil action."

CERCLA §107(a) specifically provides that the United States, individual States, and Indian tribes are entitled to recover from covered persons "all costs of removal or remedial action incurred" that are "not inconsistent with the national contingency plan." CERCLA §107(a)(1)-(4)(A), and 42 U.S.C. §9607(a)(1)-(4)(A). The national contingency plan consists of federal

regulations that prescribe the procedure for conducting cleanups under CERCLA and other federal laws. *See* CERCLA §105, 42 U.S.C. §9605; 40 C.F.R §300. At a substantial number of contaminated sites, States have primary responsibility for cleanup or associated oversight. States may then recover their costs through CERCLA §107(a) actions.

In addition CERCLA §107 provides that persons "other" than the United States, and individual States, or an Indian tribe may recover "any other necessary costs of response that are incurred "consistent with the national contingency plan." CERCLA §107(a)(1)-(4)(B), 42 U.S.C. §9607(a)(1)-(4)(B). The courts of appeals have ruled that persons who are not themselves liable may clean up contaminated property and then invoke this provision to seek reimbursement from the four categories of potentially liable parties that are subject to government cleanup action. (*See, In re: Reading Co.,* 115 F.3d 1111, 1120 (3d Cir. 1997); *Rumpke, Inc. v. Cummins Engine Co.,* 107 F.3d 1235, 1241-1242 (7th Cir. 1997); *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996); *United Technologies Corp. v. Browning-Ferris Industries,* 33 F.3d 96, 100 (1st Cir. 1994) *cert. denied* 513 US 1183 (1995).)

The courts of appeals have uniformly concluded that where a person falls within one of the four categories of PRPs, that person cannot rely on CERCLA §107(a) to seek full cost recovery on a theory of joint and several liability from another jointly liable party; rather, a party that is subject to CERCLA liability is limited to seeking contribution from other jointly liable parties in accordance with CERCLA §113(f). (*See, e.g., Bedford Affiliates v. Sills,* 156 F.3d 416, 423-425 (2d. Cir. 1998); *Commander Corp. v. Barlow Equipment Corp.,* 215 F.3d 321, 332 (2d. Cir. 2000). *Centerior Service Co. v. Acme Scrap Iron & Metal Corp..,* 153 F.3d 344, 356 (6th Cir., 1998); *Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298, 1301 (9th Cir. 1997),

*cert. denied*, 524 US 937 (1998); *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1121-1123 (3d Cir. 1997)).

CERCLA §113(f), which was added as part of SARA in 1986, explicitly addresses when a potentially liable party may seek contribution from others. CERCLA §113(f)(1) provides in pertinent part:

> Any person may seek contribution from any other person who is liable or potentially liable under §9607(a) of this title, during or following any civil action under §9606 of this title or under §9607(a) of this title....

CERCLA §113(f)(1), 42 U.S.C. §9613(f)(1).

CERCLA §113(f)(2) provides that a party that resolves its liability to the United States or a State through an administrative or judicially approved settlement shall not be subject to contribution "regarding matters addressed in the settlement." CERCLA §113(f)(2), 42 U.S.C. §9613(f)(2).

CERCLA §113(f)(3)(B) provides:

> A person who has resolved its liability to the United States or a State for some or all of the response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2). [Emphasis added.] CERCLA §113(f)(3)(B), 42 U.S.C. §9613(f)(3)(B).

**Argument**

**II.    CadleRock is not subject to either a CERCLA §106 or CERCLA §107(a) civil action and, therefore, cannot maintain its lawsuit.**

CERCLA §113(f)(1) provides that a party that is jointly liable for response costs under CERCLA may seek contribution from all other liable parties, but only "during or following" a CERCLA §106 or CERCLA §107(a) civil action that would determine such liability. CERCLA §113(f)(1)'s text squarely resolves the issue before this Court as does the Supreme Court's decision in *Cooper Industries, Inc. v. Aviall Services, Inc.*

The clear and unambiguous result of the *Aviall* decision and plain language of CERCLA §113(f)(1) is that CERCLA does not authorize a contribution action in the absence of an ongoing or completed CERCLA §106 or §107 (a) civil action. CadleRock attempts to meet the §113(f)(1) statutory requirement by implying its state order is, in some way, equivalent to a §106 administrative order and that such order is equivalent to a civil action. The Plaintiff's rational fails on both counts. CadleRock has no administrative order under CERCLA §106. Exhibit A (Order # SRD-080) and Exhibit C (Order # SRD-088) attached to *Plaintiff's Memorandum of Law Regarding the Impact of the Aviall Decision on this Litigation and in Opposition to Defendants' Motions for Judgment on the Pleadings*, dated March 11, 2005 ("CadleRock's Memorandum") are **not** CERCLA §106 orders.

Orders # SRD-080 and # SRD-088 were issued by the Commissioner of the Connecticut DEP pursuant to C.G.S. §§22a-6, 22a-225, 22a-424, and 22a-432. By their terms, these documents are neither CERCLA §106 orders nor equivalent to CERCLA §106 orders. Section 106 authorizes the Attorney General of the United States to commence an action when the President determines that there may be an imminent and substantial endangerment to public health or welfare of the environment because of an actual or threatened release of a hazardous substance from a facility. This CERCLA statutory authority is not delegated to the states. Accordingly, CadleRock's state orders are not CERCLA §106 order.

CadleRock's state orders also differ in material respects from the authority of the President under §106. CadleRock's order refers to solid waste not "hazardous substance". Also, the state order does not refer to imminent and substantial endangerment to the environments and infers that the Plaintiff could address its solid waste obligations by securing a permit. Therefore, the state orders are neither equivalent nor approximate to a CERCLA §106 order.

It is understandable that the federal government did not want to delegate §106 order authority to the states. Section 106(b)(2)(A) authorizes a non-liable party of such order to seek reimbursement from the Hazardous Substance Superfund for its expenditures. For this and the other reasons stated above, CadleRock cannot demonstrate that is state orders qualify as a §106 civil action. Further, these orders are not CERCLA §107 civil actions. Without either a CERCLA §106 or §107 civil action, CadleRock's case fails under CERCLA §113(f)(1) and under *Aviall*. CadleRock, just like *Aviall*, can point to no proceeding that satisfies the plain language of CERCLA §113(f)(1).

CadleRock's reliance on CERCLA §113(f)(3)(B) is misplaced. CadleRock has been a vigorous litigant. It has opposed the efforts made by the Connecticut DEP to have CadleRock remediate the property located between 392 and 460 Squaw Hollow Road (a.k.a. Route 44) in Ashford and in Willington, Connecticut. CERCLA §113(f)(3)(B) provides incentives to settling parties and not to recalcitrants. CadleRock chose not to settle its disputes with the Connecticut DEP at anytime as evidenced by the decisions reported in *CadleRock Properties Joint Venture, L.P. v. Commissioner, Environmental Protection,* 1999 Connecticut Super LEXIS 1214, (Exhibit 1 attached) and *CadleRock Properties Joint Venture, L.P. v. Commissioner, Environmental Protection,* 253 Conn. 661 (2000) (Exhibit 2 attached).

CadleRock has not demonstrated that it has resolved its liability to the State of Connecticut "... in an administrative or judicially approved settlement..." and, furthermore, any such settlement must be pursuant to CERCLA as required by CERCLA §113(f)(3)(B). CadleRock is not entitled to the keys to the courthouse under *Aviall* or any alternative theory under CERCLA §113(f)(3)(B).

**III.  A.  There is no independent right of action under CERCLA §107 for a PRP like CadleRock.**

Pre-SARA courts were divided on the question of whether there was an independent right of contribution under CERCLA. *United Technology Corp. v. Browning-Ferris Industries*, 33 F.3d 96, 100 (1st Cir. 1994), *cert. denied* 513 US 1183 (1995). Courts that recognized a right to contribution used the term "contribution" in its "traditional sense" to denote "a claim by and between jointly and severally liable parties" to allocate the payment one of the liable parties was compelled to make. *United Technologies* at 99, 100-101.

In order to eliminate any uncertainty regarding the availability of contribution under CERCLA, Congress squarely addressed the question in SARA. The 1986 Act expressly delineated circumstances in which contribution would thereafter be available under CERCLA by providing, in the first sentence of §113(f)(1) that contribution may be sought "during or following" a §106 or §107(a) civil action. Section 107 does not afford a broader right of action than the right provided under §113(f)(1). It would have been pointless for Congress to create and explicitly limit the right to contribution "during or following" a §106 or a §107(a) civil action if, at the same time a plaintiff could circumvent such obligation by proceeding independently under §107(a).,

Section 107 CERCLA authorizes recovery of response cost by any "persons" in specifically defined circumstances. Section 107(a)(1)-(4)(B) allows a person who is not liable for improper disposal of hazardous substances, but who nevertheless incurs cleanup costs, to recover the resulting costs from those persons who fall within CERCLA's four categories of liable parties. *See* 42 U.S.C. §9607(a)(1)-(4)(B). However, the courts of appeal have uniformly concluded that §107(a)(1)-(4)(B) only permits a liable party, such as CadleRock, to obtain recovery from another jointly liable party through a contribution action under §113(f)(1). If

Congress had intended to create a broader former of contribution it would have written the first sentence of §113(f)(1) to accomplish that result.

When read in combination, the clear implication of §107(a)(1)-(4)(B) and §113 is that a jointly liable party is limited to seeking contribution in the manner authorized by §113(f). That result avoids the anomaly of the jointly liable party suing another jointly liable party for the <u>full cost</u> of the CERCLA cleanup. *See, United Technologies.* It also ensures that parties who have settled with the government and received protection from "claims for contribution regarding matters addressed in the settlement," pursuant to CERCLA §113(f)(2), to receive the benefit of the bargain that they made with the government and are no longer subject to litigation for settled matters. Section 113(f)(2) also protects non-settling parties by reducing their liability by the amount paid in settlement. Congress would not have wanted an independent §107(a) action to circumvent these protections afforded settling and non-settling parties.

Furthermore, in *Cooper Industries, Inc. v. Aviall Services, Inc.* 125 S. Ct. 577, at page 581 (2004), the Supreme Court noted that as originally enacted in 1980, CERCLA contained no provision expressly providing for a right of action for contribution. A number of pre-SARA district courts had found an implied right, or found a right as a matter of federal common law. In *Aviall*, the Court found that conclusion "...was debatable in light of two decisions of this Court that refused to recognize implied or common law rights of contribution in other federal statutes." The Court noted that it had refused to recognize implied or common law right of contribution under the Sherman Act or the Clayton Act as well as the Equal Pay Act of 1963 or Title VII of the Civil Rights Act of 1964. Thus, the Supreme Court has expressed its reservation with regard to the existence of an independent implied right to contribution under CERCLA.

The savings clause found in §113(f)(1) merely preserves any independent right the person may have, apart form §113(f)(1) to seek contribution, but does not, itself, give rise to any right of contribution under the law of this Circuit, as a PRP, CadleRock has no cause of action under CERCLA §107, instead it must proceed under CERCLA §113(f)(1). Thus, the Court must grant Milo's Motion for Judgment on the Pleadings.

### III. B. CadleRock Acknowledges That Its Abandonment Of Its Claim Under §107 Of CERCLA Was Based Upon The Merits Of That Claim; Therefore, The Court Should Rule Upon That Claim In Favor Of Defendant Milo.

In CadleRock's Memorandum, CadleRock acknowledges that its decision to cease defending its §107 claim was based particularly upon its *understanding* of *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998). CadleRock's Memorandum, at n.11. The holding in *Bedford* remains the law in the Second Circuit. Plainly, CadleRock decided that it could not defend its §107 claim on the merits in the face of contrary Second Circuit precedent. CadleRock's acknowledgement of this supports the conclusion presented in Defendant Milo's Supplemental Memorandum of March 11, 2005; specifically, the fact that the decision to abandon that cause of action was motivated by the CadleRock's analysis of the merits of the claim necessitates a ruling in favor of Defendant Milo on CadleRock's theory of recovery stemming from §107 of CERCLA, as presented in the First and Second Counts CadleRock's Amended Complaint.

In *Krisa v. The Equitable Life Assurance Society*, 109 F.Supp.2d 316, 322 (M.D.Pa. 2000), the court held, "[A]bsent some circumstance suggesting that an abandonment of a claim is unrelated to the relative merits of the claim, a voluntary withdrawal may be considered a favorable termination for the accused party." *Krisa*, at 322. This is consistent with *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F.Supp. 895, 907 (S.D.N.Y. 1997), aff'd, 130 F.3d 1101 (2d Cir. 1997), *cert. denied*, 525 U.S. 813, 119 S. Ct. 48 (1998), in which the District Court for the