stated that it "brings this action against defendant Zotos . . . pursuant to Section 113(f)(1) of [CERCLA]," once again making no mention of 113(f)(3)(B). (Docket No. 185, p. 1).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*10]**

Zotos contends that Grace does not have a contribution claim under section 113(f)(3)(B) for two reasons: (1) the 1988 Consent Order does not qualify as an "administrative settlement" within the meaning of section 113(f)(2) n7; and (2) even if it did, any contribution claim would be subject to a three-year statute of limitations and therefore is barred. n8 While neither party has engaged in statutory analysis, this Court must first look to CERCLA's settlement scheme and determine how a party such as Grace settles its liability to the United States or a State within the meaning of section 113(f)(3)(B).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 Zotos does not address the 1984 Consent Order.

n8 This action was commenced ten years after Grace entered into the 1988 Consent Order.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

A. The CERCLA Cleanup Process

HN6 CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), was enacted to ensure the efficient cleanup of sites contaminated with hazardous wastes and other pollutants. The CERCLA cleanup process is carried **[*11]** out under sections 104, 106, 120 n9, 121 and 122 of the Act.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 Section 120 addresses the applicability of CERCLA to facilities owned or operated by the federal government and is not relevant to this case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

CERCLA authorizes the President n10 to take a variety of measures when "any hazardous substance is released or there is a substantial threat of such a release into the environment." 42 U.S.C. § 9604(a). Section 104 of CERCLA authorizes the EPA to use funds from the Hazardous Substance Superfund ("Superfund" or "Fund") to clean up a hazardous waste site, after which the EPA may institute a civil action, under section 107, to recover the costs of cleanup from responsible parties. Alternatively, the EPA may, under section 106, issue an administrative order or seek a court order directing a potentially responsible party ("PRP") to clean up a site. Sections 122(g) and (h) authorize the EPA to enter into settlements with PRPs regarding certain claims under sections 106 and 107. n11

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n10 In Executive Orders 12580, 52 Fed. Reg. 2,923(1987), and 12,777, 56 Fed. Reg. 54,757 (1991), the President delegated certain functions and responsibilities vested in him by

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 8755    Page 11 of 22

Case 3:01-cv-00896-MRK    Document 288-2    Filed 06/20/2005    Page 2 of 8

CERCLA, as amended, to the Administrator of the United States Environmental Protection Agency ("EPA"). Where appropriate, further references will be to the EPA.. **[*12]**

n11 Section 122(g) authorizes the EPA to enter into *de minimus* settlements under sections 106 or 107 where an administrative or civil action has already been commenced. Section 122(h) authorizes the settlement of certain cost recovery claims under 107 where the claim has not yet been referred to the Department of Justice for suit.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

HN7 Where the EPA determines that the owner or operator of the facility in question, or another PRP, can properly and promptly carry out the appropriate response measure n12, the EPA may enter into a settlement agreement with that party relative to the cleanup, pursuant to section 122. *See* 42 U.S.C. § 9604(a). All settlements involving remedial action by a PRP under section 106 n13, exclusive of *de minimus* settlements, must be approved by the Attorney General and must be "entered in the appropriate United States district court as a consent decree." 42 U.S.C. § 9622(d)(1)(A). *See* New York v. Exxon Corp., 697 F. Supp. 677, 691 (S.D.N.Y. 1988) (a settlement in which a PRP agrees to do the cleanup **[*13]** work must be entered as a consent decree and is subject to mandatory judicial review).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Response measures may be either "removal" actions or "remedial" actions. 42 U.S.C. § 9601(25). Removal actions are intended to prevent or minimize any immediate risks posed by the release of hazardous substances, while remedial actions are intended to be permanent remedies taken instead of or in addition to removal actions. 42 U.S.C. § 9601(23) and (24).

n13 As already noted, remedial actions under section 106 are secured from a PRP, whereas those under 104 are provided by the Federal government.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Although the EPA is the federal agency designated to implement and oversee CERCLA, section 104 expressly provides that certain CERCLA authority may be delegated to the states:

> HN8 A State . . . may apply to the [EPA] to carry out actions authorized in this section. If the [EPA] determines that the State . . . has the capability to carry out any or all of such actions **[*14]** in accordance with the criteria and priorities established pursuant to section 9605(a)(8) of this title and to carry out related enforcement actions, the [EPA] may enter into a contract or cooperative agreement with the State . . . to carry out such actions. The [EPA] shall make a determination regarding such an application within 90 days after the [EPA] receives the application.

42 U.S.C. § 9604(d)(1)(A). In other words, HN9 a State that wishes to carry out actions authorized by CERCLA must make application to, and enter into a contract or cooperative

agreement with, the EPA. Absent an express delegation by the EPA, a state has no CERCLA authority. However, where a state receives such delegation, its actions taken pursuant to the cooperative agreement are on behalf of the Federal government. *Id.,* § 9604(d)(3). Cooperative agreements and the delegation of CERCLA authority are specific to one or more facilities. *Id,* § 9604(d)(1)(B).

HN10 Actions authorized in section 104 which may be delegated to a state include: providing for the removal or remediation of hazardous substances and any other response measure deemed necessary to protect the public [*15] health or welfare or the environment, consistent with the national contingency plan n14, § 9604(a)(1); entering into settlement agreements pursuant to section 122, *Id.;* investigating and inspecting the site of a release or threatened release, § 9604(b)(1) and (e)(2)-(4); selecting a remedial action, § 9604(c)(4); and taking related enforcement actions, which presumably include cost recovery, § 9604(d)(1)(A). The delegation of authority in a cooperative agreement may also extend to the settlement of claims against the Superfund. *Id.,* § 9611(f). In each instance, however, the EPA has full discretion to determine whether, and the extent to which, CERCLA authority will be delegated to a state. *Id.,* § 9604(d)(1)(B). HN11

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n14 All CERCLA cleanup decisions are guided by the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), which, among other things, prescribes methods for investigating environmental problems resulting from a release or threatened release of hazardous substances, establishes criteria for determining the appropriate extent of response activities authorized by CERCLA, and defines the roles and responsibilities for the Federal and State governments in effectuating the NCP. 42 U.S.C. §§ 9605(a) and 9621(f); 40 C.F.R. Part 300.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*16]

It is pursuant to these cooperative agreements that a state also assumes certain CERCLA responsibilities and costs. 42 U.S.C. § 9604(c)(3).

HN12 The NCP regulations pertaining to state involvement in CERCLA response actions are found at Subpart F, 40 C.F.R. §§ 300.500-300.525. In cleanups financed by the Superfund, the EPA and the state in which the site is located work together pursuant to a cooperative agreement or contract, with one acting as the lead-agency and the other as the support-agency. *Id.,* § 300.515(a)(1). The EPA has also determined it is appropriate to enter into a cooperative agreement or contract where a state intends to seek credit, pursuant to CERCLA section 104(c)(5), for its own non-Fund-financed response actions. *Id.,* § 300.515(a)(3). Indeed, the EPA encourages states to "enter into cooperative agreements pursuant to sections 104(c)(3) and (d) of CERCLA to enable them to undertake actions authorized under subpart E [Hazardous Substance Response] of the NCP." 40 C.F.R. § 300.180(e) [emphasis supplied].

However, the regulations do not provide for [*17] cooperative agreements or contracts in state-funded or state-lead PRP cleanups where no CERCLA credit is sought. *Id.,* § 300.515(a)(3), see also, § 300.515(e)(2)(ii) (the EPA need not concur in a state's selection of a remedy at a non-Fund-financed state-lead enforcement site under state law). HN13 Where a state proceeds on its own authority to identify a remedy and settle with a PRP, there is a risk that the EPA will take later actions or select different remedies that could expose the PRP to additional liabilities. *See* State of Ohio v. United States EPA, 302 U.S. App. D.C. 318, 997 F.2d 1520, 1541 (D.C. Cir. 1993). This possibility is expressly set forth in CERCLA's

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 8755    Page 13 of 22

Case 3:01-cv-00896-MRK    Document 288-2    Filed 06/20/2005    Page 4 of 8

abatement provision: "in addition to any other action taken by a State or local government, . . . [the President] may require the Attorney General of the United States to secure such relief as may be necessary . . . ." 42 U.S.C. § 9696(a) [emphasis supplied].

HN14 The State of New York has its own mechanism, independent of CERCLA, by which to engage in cleanup and enforcement actions. It has enacted legislation that parallels CERCLA's provisions for the cleanup of inactive hazardous waste [*18] sites, and has established a hazardous waste remedial fund to be used for, among other things, the identification and investigation of inactive hazardous waste sites, remedial programs and cleanups under state law, and the state's share of costs in CERCLA cleanups. *See,* N.Y. ENVTL. CONSERV. LAW §§ 27-1301 *et seq.;* N.Y. STATE FIN. LAW, § 97-b.

HN15 While states may choose to act either in cooperation with the EPA or independently to remediate inactive hazardous waste sites, "section 113(f)(2) clearly contemplates a settlement over *CERCLA* liability." CPC International, Inc., 759 F. Supp. 1269, 1283 (W.D. Mich. 1991) [emphasis in original]; *see also,* Elementis Chemicals, Inc. v. T H. Agric. and Nutrition L.L.C., 03 Civ. 5150, 2005 U.S. Dist. LEXIS 1404, at *20 (S.D.N.Y. Jan. 31, 2005) ("any person who has settled with the United States or a State *regarding its CERCLA liability* may seek contribution from any other person who has not so settled" [emphasis supplied]). A state may settle a PRP's CERCLA liability, assuming it has been delegated that authority to do so, by entering into [*19] an administrative settlement (monetary settlement pursuant to section 122(g) or (h)) or a judicially approved settlement (cleanup settlement pursuant to section 122(d)(1)(A)).

In the instant case, this Court must determine whether Grace has settled its CERCLA liability to New York State, or whether it has settled only its liability under state law. For the reasons set forth below, this Court concludes that it is the latter.

## 2. The 1984 Consent Order

In its Amended Complaint, Grace alleges that, in 1984, it entered into an Administrative Consent Order with the DEC and that, "because it was the current owner of the Brewer Road Site, Grace was required under the Consent Order to conduct a remedial investigation/feasibility study . . . to examine the environmental conditions at the Site and evaluate various remedial alternatives for the cleanup." (Docket No. 38, P11). In its Record of Decision issued in March 1992, the DEC stated that "in 1984, Evans Chemetics n15 voluntarily entered into a Administrative Order on Consent . . . with the NYSDEC for a Phase II Investigation at the Brewer Road site. The purpose of this investigation was to assess whether the site posed an existing [*20] or potential environmental impact, and to evaluate the extent and magnitude of any identified contamination." (P. Ex. 386, p. 2).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 Evans Chemetics ("ECI") was purchased by Grace in 1978.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

The foregoing characterizations of the 1984 Consent Order do not suggest that the DEC was operating pursuant to a cooperative agreement or contract with the EPA or that Grace entered into an administrative settlement that "resolved its [CERCLA] liability to the United States or a State." Nor has the Court been presented with any proof that such a settlement occurred in 1984. The Court has taken the time to review the hundreds of exhibits proffered by Grace in two summary judgment motions, at trial and in post-trial submissions. The 1984 Consent Order is not among them.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 8755    Page 14 of 22

Case 3:01-cv-00896-MRK    Document 288-2    Filed 06/20/2005    Page 5 of 8

Grace's failure, throughout these proceedings, to cite to what it now purports is the correct statutory basis for relief is not fatal to its contribution claim. However, its failure at any time during these proceedings to produce the document that allegedly [*21] creates its right to contribution is. Accordingly, this Court finds that Grace is not entitled to maintain a CERCLA contribution action against Zotos based on the 1984 Consent Order.

### 3. The 1988 Consent Order

Grace did introduce the 1988 Consent Order, both on summary judgment and at trial (Docket No. 91, Ex. 72; P. Ex. 384), and now argues that this Order constitutes an administratively approved settlement within the meaning of CERCLA by which Grace resolved its liability to the State of New York. This argument alone is fatal to Grace's claim. To constitute an effective settlement for site cleanup under section 122, the settlement must be judicially approved--*i.e.,* entered as a consent decree in the appropriate United States district court.

Moreover, a review of the 1988 Consent Order makes clear that Grace merely settled its liability under New York's own environmental laws relating to the investigation and cleanup of inactive hazardous waste sites. The 1988 Consent Order provides, in pertinent part, as follows:

> 1. The New York State Department of Environmental Conservation . . . is responsible for the enforcement of Article 27, Title 13 of the [NYS] [*22] Environmental Conservation Law (the "ECL") entitled "Inactive Hazardous Waste Disposal Sites."
>
> * * * *
>
> 4. The [DEC] has determined that the [Brewer Road] Site is an inactive hazardous waste disposal site, as that term is defined in ECL Section 27-1301(2). . . .
>
> 5. The [DEC] and [Grace] acknowledge that the goals of this Order shall be that [Grace] shall develop and implement a remedial investigation, feasibility study, and, if necessary, a remedial program for this Site, subject to the approval of the [DEC] and implement such program within the time limits specified hereinafter . . . .
>
> * * * *
>
> XI. . . . In the event that the [DEC] shall not be satisfied with the quality and completeness of construction, the [DEC] may take any action and pursue any remedy to which it may be entitled by law.
>
> If the [DEC] acknowledges that the implementation is complete and in accordance with the Approved Remedial Design, then . . . such acknowledgment shall constitute a full and complete satisfaction and release of each and every claim, demand, remedy or action whatsoever against Respondent, its officers and directors, which the Department has or may have as of the date [*23] of such acknowledgment pursuant to Article 27, Title 13, of the ECL relative to or arising from the disposal of hazardous or industrial waste at the Site.
>
> * * * *

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 8755 Page 15 of 22

Case 3:01-cv-00896-MRK    Document 288-2    Filed 06/20/2005    Page 6 of 8

XXV. The failure of [Grace] to comply with any provision of this Order shall constitute a default and a failure to perform an obligation under this Order and under the ECL.

The 1988 Consent Order does not state that the DEC was exercising any authority under CERCLA, does not indicate that the EPA concurred with the remedy selected and does not provide a release as to any CERCLA claims. In fact, the 1988 Consent Order makes no mention of CERCLA at all. n16

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n16 Nor has the EPA placed the Brewer Road Site on its National Priorities List under 40 CFR Part 300, Appendix B.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

HN16 Just as a party must be sued under CERCLA before it can maintain a section 113(f)(1) contribution claim, it must settle CERCLA liability before it can maintain a claim under section 113(f)(3). General Time Corp. v. Bulk Materials, Inc., 826 F. Supp. 471, 476 (M.D. Ga. 1993) [*24] ("the Court does not believe Congress intended for settlements effected under a state's environmental statute to confer CERCLA contribution [rights]"); Laidlaw Waste System, Inc. v. Mallinckrodt, 925 F. Supp. 624, 622-23 (E.D. Mo. 1996) (consent order between State of Illinois and defendants that did not mention or implicate CERCLA did not protect them from potential liability under CERCLA). n17

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n17 Grace's reliance on Bedford Affiliates v. Sills, 156 F.3d 416 (2d Cir. 1998) is misplaced. That case involved a cost recovery and contribution action pursuant to sections 107(a) and 113(f)(1), neither of which are at issue here. The Second Circuit's general discussion of sections 113(f)(2) and 113(f)(3)(B) relates solely to its consideration of CERCLA preemption.

This Court also finds Fireman's Fund Ins. Co. v. City of Lodi, 296 F. Supp. 2d 1197, 1210-1212 (E.D. Cal. 2003), cited by Grace, to be unpersuasive. That decision did conclude that a cooperative agreement between Lodi and California's Department of Toxic Substance Control was "an 'administrative settlement' within the meaning of CERCLA section 113(f)(3)(B)." However, every decision the Court relied upon in its analysis involved litigation by, an express delegation of authority from, or a settlement with the EPA. The Lodi decision does not provide any rationale for concluding that a CERCLA settlement exists absent any of those circumstances.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*25]

Because the 1988 Consent Order resolves only Grace's liability to New York State under state law, Grace cannot maintain a CERCLA contribution action against Zotos. n18

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 8755    Page 16 of 22

Case 3:01-cv-00896-MRK    Document 288-2    Filed 06/20/2005    Page 7 of 8

n18 Grace suggests that this result weakens the Congressional intent of encouraging private party settlements and cleanups. However, CERCLA's language as to the availability of contribution is clear, and it is not this Court's role to substitute its judgment for that of Congress with regard to the effectiveness of CERCLA's contribution provisions.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### C. State Law Contribution

#### 1. Jurisdiction over Grace's State Law Contribution Claim

Grace's CERCLA claim is the only federal claim in the Amended Complaint and, therefore, is the only source of this Court's jurisdiction under 28 U.S.C. § 1331. In its Amended Complaint, Grace asserts that this Court has subject matter jurisdiction over its state law contribution claim pursuant to 28 U.S.C. § 1332 and that supplemental jurisdiction exists [*26] pursuant to 28 U.S.C. § 1367. (Docket No. 38, P3). n19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 Although Grace expressly pleaded a state law claim, it did not advance any arguments at trial or in post-trial briefing relative to state law contribution. Grace has "revived" its state law claim in its post-Cooper briefing.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Zotos argues that: (1) there is no diversity jurisdiction because its principal place of business is Connecticut, the same state in which Grace is incorporated; and (2) absent any surviving federal claim, this Court should decline to exercise supplemental jurisdiction over Grace's state law claim. Grace does not contest, and apparently concedes, that there is no diversity of citizenship between it and Zotos. Thus, the only question remaining is whether this Court should exercise supplemental jurisdiction over Grace's state law contribution claim.

HN17 Although a district court may decline to exercise supplemental jurisdiction where, as here, it has dismissed all claims over which it has original jurisdiction, [*27] the decision to do so is left to the court's discretion. 28 U.S.C. § 1367(c). In general, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." First Capital Asset Mgmt, Inc. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004) (citation omitted). "If, however, the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary.'" Purgess v. Sharrock, 33 F.R.D. 134, 138, 1994 U.S. App. LEXIS 22290 (2d Cir. 1994) (quoting 28 U.S.C.A. § 1367, Practice Commentary (1993) at 835) [emphasis supplied].

Grace argues the proof relative to state law contribution is the same as for a CERCLA contribution claim and urges that it would be a waste of judicial resources to require the parties to retry the same liability issues that were presented at trial here before a different tribunal. While Zotos contends that [*28] the evidence needed to prove CERCLA contribution is distinct from the evidence required to prove state law contribution, it does not explain the purported distinction or provide any supporting authority. This Court will therefore consider Grace's claim that it is entitled to contribution pursuant to New York's

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 8755    Page 17 of 22

Case 3:01-cv-00896-MRK    Document 288-2    Filed 06/20/2005    Page 8 of 8

common law and C.P.L.R. § 1401.

## 2. State Law Contribution Claims under CERCLA

Section 1401 of the New York Civil Practice Law and Rules n20 states, in relevant part, as follows:

> HN18 Except as provided in sections 15-108 and 18-201 of the general obligations law, . . . two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n20 Grace indicates that the analysis of a common law contribution claim is identical to that of a statutory claim under the C.P.L.R. Accordingly, this Court's analysis will refer only to the C.P.L.R.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*29]

HN19 "A cause of action for contribution may be asserted in a separate action or by cross-claim, counterclaim or third-party claim in a pending action." N.Y. C.P.L.R. § 1403. However, "a tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." N.Y. GEN. OBLIG. LAW § 15-108.

HN20 Because contribution is a derivative claim, a party seeking contribution must be able to make out all of the essential elements of an underlying cause of action against the proposed contributor. Calcutti v. SBU, Inc., 273 F. Supp. 2d 488, 497 (S.D.N.Y. 2003) (quotation and citation omitted). Grace contends that Zotos' liability as an "arranger" within the meaning of CERCLA section 107(a)(3) is the underlying theory upon which its state law contribution claim rests. According to Grace, it has sustained its burden of proof as to Zotos' arranger status at trial and is therefore entitled to recover against Zotos for the response costs it incurred in excess of its equitable share. n21

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n21 In short, the predicate for Grace's state law contribution claim is CERCLA. HN21 To succeed on a CERCLA claim, a plaintiff must establish the following five elements: (i) the site at issue is a "facility" under CERCLA, (ii) there has been a release of one or more hazardous substances at that site, (iii) the release caused the plaintiff to incur response costs, (iv) the costs incurred by the plaintiff were necessary and consistent with the National Contingency Plan (NCP) under CERCLA as administered by the EPA, and (v) the defendant falls within one of the four categories of persons, including "arranger," liable for the costs of remedial action. United States v. Alcan Aluminum Corp., 990 F.2d 711, 719-20 (2d Cir. 1993) (citations omitted); Mainline Contracting Corp. v. Chopra-Lee, Inc., 109 F.Supp.2d 110, 117 (W.D.N.Y. 2000).