# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CADLEROCK PROPERTIES JOINT    :
VENTURE, L.P.,                             :
                                        :
                   Plaintiff,     :     NO.    3:01cv896 (MRK)
                                          :
v.                                         :
                                        :
BENJAMIN SCHILBERG, et al.,        :
                                        :
                 Defendants.   :

## MEMORANDUM OF DECISION

Plaintiff CadleRock Properties Joint Venture L.P. ("CadleRock"), is the current owner of a contaminated property located at 392 and 460 Squaw Hollow Road (a/k/a Route 44) in the Towns of Ashford and Willington, Connecticut (the "Site"). The history and nature of the contamination of the Site is well-known to the parties and need not be repeated here. *See also CadleRock Props. Joint Venture, L.P. v. Comm'r Envtl. Prot.*, 253 Conn. 661, 664-66 (2000) (summarizing the nature, extent, and history of contamination on the Site). CadleRock brings this lawsuit under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, against numerous defendants who previously owned or operated businesses on the Site. *See generally* Am. Compl. [doc. #79] at ¶¶ 4-28.

As a current owner of the Site, it is undisputed that CadleRock is what is known under CERCLA as a "potentially responsible party," or PRP, who may at some point in time be subject to strict liability for cleanup of the Site under § 107(a) of CERCLA. *See* 42 U.S.C. § 9607(a)(1); *see also B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992) (potentially

1

responsible parties are "past and present owners or operators of facilities, transporters of hazardous substances, and those . . . who generate or arrange for the disposal or treatment of hazardous substances").  In its most recent Amended Complaint, CadleRock sought contribution from Defendants for the costs of response, removal, and remedial action on the contaminated Site, pursuant to CERCLA § 107(a) and § 113(f), 42 U.S.C. §§ 9607(a) & 9613(f).  *See* Am. Compl. [doc. #79] at ¶¶ 63 & 67.  CadleRock also sought a declaration of the proper allocation of liability among Defendants for the past, current, and future costs of addressing the contamination on the Site under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201.  *See* Am. Compl. [doc. #79] at ¶ 70.

This case had been proceeding normally until the United States Supreme Court granted a writ of certiorari in *Cooper Industries v. Aviall Services, Inc.*, 540 U.S. 1099 (2004).  At the time of the Supreme Court's grant of certiorari, Defendants had already filed a suite of motions for summary judgment [docs. #213, #227, #230, #236 & #239].  In light of the Supreme Court's action in *Cooper Industries* – a case that is directly relevant to this action – this Court stayed further briefing on Defendants' motions for summary judgment, and denied these motions without prejudice to renewal after the lifting of the stay.  *See* Order of July 28, 2004 [doc. #251].

The Supreme Court recently issued its opinion in *Cooper Industries*, *see* 125 S. Ct. 577 (2004), and, as anticipated, the Supreme Court's decision profoundly impacts this case.  Currently pending before the Court are Defendants' Motions for Judgment on the Pleadings [docs. #252 & #267], pursuant to Rule 12(c) of the *Federal Rules of Civil Procedure*.  For the reasons that follow, Defendants' motions to dismiss are GRANTED.

# I.

When considering a motion to dismiss on the pleadings pursuant to Rule 12(c), the Court must "accept[] the allegations contained in the complaint as true and draw[] all reasonable inferences in favor of the plaintiff." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, --- F.3d --- , 2005 WL 1444148, at *2 (2d Cir. Jun. 21, 2005).  "[A] complaint should not be dismissed under Rule 12(c) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted).

As a preliminary matter, the Court must determine whether, on a motion to dismiss, it can consider the terms of a state administrative pollution abatement order issued against CadleRock by the Connecticut Department of Environmental Protection (DEP) (the "DEP Order"), which the Court discusses in the next section.[1]  When considering a motion to dismiss, a district court ordinarily must "limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).  The DEP Order is not attached to CadleRock's Complaint or explicitly mentioned or incorporated by reference in it.  *See generally* Am. Compl. [doc. #79].  However, as recently explained by the Second Circuit in *Chambers v.*

---

[1] There have been two DEP Orders pertaining to the Site.  DEP Order SRD-080, issued February 26, 1997, was revoked and replaced by DEP Order SRD-088, issued August 15, 1997, due to the transfer of ownership of the Site from Cadle Properties of Connecticut, Inc. to CadleRock.  *See* Letter dated Nov. 17, 1997 from DEP Commissioner Arthur J. Rocque to Mr. Cadle, attached as Ex. 3 to Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263]. The Court will refer to the more recent DEP Order (SRD-088), though the Court notes that the substance of the two orders – other than the party to whom they are directed – appears identical. *Compare* DEP Order No. SRD-080, attached as Ex. 2 to Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263], *with* DEP Order No. SRD-088, attached as Ex. 4 to Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263].

*Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002):

> Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint. . . . [T]he harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. Accordingly, where plaintiff has actual notice of all the information . . . and has relied upon these documents in framing the complaint the necessity of translating a . . . motion [to dismiss] into [a motion for summary judgment] is largely dissipated. . . . [W]e reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.

*Id.* at 153 (emphasis in original) (internal citations and quotations omitted).

Not only was CadleRock fully aware of the DEP Order, it is, according to CadleRock, one of the underlying reasons that the company brought this action for contribution, because the DEP Order imposes cleanup costs on CadleRock that it hopes will be shared by Defendants. *See generally* DEP Order No. SRD-088 (issued August 15, 1997) at 2-7, attached as Ex. 4 to Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263]. Thus, CadleRock necessarily relied on the terms and effect of the DEP Order in the drafting of its Complaint. CadleRock also relies on the DEP Order in opposing Defendants' motions for judgment on the pleadings, and at oral argument on the pending motions, counsel for both CadleRock and the Defendants confirmed that they had no objection to the Court's review of the DEP Order in connection with the Court's consideration of the current motions. For all of these reasons, therefore, the Court concludes that it may properly consider the DEP Order without converting Defendants' motions to dismiss on the pleadings into motions for summary judgment. *See Hayden*, 180 F.3d at 54; *see also Mangiafico v. Blumenthal*, 358 F. Supp. 2d 6, 10 (D. Conn. 2005).

## II.

### A.

Cadlerock primarily brought this action to seek contribution from Defendants under CERCLA § 113(f)(1).[2]  Suffice it to say that *Cooper Industries* significantly altered the legal landscape surrounding § 113(f)(1).  In that decision, the Supreme Court reversed a divided en banc opinion of the Fifth Circuit, which had held that § 113(f)(1) authorized contribution suits by PRPs regardless of whether they had previously been sued under § 106 or § 107(a).  *See generally Aviall Servs., Inc. v. Cooper Indus., Inc.*, 312 F.3d 677, 681-91 (5th Cir. 2002) (en banc), *rev'd sub nom.* 125 S. Ct. 577 (2004).  The Supreme Court in *Cooper Industries* closely analyzed and interpreted the text of § 113(f)(1) and its relationship to other relevant parts of CERCLA.  *See Cooper Indus.*, 125 S. Ct. at 583-84.  At issue was the proper construction of the terms "*may* seek contribution . . . *during or following* any civil action under [CERCLA § 106] or under [CERCLA § 107(a)]" in the first sentence of § 113(f)(1), 42 U.S.C. § 9613(f)(1) (emphasis added), as well as the effect of the "savings clause" in the last sentence of § 113(f)(1).  The

---

[2] Section 113(f)(1) of CERCLA on civil actions seeking contribution states in its entirety:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title [CERCLA § 107(a)], during or following any civil action under section 9606 of this title [CERCLA § 106] or under section 9607(a) of this title [CERCLA § 107(a)]. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title [CERCLA § 106] or section 9607 of this title [CERCLA § 107(a)].

42 U.S.C. § 9613(f)(1).

5

savings clause states: "Nothing in this subsection shall diminish the right of any person to bring

an action for contribution in the absence of a civil action under [CERCLA § 106] or [CERCLA §

107(a)]."  42 U.S.C. § 9613(f)(1).

Writing for the majority, Justice Thomas concluded that the "natural meaning" of the first

sentence of § 113(f)(1) was that "contribution may only be sought subject to the specified

conditions, namely, 'during or following' a specified civil action," because allowing PRPs to

bring § 113(f)(1) contribution claims regardless whether they previously had been sued would

render the "during or following" clause of § 113(f)(1) "entirely superfluous."  *Cooper Indus.*, 125

S. Ct. at 583.  *See also Syms v. Olin Corp.*, 408 F.3d 95, 101 (2d Cir. 2005) ("[T]he Supreme

Court [in *Cooper Industries*] held that a private party cannot obtain a judgment for contribution

under § 113(f) unless it has been sued under § 106 or § 107(a)."); *Solvent Chem. Co. v. E.I.*

*DuPont De Nemours & Co*, No. 01-CV-425C(SC), 2005 WL 1523570, at *10 n.7 (W.D.N.Y.

Jun. 28, 2005) (same); *Benderson Dev. Co. v. Neumade Prods. Corp.*, No. 98-CV-0241(SR),

2005 WL 1397013, at *12 (W.D.N.Y. Jun. 13, 2005) (same); *W.R. Grace & Co.-Conn. v. Zotos*

*Intern., Inc.*, No. 98-CV-838S(F), 2005 WL 1076117, at *2 (W.D.N.Y. May 3, 2005) (same);

*Elementis Chems., Inc. v. T H Agric. & Nutrition, L.L.C.*, No. 03 Civ. 5150(LBS), 2005 WL

236488, at *7 (S.D.N.Y. Jan. 31, 2005) (same); *AMW Materials Testing, Inc. v. Town of*

*Babylon*, 348 F. Supp. 2d 4, 11 (E.D.N.Y. 2004) (same).

As for the effect of the "savings clause" in the last sentence of § 113(f)(1), the Supreme

Court held as follows:

> The sole function of the sentence is to clarify that § 113(f)(1) does nothing to
> "diminish" any cause(s) of action for contribution that may exist independently of
> § 113(f)(1). In other words, the sentence rebuts any presumption that the express

> right of contribution provided by the enabling clause is the exclusive cause of
> action for contribution available to a PRP. The sentence, however, does not itself
> establish a cause of action; nor does it expand § 113(f)(1) to authorize
> contribution actions not brought "during or following" a § 106 or § 107(a) civil
> action; nor does it specify what causes of action for contribution, if any, exist
> outside § 113(f)(1).

*Cooper Indus.*, 125 S. Ct. at 583-84.  *See generally* Wm. Bradford Reynolds & Lisa K. Hsiao,

*The Right of Contribution Under CERCLA after Cooper Industries v. Aviall Services*, 18 Tul.

Envtl. L.J. 339 (2005).  The Supreme Court found further support for its interpretation of the text

of § 113(f)(1) by looking at the entirety of  § 113 of CERCLA, which, the Court observed,

contemplated only "two express avenues for contribution: § 113(f)(1) ('during or following'

specified civil actions) and § 113(f)(3)(B) (after an administrative or judicially approved

settlement that resolves liability to the United States or a State)."  *Cooper Indus.*, 125 S. Ct. at

584.  Section 113(g) provided "two corresponding 3-year limitations periods for contribution

actions, one beginning at the date of judgment, § 113(g)(3)(A), and one beginning at the date of

settlement, § 113(g)(3)(B)."  *Cooper Indus.*, 125 S. Ct. at 584.  Because § 113(g)(3) has no

"provision for starting the limitations period if a judgment or settlement never occurs, as is the

case with a purely voluntary cleanup," the Supreme Court concluded that "to assert a contribution

claim under § 113(f), a party must satisfy the conditions of either § 113(f)(1) or § 113(f)(3)(B),"

– that is, a party must have either been sued under § 106 or § 107(a) (thus satisfying § 113(f)(1)),

or administratively or judicially settled their liability to the United States or a State (thus

satisfying 113(f)(3)(B)).  *Cooper Indus.*, 125 S. Ct. at 584.

**B.**

CadleRock conceded at oral argument that it had not been sued in a court action under

7

either § 106 or § 107 of CERCLA; nor has it administratively or judicially settled its liability with the United States or Connecticut.[3]  Nonetheless, CadleRock argues – albeit nearly in passing – that even after *Cooper Industries* the company still has a viable contribution claim under § 113(f)(1) because of the issuance of the DEP Order.  CadleRock's argument proceeds as follows: (1) the DEP Order is the same as a "civil order" under § 106; (2) a "civil order" under § 106 is the same as a "civil action" under § 106 or § 107 within the meaning of § 113(f)(1); and therefore (3) CadleRock may seek contribution under § 113(f)(1) because it sued Defendants in this lawsuit "during or following a civil action under § 106 or § 107(a)," as *Cooper Industries* requires.  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263] at 8-9.

Cadlerock's argument is founded in large measure on the Supreme Court's observation in *Cooper Industries* that the PRP seeking contribution in that case was not even "subject to an administrative order under § 106." *Cooper Indus.*, 125 S. Ct. at 584 n.5.  Therefore, the Supreme Court stated, it "need not decide whether such an order would qualify as a 'civil action under section [106] . . . or under section [107]' of CERCLA." *Cooper Indus.*, 125 S. Ct. at 584 n.5 (quoting 42 U.S.C. § 9613(f)(1)).  Before *Cooper Industries*, several circuit courts had allowed PRPs subject to civil orders under § 106(a) to pursue contribution claims under § 113(f)(1).  *See,*

---

[3]  It is not entirely clear from the briefing before the Court whether CadleRock has ever argued that it should be considered a settling PRP, although the Court notes that Defendants have briefed this issue and assert that CadleRock may not seek contribution under § 113(f)(3)(B) as a settling party.  *See* Defs.' Reply [doc. #280] at 7.  Even if a settlement of state environmental law obligations could somehow be equivalent to a judicially-approved federal settlement triggering contribution rights under § 113(f)(3)(B), it is undisputed that CadleRock has been vigorously litigating and resisting its state obligations and responsibilities.  Therefore, CadleRock cannot be considered a settling PRP.  *See generally CadleRock*, 253 Conn. at 666-67 (outlining the long history of state administrative and judicial proceedings regarding the Site).  *See also W.R. Grace & Co.-Conn.*, 2005 WL 1076117 at *3-*7 (a consent order between a state environmental agency and a PRP does not constitute a settlement for purposes of § 113(f)(3)).

8

*e.g.*, *Aviall Servs., Inc.*, 312 F.3d at 683 n.10 (recognizing the possibility that an administrative

order could trigger a PRP's ability to seek contribution under § 113(f)(1), even absent a civil

action to enforce that administrative order); *Centerior Serv. Co. v. Acme Scrap Iron & Metal

Corp.*, 153 F.3d 344, 352 (6th Cir. 1998) ("Under the common law, . . . [i]t was enough that a

plaintiff act under some compulsion or legal obligation to an injured party when he or she

discharged the payment. . . .  A § 106 administrative order requiring cleanup in the face of

penalties or fines clearly satisfies such a requirement.  Indeed, it is disingenuous at best for the

plaintiffs, who have not challenged their status as PRPs, to claim their action is not one for

contribution simply because the [United States Environmental Protection Agency (EPA)] was not

forced to take them to court.") (citations omitted); *Sun Co. v. Browning-Ferris, Inc.*, 124 F.3d

1187, 1190 (10th Cir. 1997) ("The fact that Plaintiffs incurred cleanup costs by complying with a

unilateral administrative order, without forcing the government to take them to court, does not

change their status as jointly and severally liable parties. . . . Thus, Plaintiffs' claim is still . . .

seeking the equitable apportionment of a payment which Plaintiffs have been compelled to make,

and is still a claim for contribution.").  *See also Durham Mfg. Co. v. Merriam Mfg. Co.*, 294 F.

Supp. 2d 251, 275-76 (D. Conn. 2003) (allowing a PRP to seek contribution under § 113(f)(1)

for cleanup costs incurred based solely on a § 106(a) administrative order on consent between the

PRP and the EPA).

     Though the Second Circuit had never addressed this issue, Cadlerock urges this Court to

adopt the positions of these other circuits and hold that a PRP subject to a civil order under §

106(a) may pursue a contribution claims under § 113(f)(1).  However, before this Court could

ever reach the issue of whether an administrative order under § 106 qualifies as a "civil action"

under § 106 or § 107 for purposes of bringing a contribution claim under § 113(f)(1), there is a threshold issue on which CadleRock's argument founders – namely, whether the DEP Order that CadleRock is subject to qualifies as an administrative order *under* CERCLA § 106.  Because the Court concludes that the DEP Order is not an administrative order under § 106, the Court has no occasion to decide whether the issue left undecided in *Cooper Industries*: whether an administrative order under § 106 constitutes a civil action for purposes of § 113(f)(1).  *See Cooper Indus.*, 125 S. Ct. at 583-84.

## C.

The Court recognizes full-well that wading through CERCLA's morass of statutory provisions can often seem as daunting as cleaning up one of the sites the statute is designed to cover.  *See, e.g.*, *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 326 (2d Cir. 2000) ("We are called upon in this case to resolve yet another ambiguity within CERCLA's miasmatic provisions.").  To put it politely, "CERCLA is not a paradigm of clarity or precision."  *Artesian Water Co. v. Gov't of New Castle County*, 851 F.2d 643, 648 (3d Cir. 1988) ("[CERCLA] has been criticized frequently for inartful drafting and numerous ambiguities attributable to its precipitous passage.").

Nonetheless, in this case, § 106(a) appears relatively straightforward.  That section authorizes the EPA to, among other things, issue an administrative order directing a PRP to clean up a site.[4]  Section 106(a) states in relevant part:

---

[4] Though the statute originally authorized the President to take these actions, in Executive Order No. 12,580, 52 Fed. Reg. 2,923 (Jan. 23, 1987), and Executive Order 12,777, 56 Fed. Reg. 54,757 (Oct. 18, 1991), the President delegated most of his CERCLA functions and responsibilities to the Administrator of the EPA.  The Court thus refers to actions taken by the EPA under CERCLA, and not to actions by the President as is recited in the statute.

> *In addition to any other action taken by a State or local government*, when the [EPA] determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, [it] may . . . after notice to the affected State, . . . issu[e] such orders as may be necessary to protect public health and welfare and the environment.

42 U.S.C. § 9606(a) (emphasis added).[5]   The issuance of an administrative order under § 106(a) is a unique tool that the EPA employs to prevent an environmental disaster at a Superfund site and to spur action by PRPs.  *See generally* EPA Office of Solid Waste & Emergency Response (OSWER), *EPA Guidance on CERCLA Section 106(a) Unilateral Administrative Orders for Remedial Designs and Remedial Actions*, Directive No. 9833.0-1a (Mar. 7, 1990) (outlining the basic forms and uses of EPA administrative orders under CERCLA § 106); 4 Susan M. Cooke, *The Law of Hazardous Waste: Management, Cleanup, Liability, and Litigation* § 14.03 (2004) (same).  The Second Circuit has described the § 106 administrative order as the "procedure that permits *the EPA* to move expeditiously in the face of a potential environmental disaster." *Wagner Seed Co. v. Daggett*, 800 F.2d 310, 315 (2d Cir. 1986) (emphasis added).  It is issued only after the EPA finds an "imminent and substantial endangerment to the public health or welfare or the environment."  *Id.*; *see also* 40 C.F.R. § 300.130(d)(2) (same).  And by the clear language of the statutory text, an administrative order under § 106(a) is something "[i]n addition to" and separate from any "other action taken by a State or local government."  42 U.S.C. § 9606(a).

_____

[5] In addition to issuing its own administrative order, the EPA may also seek a court order under § 106(a) in the district where the threat occurs, though this provision is not at issue here. *See* 42 U.S.C. § 9606(a) (The EPA "may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.").

It is readily apparent, therefore, that the DEP Order issued to CadleRock is not remotely the same as an EPA-issued administrative order under CERCLA § 106.   To begin with, by its express terms, the DEP Order ordered CadleRock to begin the assessment, remediation, and removal of contamination on the Site "pursuant to sections 22a-6, 22a-225, 22a-424, and 22a-432 of the Connecticut General Statutes," which are the sections of Connecticut's law known as the Connecticut Solid Waste Management Act and Water Pollution Control Act.  DEP Order No. SRD-088 (issued August 15, 1997) at 1 (emphasis added), attached as Ex. 4 to Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263]; *see generally CadleRock*, 253 Conn. at 662-63.  As CadleRock properly conceded at oral argument, the DEP Order does not even once mention CERCLA or any of its provisions, let alone § 106.

Furthermore, CadleRock also acknowledged at oral argument that the EPA has not been involved with the Site (at least until very recently) and that the DEP Order and the DEP's activities with respect to the Site have always been pursuant to Connecticut State statutes – not CERCLA.  To be sure, CERCLA § 104 allows states to apply to the EPA for permission to "carry out the actions authorized" by CERCLA.  42 U.S.C. § 9604(d)(1)(A).  Furthermore, after the EPA determines that the state "has the capability to carry out any or all of such actions in accordance with the criteria and priorities established pursuant to section 9605(a)(8) of this title and to carry out related enforcement actions," the EPA "may enter into a contract or cooperative agreement with the State . . . to carry out such actions." *Id.*   In such a contract or cooperative agreement, the State acts on behalf of the EPA. *See* 42 U.S.C. § 9604(d)(3).  However, no party has suggested that there was any such cooperative agreement or contract between the DEP and EPA in this case.  Therefore, CadleRock does not contend that the DEP Order was in and of itself

12

a delegated administrative order under § 106 of CERCLA.

Finally, CadleRock cites no case that stands for the proposition that a state administrative order, issued under state solid waste and water pollution laws, should be considered the same as, or even equivalent to, a federal administrative order issued pursuant to CERCLA § 106; nor has this Court found any such authority on its own.  *Cf. W.R. Grace & Co.-Conn.*, 2005 WL 1076117 at *3-*7 (holding that a consent order between a state environmental agency and a PRP does not constitute a settlement that would allow a PRP to maintain a contribution claim under § 113(f)(3)).

Because the DEP Order is not an administrative order *under* CERCLA § 106, the DEP Order cannot qualify as the equivalent of a "civil action under § 106," as required by the plain language of § 113(f)(1) and *Cooper Industries*.  And because CadleRock filed its contribution action under § 113(f)(1) before, not during or following, a civil action under either §106 or § 107, *Cooper Industries* makes clear that CadleRock may not maintain its contribution claim under § 113(f)(1).

**III.**

Having disposed of any possible contribution claim under § 113(f), the Court next turns to CadleRock's argument that even if *Cooper Industries* foreclosed its contribution claim under § 113(f), this Court should allow CadleRock to proceed with an implied contribution claim brought directly under CERCLA § 107(a).

Before turning to the merits of CadleRock's argument, the Court notes that Defendants claim that CadleRock never sufficiently pleaded an implied contribution claim under § 107(a), and that in any event, during the course of CadleRock's briefing on an earlier motion to dismiss

in this case, CadleRock abandoned any and all claims it may have originally brought under §

107(a).  *See, e.g.*, Defs.' Supplemental Brief in Support of Mot. for J. on the Pleadings [doc.

#262] at 14-17; Defs.' Reply [doc. #280] at 10-12; *see also* Pl.'s Mem. L. in Opp'n to Mot. to

Dismiss [doc. #91] at 2, 3 n.6 ("CadleRock has decided not to dispute Movants' claim that

CadleRock is not entitled to indemnification pursuant to CERCLA § 107.").  CadleRock counters

that because its original contribution claim was asserted under both § 113(f) and § 107(a), the

Complaint sufficiently pled an implied contribution claim under § 107(a).  Furthermore,

CadleRock argues that it technically only abandoned an implied claim for *indemnification* under

§ 107(a), and never abandoned an implied claim for *contribution* under § 107(a).  *See* Pl.'s Mem.

in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263] at 14 n.11; Pl.'s Mem. of L. in Further

Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #276] at 2 & n.3; *see also* Pl.'s Mem. of L. in

Opp'n to Mot. to Dismiss [doc. #91] at 2, 3 n.6.

　　　The Court need not resolve either the issue of whether CadleRock sufficiently pled an

implied contribution claim under § 107(a) or whether the claim was abandoned during briefing

on the motion to dismiss.  For, regardless of whether an implied contribution claim remains in

this case or not, it is clear under currently applicable law in the Second Circuit that PRPs such as

CadleRock cannot bring an implied contribution claim under § 107(a).  This principle was clearly

established in *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998), a case decided well before

*Cooper Industries*.  *Bedford Affiliates* explained the rationale for its holding as follows:

> Were we to permit a potentially responsible person to elect recovery under either
> § 107(a) or § 113(f)(1), § 113(f)(1) would be rendered meaningless.  A recovering
> liable party would readily abandon a § 113(f)(1) suit in favor of the substantially
> more generous provisions of § 107(a).  We decline to interpret § 107(a) so broadly
> that § 113(f)(1) would become a nullity.  The language of CERCLA suggests

> Congress planned that an innocent party be able to sue for full recovery of its
> costs, i.e., indemnity under § 107(a), while a party that is itself liable may recover
> only those costs exceeding its pro rata share of the entire cleanup expenditure, i.e.,
> contribution under § 113(f)(1).

*Bedford Affiliates*, 156 F.3d at 424 (internal citations omitted).  Accordingly, as the Second

Circuit recently noted, "We held in *Bedford Affiliates* that a plaintiff who is also a PRP may not

bring a cost recovery action under § 107(a) and is instead limited to suing for contribution under

§ 113."  *Syms*, 408 F.3d at 106 (citing *Bedford Affiliates*, 156 F.3d at 424).

Despite the clear holding of *Bedford Affiliates* that a PRP may bring contribution claims

only under § 113(f) and not under § 107(a), CadleRock invites this Court to read both the

Supreme Court's decision in *Cooper Industries* and the Second Circuit's decision in *Syms v. Olin

Corp.*, *supra*, as having overruled *Bedford Affiliates*.  This Court declines CadleRock's invitation.

To begin with, the Supreme Court in *Cooper Industries* did not expressly or implicitly

overrule *Bedford Affiliates*.  Rather, the Supreme Court explicitly stated that "we need not and do

not decide today whether any judicially implied right of contribution survived" Congress's

enactment of § 113(f)(1).  *Cooper Indus.*, 125 S. Ct. at 586.  In particular, the Supreme Court

specifically stated that it was "withh[olding] judgment" as to whether "numerous decisions of the

Courts of Appeals" –  among which the Supreme Court listed *Bedford Affiliates* – correctly

interpreted a PRP's rights to pursue a § 107(a) action.  *Cooper Indus.*, 125 S. Ct. at 585.  As

Judge Sand rightly observed recently in *Elementis Chemicals, Inc. v. T H Agriculture &

Nutrition, L.L.C.*, *supra*, "It would be inappropriate for this Court to contradict the Supreme

Court and declare that the Supreme Court had effectively done something which it specifically

said it had not done – namely, overruled *Bedford Affiliates*."  *Elementis Chems.*, 2005 WL

15

236488, at *10.

Nor did the Second Circuit in *Syms* expressly or implicitly overrule *Bedford Affiliates*. To the contrary, *Syms* explicitly declined to consider whether *Bedford Affiliates* remained viable after *Cooper Industries*, stating that

> [a]lthough we have the authority to affirm the district court opinion on any basis supported by the record, we decline to exercise that authority with respect to determining whether . . . the rule announced in *Bedford Affiliates* remains viable after *Cooper Industries*. *Cooper Industries* was decided after oral argument was held in this case, and the parties have not fully briefed or argued its impact on *Bedford Affiliates*. We therefore believe the best course is simply to vacate the judgment and to allow the district court to address in the first instance the issue of [plaintiff's] eligibility to sue under § 107(a).

*Syms*, 408 F.3d at 107 (internal citation omitted).  *See also Benderson Dev. Co.*, 2005 WL 1397013, at *11 ("The Court of Appeals for the Second Circuit also declined to determine whether the rule announced in *Bedford Affiliates* remains viable after *Cooper Industries*. It is this Court's opinion that *Bedford Affiliates* remains controlling precedent in this circuit.") (internal quotations and citations omitted).  Therefore, *Bedford Affiliates* remains binding precedent in the Second Circuit, and it goes without saying, that it is not the province of this Court to disregard binding Second Circuit precedent.[6]

---

[6] One of the cases CadleRock cites for the proposition that an implied right of contribution is available directly under § 107(a) – *Adobe Lumber, Inc. v. Taecker*, No. CV S02-186 GEB GGH, 2005 WL 1367065 (E.D. Cal. May 24, 2005) – also recognized that "the Supreme Court did not rule on whether contribution is available under § 107" in *Cooper Industries*.  *Adobe Lumber*, 2005 WL 1367065 at *1.  Therefore, the court in *Abode Lumber* concluded that "Ninth Circuit precedent governs this issue." *Id.*  However, the Ninth Circuit precedent that the court in *Adobe Lumber* was bound to follow – *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir. 1997) – is contrary to *Bedford Affiliates*, the precedent that this Court must follow.  The Court declines CadleRock's implicit suggestion that the Court should follow Ninth Circuit precedent or the dissenting opinion of *Cooper Industries*, rather than adhering to binding Second Circuit law.  *See* Pl.'s Supplemental Mem. in Further Opp'n [doc. #267] at 6, *quoting Metro. Water Reclamation Dist. of Greater Chicago v. Lake*

Therefore, unless and until the Supreme Court or the Second Circuit overrules *Bedford Affiliates*, that decision remains good law in this Circuit.[7]  And as noted above, *Bedford Affiliates* completely forecloses any and all implied contribution claim that CadleRock may have made, or may still have, under § 107(a).

## IV.

Finally, CadleRock argues that even if, as the Court has held, the company has no viable action for contribution under § 113(f) or implied contribution under § 107(a), the company might still press its declaratory judgment claim in this lawsuit to "establish the degree of liability among the parties *if, and when*, [CadleRock] becomes the subject of a civil action under § 106 or § 107." Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263] at 15 (emphasis added). The Court disagrees.

The Declaratory Judgment Act states in relevant part that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  "It is settled law that the Declaratory Judgment Act does not enlarge

---

*River Corp.*, 365 F. Supp. 2d 913, 918 (N.D. Ill. 2005) ("While the majority of judges [*sic*] were understandably reluctant to decide an issue which could wait another day, I agree with the dissenters in [*Cooper Industries*] . . . ").

[7] The Second Circuit currently has before it on appeal at least three (if not more) cases that will provide the circuit court with the opportunity to reconsider *Bedford Affiliates* in light of *Cooper Industries*.  *See generally W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.*, No. 98-CV-838S(F), 2005 WL 1076117 (W.D.N.Y. May 3, 2005); *Elementis Chems., Inc. v. T H Agric. & Nutrition, L.L.C.*, No. 03 Civ. 5150 (LBS), 2005 WL 236488 (S.D.N.Y. Jan. 31, 2005); *Consol. Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 310 F. Supp. 2d 592 (S.D.N.Y. 2004).

the jurisdiction of the federal courts, and that a declaratory judgment action must therefore have an independent basis for subject matter jurisdiction." *Concerned Citizens of Cohocton Valley, Inc. v. New York State Dep't of Env. Cons.*, 127 F.3d 201, 206 (2d Cir. 1997) (internal citations and quotations omitted).  A mere demand for declaratory relief does not provide an independent cause of action.  *See, e.g.*, *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994) (internal citations and quotations omitted); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

Here, the Court has concluded that CadleRock cannot state a cause of action seeking contribution under either § 113 or § 107 of CERCLA, the only possible bases for federal question jurisdiction asserted by CadleRock.  Because CadleRock has no underlying legal claim, this Court does not have subject matter jurisdiction to grant any relief – whether a declaratory judgment, damages, or otherwise.  *See, e.g.*, *Walsh v. McGee*, 899 F. Supp. 1232, 1239 (S.D.N.Y. 1995) ("Because this Court lacks subject matter jurisdiction over plaintiffs' claims . . . this Court also lacks jurisdiction to grant plaintiffs declaratory or injunctive relief."); *Moro v. Telemundo Incorporado*, 387 F. Supp. 920, 925-26 (D.C. Puerto Rico 1974) ("[U]nless the plaintiff can point the court to a statute which empowers the court to adjudicate the parties' rights, the Declaratory Judgment Act is of no avail. This Act is only available where jurisdiction already exists.").  *See also* 10B Charles Alan Wright et al., *Federal Practice & Procedure: Civil 3d* § 2766 (1998) (There must be an independent basis of jurisdiction, under statutes equally applicable to actions for coercive relief, before a federal court may entertain a declaratory-judgment action.").

Furthermore, even if this Court had jurisdiction, it would be inappropriate for this Court

18

to seize upon the declaratory judgment procedure to determine the *future* potential liability of the parties in advance of CadleRock being sued in a civil action under § 106 or § 107 of CERCLA. For any such ruling would clearly undermine the holding of *Cooper Industries* and the clear language of § 113(f)(1), both of which permit a PRP to seek contribution only "during or following" a civil action under § 106 or § 107, not before.[8]

### V.

For the foregoing reasons, Defendants' Motions for Judgment on the Pleadings [docs. #252 & #267] are both GRANTED and all CadleRock's claims are hereby dismissed.  **The Clerk is directed to close this file.**

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: July 18, 2005.**

_____

[8] CadleRock cites a number of cases which it alleges stand for the proposition that this Court may grant declaratory relief in the event that the company is eventually sued under § 106 or § 107.  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #263] at 14-; Pl.'s Mem. of L. in Further Opp'n to Defs.' Mot. for J. on the Pleadings [doc. #276] at 5-6.  The Court disagrees.  All the cases cited by CadleRock can be distinguished on the ground that the plaintiffs in those cases – unlike CadleRock – had ongoing, viable CERCLA claims based on then-applicable law, which served as the basis for federal question jurisdiction.  *See, e.g.*, *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir. 1986); *Bernbach v. Timex Corp.*, 989 F. Supp. 403, 407 (D. Conn. 1996); *Allied Princess Bay Co. No. 2 v. Atochem N. Am., Inc.*,  855 F. Supp. 595, 607 (E.D.N.Y. 1993); *Pape v. Great Lakes Chem. Co.*, No. 93 C 1585, 1993 WL 424249, at *6 (N.D. Ill. Oct. 19, 1993); *Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F. Supp. 713, 718 (W.D.N.Y. 1991); *Rockwell Int'l Corp. v. IU Int'l Corp.*, 702 F. Supp. 1384, 1386-87 (N.D. Ill. 1988).